IGNACIA S. MORENO
Assistant Attorney General
JOANNA K. BRINKMAN, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0476

CARLIE CHRISTENSEN, United States Attorney (#633)
JOHN K. MANGUM, Assistant United States Attorney (#2072)
185 South State Street, Suite 300
Salt Lake City, UT 84111
(801) 524-5682

Attorneys for Defendant United States of America

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

---

| | | |
|---|---|---|
| KANE COUNTY, UTAH,<br>A Utah political subdivision, | ) )<br>) | Civil No. 2:10-cv-1073-DN |
| Plaintiff, | ) )<br>) | MEMORANDUM IN SUPPORT<br>OF DEFENDANT'S MOTION TO |
| v. | ) )<br>) | DISMISS |
| UNITED STATES OF AMERICA, | )<br>) | Magistrate Judge David Nuffer |
| Defendant. | )<br>)<br>) | |

---

**TABLE OF CONTENTS**

*Page*

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................3

I       R.S. 2477 and Its Relevant Legal History...........................................................3

II.     The Management Plans and Specific Roads Named in Kane County's Complaint ...........5

        a.      The Grand Staircase Escalante National Monument Management Plan and the Roads It Covers.......................................................................5

        b.      The Kanab Field Office Resource Management Plan and the Roads It Covers ......8

        c.      Road Within the Glen Canyon National Recreation Area .....................................11

III.    Kane County's Voluntary Termination of Maintenance Activities.................................11

ARGUMENT .........................................................................................................12

I       Kane County's Complaint Should Be Dismissed in Its Entirety For Failure to Join the State of Utah as a Necessary and Indispensable Party.......................................14

II.     Standard of Review – Fed. R. Civ. 12(b)(1) ....................................................17

III.    This Court Lacks Subject Matter Jurisdiction Because There is No Case or Controversy to Adjudicate.........................................................................17

        a.      The Monument Plan Does Not Impair or Deny Any Potentially Valid R.S. 2477 Right-of-Way ...........................................................................19

                1.      The Monument Plan Permits Public Motor Vehicle Use on the Monument Roads and Allows Routine Maintenance on Those Roads .......................19

                2.      Kane County Fails to Identify any BLM Signs in the Monument that Impair the Use or Maintenance of the Monument Roads .........................21

                3.      Prior Court Statements by the BLM Do Not Create a Case or Controversy ...............................................................................23

b.      The Kanab Plan Does Not Impair Or Deny Any Potentially Valid R.S. 2477 Rights-of-Way..............................................................................24

c.      Kane County Has Failed to Make Any Credible Allegations Sufficient to Establish that the National Park Service's Management of the Glen Canyon NRA Has Impaired or Denied Any Potentially Valid R.S. 2477 Rights-of-Way..............................................................................27

d.      Actions by the Department of Interior Following the Approval of Its Management Plans Do Not Impair or Deny Any Potentially Valid R.S. 2477 Rights-of-Way..............................................................................28

IV.     Kane County Lacks Standing Because It Has Not Suffered an Actual Injury Traceable to the United States ...............................................................................33

V.      The Court Lacks Jurisdiction Under the Quiet Title Act Where the United States  Has Never Asserted a Claim as to the Monument and Kanab Roads and Where There is No Present Disputed Title to Real Property..............................................................36

a.      The United States Has Never Asserted a Claim Over the Monument and Kanab Roads Sufficient to Give Rise to a Quiet Title Action.........................................37

b.      The United States Has Not Waived Its Sovereign Immunity Because There is No Present Disputed Title to Real Property  ............................................38

c.      Kane County Has Not Pled Its Claims With the Statutorily-Required Particularity Necessary to Invoke Jurisdiction Under the Quiet Title Act ...........39

CONCLUSION ..............................................................................41

# <u>TABLE OF AUTHORITIES</u>

*Page*

<u>CASES</u>

*Alaska v. United States*, 201 F.3d 1154 (9th Cir. 2000) ................................................ 38

*Allen v. Wright*, 468 U.S. 737, 750 (1984) ................................................................. 17

*Am. Charities for Reasonable Fundraising Regulation, Inc. v. Olsen*,
    No. 2:08-cv-00875DAK, 2010 WL 2802497, at *3 (D. Utah July 15, 2010) ........................... 33

*Atlantis Dev. Corp. v. United States*, 379 F.2d 818 (5th Cir. 1967) ........................... 15

*Bateman v. City of W. Bountiful*, 89 F.3d 704 (10th Cir. 1996) ................................. 17

*Block v. N.D. ex rel. Bd. of Univ. & School Lands*, 461 U.S. 273 (1983) ................... 36

*Buchler v. United States*, 384 F. Supp 709 (E.D. Cal. 1974) ...................................... 40

*City and County of Denver v. Bergland*, 517 F. Supp. 155 (D. Colo. 1981) ............... 40

*City and County of Denver v. Bergland*, 695 F.2d 465 (10th Cir. 1982) ..................... 40

*Cox v. Phelps Dodge Corp.*, 43 F.3d 1345 (10th Cir. 1994) ....................................... 18

*Davis ex rel. Davis v. United States*, 343 F.3d 1282 (10th Cir. 2003) ........................ 14

*Garcia v. Bd. of Educ. of Albuquerque Pub. Sch*s., 520 F.3d 1116 (10th Cir. 2008) .................. 17

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) ..................................... 33

*Governor of Kansas v. Kempthorne*, 516 F.3d 833 (10th Cir. 2008) .......................... 36

*Harrell v. United States*, 443 F.3d 1231 (10th Cir. 2006) .......................................... 36

*Hazel Green Ranch, LLC v. U.S. Dep't of Interior*, No. 1:07-cv-00414 OWW SMS,
    2008 WL 4755325 (E.D. Cal. Oct. 28, 2008) (unpublished) ..................................... 37

*Hugoton Energy Corporation v. Plain Resources, Inc*, 141 F.R.D. 320 (D. Kan. 1991) ............. 15

*Kane County v. Kempthorne*, 495 F. Supp. 2d 1143 (D. Utah 2007) .......................... 34

iv

*Kane County v. Salazar*, 562 F.3d 1077 (10th Cir. 2009) .......................................... 19, 26, 34, 35

*Kane County v. United States*, Dkt No. 102, No. 2:08-cv-00315-CW (Oct. 30, 2009) ............... 18

*Kane County v. United States*, Dkt No. 20, No. 2:10-cv-00136-TC (Sept. 14, 2010) ................. 18

*Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) ................................................... 33

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................... 33

*McClendon v. City of Albuquerque*, 100 F.3d. 863 (10th Cir. 2007) ............................................ 18

*Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*,
   428 F.3d 1285  (10th Cir. 2005) ................................................................. 17

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) ...................................................... 35

*Peterson v. Morton*, 465 F. Supp. 986 (D. Nev. 1979) .................................................. 38

*Peterson v. Watt*, 666 F.2d 361 (9th Cir. 1982) ......................................................... 38

*Rashell v. Jane Phillips Episcopal Mem'l Med. Ct*r., 94 F.3d 1407 (10th Cir. 1996) ................. 14

*S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735 (10th Cir. 2005) ....... passim

*Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267 (10th Cir. 2003) .......................................... 17

*Stubbs v. United States*, 620 F.2d 775 (10th Cir. 1980) ................................................... 39

*SUWA v. Sierra*, No. 2:07-cv-00199-CW, 2010 WL 4782976 (D. Utah Nov. 16, 2010) ........... 33

*Sw. Four Wheel Drive Assn. v. Bureau of Land Mgm't*, 363 F.3d 1069 (10th Cir. 2004) ........... 36

*U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038 (10th Cir. 2004) ...................................... 17

*U.S. Synthetic Corp. v. ReedHycalog, Ltd.*, 407 F. Supp. 2d 1274 (D. Utah 2005) ..................... 17

*Unified School Dist. No. 259 v. Disability Rights Ctr.*, 491 F.3d 1143 (10th Cir. 2007) ............. 18

*United States v. Jenks*, 22 F.3d 1513 (10th Cir. 1994) ................................................... 22

*United States v. Mitchell,* 445 U.S. 535 (1980) .......................................................... 36

*United States v. Mottaz*, 476 U.S. 834 (1986) ........................................................ 36, 39

*United States v. Nordic Vill., Inc.*, 503 U.S. 30 (1992) ................................................ 36

*United States v. Spectrum Emergency Care,* 190 F.3d 1156 (10th Cir. 1999) ............................. 17

*United States v. Watashe*, 102 F.2d 428 (10th Cir. 1939) ............................................... 29

*Utah v. Babbitt*, 137 F.3d 1193 (10th Cir. 1998) ...................................................... 34

*Washington County v. United States*, 903 F. Supp. 40 (D. Utah 1995) ......................... 18, 39, 40

*The Wilderness Society v. Kane County*, No. 2:05-CV-854-TC, 2008 WL 2421163
    (D. Utah June 13, 2008) (unpublished) .............................................................. 30, 31

*Wilderness Society v. Kane County*, 560 F. Supp. 2d 1147 (D. Utah 2008)............... 12, 26, 30, 31

*Wilkenson v. Dep't of Interior*, 634 F. Supp. 1265 (D. Colo. 1986) .............................................. 22

*Williams v. Bankert,* No. 2:05CV503DAK, 2007 WL 3053293 (D. Utah Oct. 18, 2007)
(unpublished) ........................................................................................... 35

CONSTITUTIONAL PROVISIONS, STATUTES, AND REGULATIONS

U.S. Const. art. III, § 2 ................................................................................ 17

28 U.S.C. § 2409a ....................................................................................... 2, 40

28 U.S.C. § 2409a(a) .................................................................................... 37

28 U.S.C. § 2409a(d) ............................................................................... 12, 37, 39

28 U.S.C. § 2409a(m) .................................................................................... 16

43 U.S.C. § 1732 ......................................................................................... 23

36 C.F.R. § 251.50(e) .................................................................................... 11

36 C.F.R. § 261.13 ....................................................................................... 11

90 Stat. 2743 ............................................................................................. 4

Pub. L. No. 94-579 § 701(a) .............................................................................. 4

Utah Code Ann. § 72-5-302(2) ............................................................................ 15

Utah Code Ann. § 72-3-103(3) ............................................................................ 15

Utah Code Ann. § 72-3-105(3) .................................................................................................. 15

Utah Code Ann. § 72-5-103(2)(b) ............................................................................................. 15


FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 12(b)(1) .............................................................................. 1, 17

Federal Rule of Civil Procedure 12(b)(7) ................................................................... 1, 12, 14, 16

Federal Rule of Civil Procedure 12(e) ....................................................................................... 12

Federal Rule of Civil Procedure 19 ...................................................................................... 1, 12, 14

Federal Rule of Civil Procedure 19(a)(1) .................................................................... 1, 12, 14, 16

Federal Rule of Civil Procedure 19(a)(1)(B)(ii) ........................................................................ 16

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS

Defendant United States of America ("Defendant" or "United States") moves to dismiss all claims brought by Plaintiff Kane County ("Plaintiff" or "Kane County") under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary and indispensable party, and, in the alternative, moves to dismiss the following claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction: Claim Nos. 1-34, 36-41, 43, 45, and 47.[1]

### INTRODUCTION

Kane County seeks to quiet title to rights-of-way claimed for forty-nine (49) roads[2] pursuant to Revised Statute 2477 ("R.S. 2477") on lands managed by the Bureau of Land Management ("BLM"), the National Park Service, and the U.S. Forest Service.  However, the County's entire Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join the State of Utah.  The State is a necessary and indispensable party under Federal Rule of Civil Procedure 19, and must be joined to the action because the State's asserted statutory rights of ownership are implicated in this case, and the United States faces a substantial risk of incurring double or inconsistent obligations if the State is not joined.  Both factors under Rule 19(a)(1) provide independent grounds requiring that the State of Utah be joined in this action.

---

[1] Defendant does not move to dismiss on this basis Claim 35 (North End Kaibab D Road), Claim 42 (Long Canyon D Road), Claim 44 (Four Mile Canyon/Last Chance Road), Claim 46 (Horse Flat D Road), Claim 48 (Fourmile Canyon Road), and Claim 49 (Hole In The Rock Road).

[2] All individual or collective references to roads, rights-of-way, routes, and the like, including reference to the specific rights-of-way and associated roads claimed in this litigation, are used solely as a matter of convenience based upon the allegations of the Complaint and shall in no way constitute an admission that the claimed rights-of-way and/or roads actually exist.

In addition, Kane County has failed to allege – and cannot allege – facts sufficient to establish that the United States has previously denied the existence of, or interfered with, Kane County's putative R.S. 2477 rights-of-way claimed for forty-three (43) of the forty-nine roads. Indeed, the roads associated with forty-three of the claimed rights-of-way are fully open to the public under the governing federal transportation plans,[3] and the BLM has done nothing to interfere with Kane County's ability to maintain these roads.  As a result, Kane County's claims regarding these forty-three roads must be dismissed because there is no case or controversy sufficient to provide jurisdiction under Article III of the United States Constitution, and because the County does not have standing where it has not suffered an actual injury traceable to the United States.  Additionally, there presently exists no disputed title to real property sufficient to create a waiver of the United States' sovereign immunity under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a.

Neither the Grand Staircase-Escalante National Monument Management Plan ("Monument Plan") nor the Kanab Field Office Resource Management Plan ("Kanab Plan") – which contain the governing federal transportation plans – impair or deny Kane County's purported R.S. 2477 rights-of-way at issue in this Motion.  Both plans explicitly state that their provisions are subject to valid, pre-existing rights but, most importantly, forty-three of the forty-nine roads named in the Complaint remain open for public motor vehicle use under these plans.  Moreover, the Monument Plan expressly allows routine maintenance on all open roads under the

---

[3] Forty-four of the claimed roads are actually open to public motor vehicle use under the plans, but the United States does not presently seek dismissal as to the right-of-way for one of these open roads – the Hole In The Rock Road.  *See infra* n. 5.  Therefore, the United States refers in this brief to forty-three of the roads as being open under the plans solely for ease of reference.

2

Plan, and the BLM has requested the County to maintain the roads designated as open under both the Monument and Kanab Plans.  Accordingly, both plans preserve the status quo as to the R.S. 2477 rights-of-way asserted for these roads, and Kane County's purported injuries based on an alleged inability to maintain these roads are the result of its own voluntary actions and refusal to perform routine road maintenance.  Consequently, there is no case or controversy to provide jurisdiction under Article III of the United States Constitution.

The United States has also not waived its sovereign immunity under the QTA for the County's road claims.  The United States has not claimed that it owns these forty-three alleged rights-of-way, and no disputed title as to real property exists.  Given the lack of a case or controversy and the lack of a waiver of the United States sovereign immunity, this Court does not have subject-matter jurisdiction over the forty-three claims covered by this Motion.

## STATEMENT OF FACTS

### I.      R.S. 2477 and Its Relevant Legal History

Before it was repealed, R.S. 2477 authorized the construction of public highways over unreserved, federal public lands:

> In 1866, Congress passed an open-ended grant of "the right of way for the construction of highways over public lands, not reserved for public uses." . . . This statute, commonly called "R.S. 2477," remained in effect for 110 years, and most of the transportation routes of the West were established under its authority.

*S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 740 (10th Cir. 2005) (internal citations omitted) (hereinafter "*SUWA*").  In 1976, Congress enacted the Federal Land Policy and Management Act of 1976 ("FLPMA"), which, among other things, repealed R.S.

3

2477.  *Id.*  However, FLPMA preserved previously-established rights-of-way, specifying that any "'valid' R.S. 2477 rights-of-way 'existing on the date of [enactment] . . . would continue in effect.'"  *Id.* at 741 (citing Pub. L. No. 94-579 § 701(a), 90 Stat. 2743, 2786 (1976)).

In *SUWA*, the Tenth Circuit addressed several issues relevant to R.S. 2477 claims and discussed the nature of the right bestowed, stating that "[a] right of way is not tantamount to fee simple ownership of a defined parcel of territory.  Rather, it is an entitlement to use certain land in a particular way."  *Id.* at 747.  Among other things, the court also recognized that such "valid" R.S. 2477 rights-of-way vested automatically, without the need for any formal federal action or official federal records documenting their establishment.  *Id.* at 754 ("All that is required [for title to an R.S. 2477 right-of-way to pass to a grantee] . . . are acts on the part of the grantee sufficient to manifest an intent to accept the congressional offer.").  The court also described a consultation process that the holder of an R.S. 2477 right-of-way must initiate with the relevant federal land manager when the holder proposes to make specific road improvements.  *Id.* at 748.  However, the Tenth Circuit expressly provided that such consultation need not be undertaken for "routine maintenance," as opposed to the construction of road improvements, and provided explicit guidance for delineating between the two.  *Id.* at 748-49.

Given the self-executing nature of R.S. 2477 throughout its history, there has historically been little documentation validating claimed R.S. 2477 rights-of-way.  *See id.* at 741-42.  However, with the repeal of R.S. 2477 by FLPMA, litigation surrounding such rights-of-way has increased.  *See id.*

**II.**     **The Management Plans and Specific Roads Named in Kane County's Complaint**

    **a.**     **The Grand Staircase-Escalante National Monument Management Plan and the Roads It Covers**

The Monument Plan, which became effective in 2000, among other things, includes a transportation and access section designating a route system for the Monument.  The designated route system is depicted on Map 2 to the Monument Plan which identifies the roads in the Monument that are open for motor vehicle use.  Ex. A, Monument Plan Map 2.[4]  The Monument Plan designates roads in four ways: 1) "Open" – for roads that are open to all street-legal motorized vehicles; 2) "Open – ATV" – for roads that are open to all street-legal motorized vehicles as well as additional use by unlicensed ATVs; 3) "Administrative Roads" – for roads open only to limited administrative use by the BLM or some permitted user but closed to the general public; and 4) "other roads" – for roads outside the Monument.  *Id.*

The Monument Plan is expressly subject to "valid existing rights" and excludes R.S. 2477 determinations from its scope.  *Id.* at 46.  To the extent R.S. 2477 claims inconsistent with the Plan's transportation decisions are asserted, the Plan commits to recognize any such claims that are subsequently determined to be valid:

> Some government entities may have a valid existing right to an access route under [R.S. 2477] . . . . As described in the United States Department of Interior, Report to Congress on R.S. 2477 (June 1993), claims of rights-of-ways under R.S. 2477 are contentious and complicated issues, which have resulted in extensive litigation. [citing cases].  It is unknown whether any R.S. 2477 claims would be asserted in the Monument *which are inconsistent with the transportation decisions made in the Approved Plan* or whether any of those R.S. 2477 claims would be determined to be valid.  *To the extent inconsistent claims are made*, the

---

[4] The entire Monument Plan, as well as draft versions and supporting documentation, is publically available on the BLM's website at http://www.blm.gov/ut/st/en/fo/grand_staircase-escalante/planning/monument_management.html (last visited January 11, 2011).

validity of those claims would have to be determined.  If claims are determined to be valid R.S. 2477 highways, the Approved Plan will respect those as valid existing rights.  Otherwise, the transportation system described in the Approved Plan will be the one administered in the Monument.  *Nothing in this Plan extinguishes any valid existing right-of-way in the Grand Staircase Escalante National Monument*.  Nothing in this Plan alters in any way any legal rights the Counties of Garfield and Kane or the State of Utah has to assert and protect R.S. 2477 rights, and to challenge in Federal court or other appropriate venue, *any BLM road closures* that they believe are inconsistent with their rights.

*Id.* at 46 n.1 (emphasis added).  By these plain terms, the Monument Plan itself does nothing to affect or extinguish any valid existing R.S. 2477 right-of-way.  In addition, the Monument Plan expressly allows, without further approval, routine maintenance on all roads designated as "open."  *Id.* at 47 ("[o]pen routes may be maintained within the disturbed travel surface area as of the date of this Plan; no widening, passing lanes, or other travel surface upgrades could occur.").  The Plan also authorizes certain specific improvements beyond routine maintenance as to certain roads.  *See id.*

Rights-of-way for the following twenty-eight roads for which R.S. 2477 claims are made in the Complaint are located on lands covered by the Monument Plan:

| Cause of Action Number | Road Name | Status Under Monument Plan |
|---|---|---|
| 12 | Cutler Point Road | Open – ATV |
| 13 | Cutler Point Spring Road | Open – ATV |
| 21 | Seaman Spring Road | Open – ATV |
| 22 | Seaman Spring D Road | Open – ATV |
| 23 | Seaman Wash Road | Open – ATV |
| 24 | Dear Springs Wash/Nephi Pasture Road | Open – ATV |
| 25 | Timber Mountain Road | Open – ATV |
| 26 | Timber Mountain Spur Road | Open – ATV |
| 30 | Petrified Hollow Road | Open |
| 31 | Petrified Hollow North Road | Open – ATV |
| 32 | Petrified Hollow East Road | Open – ATV |

| 33 | Heaton Ranch Road | Open |
| 34 | North End Kaibab Road | Open – ATV |
| 35 | North End Kaibab D Road | Admin only - Closed to Public |
| 36 | Five Mile Mountain Road | Open – ATV |
| 37 | Five Mile Mountain D Road | Open – ATV |
| 38 | Kitchen Corral Road | Open – ATV |
| 39 | Sheep Creek Road | Open – ATV |
| 40 | House Rock Valley Road | Open |
| 41 | Long Canyon Road | Open |
| 42 | Long Canyon D Road | Closed to Public |
| 43 | Cottonwood Canyon Road | Open |
| 44 | Four Mile Canyon/Last Chance Road | Open - last 2 miles Admin/Closed to Public |
| 45 | Horse Flat Road | Open – ATV |
| 46 | Horse Flat D Road | Admin only - Closed to Public |
| 47 | Tommy Water Road | Open – ATV |
| 48 | Fourmile Canyon Road | Admin only - Closed to Public |
| 49 | Hole-In-The-Rock Road | Open |

Ex. B, Dekeyrel Decl. ¶ 4.

Of these twenty-eight roads, only one, Long Canyon D Road (#42), is closed in its entirety, and only four, North End Kaibab D Road (#35), Four Mile Canyon/Last Chance Road (#44), Horse Flat D Road (#46), and Fourmile Canyon Road (#48) are limited completely or partially to administrative uses.  *Id.* at ¶ 5.  In this Motion, the United States does not contend that there is no case or controversy concerning these five roads and does not seek dismissal of these respective claims.  However, twenty-three of these roads (hereinafter "Monument Roads") remain open to public use and maintenance under the Monument Plan and do not present a case or controversy for this court to adjudicate.[5]

_____

[5]While Hole-In-The-Rock Road (#49) is designated as "open" under the Monument Plan, it is not challenged in this Motion due to the existence of potentially disputed facts surrounding this

7

      **b.**      **The Kanab Field Office Resource Management Plan and the Roads It Covers**

      The Kanab Plan was adopted in 2008 to address, among other things, transportation planning for the lands managed by the Kanab Field Office of the BLM.  Copies of the relevant sections are attached as Exhibit C.[6]

      Under the Kanab Plan, BLM divided the routes on the lands managed by the Kanab Field Office into three categories: 1) open – routes that are open to public motorized vehicle use; 2) limited use – routes that are open with seasonal or vehicle limitations; and 3) closed – routes that are off limits to motor vehicle use (with the exception of "administratively approved activities").  Ex. C, Kanab Plan at 17.  These three route designations are illustrated on Map 10 of the Kanab Plan.  *Id.* at Map 10.  After issuance of the Kanab Plan, and pursuant to the transportation plan implementation process described in Appendix 7 of the Plan, BLM issued a series of fourteen official maps, each approximately 11" x 17", showing the roads traversing the land covered by the Kanab Plan in greater detail than is provided on Map 10.  These fourteen maps were all published on the website of the Utah BLM's Kanab Field Office on approximately January 30, 2009.  *See* Ex. D, Kanab Field Office Maps for Kane County.[7]  Other than the designations of "open," "limited," or "closed," the Kanab Plan does not regulate the use of any route or road crossing the respective federal land.

---

road.  Defendant reserves the right to challenge jurisdiction over this road in a later motion as facts are developed.

[6] The entire Kanab Plan, as well as draft versions and supporting documentation, is publicly available on the BLM's website at http://www.blm.gov/ut/st/en/fo/kanab/planning.html (last visited January 11, 2011).

[7] These maps are also available to the public at http://www.blm.gov/ut/st/en/fo/kanab/planning/route_designation.html (last visited January 11, 2011).

8

The Record of Decision ("ROD") issued with the Kanab Plan expressly states that the approved RMP "does not affect valid existing rights." *Id.* at 17.  The ROD also disclaims any intent to make any determinations concerning the ownership or validity of R.S. 2477 claims, declaring that "[t]he Approved RMP does not adjudicate, analyze, or otherwise determine the validity of claimed rights-of-way."  *Id.*  To similar effect, the Kanab Plan acknowledges that "[s]ome government entities may have a valid existing right to an access route under Revised Statute (R.S.) 2477," *id.* at 153, and excludes R.S. 2477 right-of-way determinations from the scope of the Plan.  *See* Ex. E, Kanab Field Office Proposed Resource Management Plan and Final Environmental Impact Statement ("PRMP") at 1-13, Section 1.3.2. (discussing R.S. 2477 rights-of-way in a section captioned "Issues Beyond the Scope of the Plan.").  The PRMP specifically states:

> The State of Utah and Kane and Garfield counties may hold valid existing rights-of-way in the planning area pursuant to [R.S.] 2477 . . . This RMP does not adjudicate, analyze, or otherwise determine the validity of claimed rights-of-way. However, nothing in the RMP extinguishes any valid right-of-way, or alters in any way the legal rights the state and counties have to assert and protect RS 2477 rights or to challenge in Federal Court or other appropriate venue any use restrictions imposed by the RMP that they believe are inconsistent with their rights.

*Id.* at 1-13 to 1-14.  Regarding road maintenance, the Kanab Plan contains no restrictions on road maintenance by the County and contemplates that road maintenance issues are to be addressed separate from and subsequent to the issuance of the Plan.  Ex. C, Kanab Plan at 108 (BLM will pursue "[road] maintenance agreements with highway authorities in the decision area.").

9

Rights-of-way for the following twenty-one roads for which R.S. 2477 claims are made in the Complaint (the "Kanab Roads") are located on lands covered by the Kanab Plan. Each of these roads is designated as "open" under the Kanab Plan as follows:

| Cause of Action Number | Road Name | Status Under Kanab Plan |
|---|---|---|
| 1 | Red Knoll Road | Open |
| 2 | Yellow Jacket Ranch Road | Open |
| 3 | North Fork Road | Open |
| 4 | Meadow Canyon Road | Open |
| 5 | Mineral Springs Road | Open |
| 6 | Troys Road | Open |
| 7 | Muddy Canyon Road | Open |
| 8 | Stout Canyon Road | Open |
| 9 | Eight Mile Gap Road | Open - Major Road |
| 10 | Kanab Canyon Road | Open - Major Road |
| 11 | Old Highway 89/Sands Road | Open |
| 14 | Johnson Canyon Road | Open |
| 15 | Glendale Bench Road | Open – Major Road |
| 16 | Alton Coal Mine Road | Open |
| 17 | Alton Coal Mine D Road | Open |
| 18 | Lambs Field Road | Open |
| 19 | Johnson Substation Road | Open |
| 20 | Crescent Butte Trail Road | Open |
| 27 | Alton Road | Open |
| 28 | Bunting Ranch Road | Open |
| 29 | Brinkerhoff Ranch Road | Open |

Ex. B, Dekeyrel Decl. ¶ 4. Two of the roads covered by the Kanab Field Office Resource Management Plan, the North Fork Road (K2000) and Stout Canyon Road (K2350), also cross National Forest System lands for a portion of their length, although the County has not asserted any allegations concerning actions taken by the United States Forest Service regarding these roads. Regulations promulgated by the Forest Service are applicable to those portions of the roads, and both roads are open to the public under the relevant regulations. *See* 36 C.F.R. §

10

261.13; 36 C.F.R. § 251.50(e); Ex. F, Magnuson Decl.  Consequently, there is no case or controversy for this Court to adjudicate concerning the roads covered by the Kanab Plan.

   **c.**  **Road Within the Glen Canyon National Recreation Area**

   The Complaint also includes allegations related to the Glen Canyon National Recreation Area ("NRA"), but the County claims only one road in this area, the Hole In The Rock Road, as an R.S. 2477 right-of-way.  Pl.'s Compl. ¶ 1647-1685.  Since the Hole In The Rock Road is not subject to this Motion, and Kane County has not identified any other specific roads as being impaired or denied by the actions of the National Park Service ("NPS") in managing the NRA, further discussion of this set of allegations is generally unnecessary.

**III.**  **<u>Kane County's Voluntary Termination of Maintenance Activities</u>**

   Consistent with the provisions of the Monument and Kanab Plans, BLM officials have consistently stated in written correspondence to Kane County, and others, that the County is free to conduct routine maintenance on roads open under the plans, and in fact requested that the County continue to do so.  BLM has sent numerous letters stating that the County's ability to continue road maintenance has not been affected by certain litigation and court rulings, and urging the County to separate the performance of road maintenance activities from litigation matters.  Ex. G, Berkhoudt Letter; Ex. H, Berkhoudt and Barber Letter.

   By contrast, Kane County has voluntarily, and unilaterally, chosen to terminate its own road maintenance work that it has, over the years, routinely performed on many of the routes that are the subject of this lawsuit.  A Kane County Commissioner has testified in another case that the County voluntarily ceased to maintain the roads for which it seeks R.S. 2477 rights-of-ways based on its belief of harm attributed to the Court's decision in *The Wilderness Society v. Kane*

*County*, 560 F. Supp. 2d 1147 (D. Utah 2008), *see* Ex. I, Habbeshaw Decl ¶¶ 18-20, and the

County acknowledges that it made the decision to stop its own maintenance work.  Pl.'s Compl.

¶ 162.  Additional correspondence from the former Utah State Director of BLM specifically

notes that Kane County had previously undertaken its routine road maintenance work through

the summer of 2008, at which time the County unilaterally decided to cease its own maintenance

activities.  Ex. J, Sierra Email.[8]

## ARGUMENT

The County's entire Complaint should be dismissed under Federal Rule of Civil

Procedure 12(b)(7) for failure to join the State of Utah.  The State is a necessary and

indispensable party under Federal Rule of Civil Procedure 19, and must be joined to the action

because the State's asserted statutory rights of ownership are implicated in this case, and the

United States faces a substantial risk of incurring double or inconsistent obligations if the State is

not joined.  Both factors under Rule 19(a)(1) provide independent grounds requiring that the

State of Utah be joined as a party.

---

[8] To the extent the County's Complaint attempts to establish that BLM's refusal to remove
certain road restriction signs somehow creates a case or controversy, the allegations are too
vague to support a claim.  *See* Pl.'s Compl. ¶¶ 86-87.  The allegations do not specifically identify
any claimed right-of-way as having such signs, but simply claim "these road closure and vehicle
restriction signs remain posted along Kane County's roads, including the roads claimed herein."
*Id.* ¶ 86.  If the County does intend to argue that this situation creates a case or controversy, then
the United States would respectfully move for a more definite statement under Fed. R. Civ. P.
12(e) concerning this allegation, so that all roads bearing such alleged signs should be
specifically identified.  Under the QTA, plaintiffs must plead with particularity the "right, title,
or interest claimed by the United States."  *See* 28 U.S.C. § 2409a(d).  Plaintiff's failure to satisfy
this heightened pleading requirement through such vague and conclusory assertions constitutes a
further jurisdictional defect in the Complaint.

In addition, the Court lacks subject matter jurisdiction as to forty-three of the forty-nine roads named in the Complaint because there is no case or controversy to adjudicate, and Kane County lacks standing because it has not suffered an actual injury traceable to the United States. Kane County alleges that the Kanab Plan, the Monument Plan, and actions by the Department of Interior have all created a case or controversy over the County's asserted R.S. 2477 rights-of-way, principally by interfering with the use and maintenance of these roads. These assertions are defeated by the plain language of the plans, which designate forty-three of the forty-nine claimed rights-of-way as open to public motor vehicle use. The plans also expressly preserve the status quo as to R.S. 2477 rights-of-way by not purporting to make any R.S. 2477 determinations and committing to recognize any R.S. 2477 rights-of-way claims that are subsequently determined in an appropriate forum to be valid. Moreover, the Monument Plan expressly allows maintenance on all open roads, and the County has identified no action taken by the BLM that has interfered with the County's ability to maintain the forty-three roads that are designated as open under the plans.

Indeed, the County has not – and cannot – identify any specific instance in which the BLM has denied any maintenance or improvements proposed by the County for any of these forty-three roads. To the extent the County has ceased maintenance activities on these claimed roads, the cessation of such activities is a unilateral, voluntary decision by the County. Accordingly, the County has not met its burden of establishing a justiciable case or controversy, or standing under Article III of the Constitution, or a disputed interest in title sufficient to demonstrate a waiver of the United States' sovereign immunity under the QTA for forty-three of the forty-nine roads claimed in this litigation.

13

**I.**    **Kane County's Complaint Should Be Dismissed in Its Entirety For Failure to Join the State of Utah as a Necessary and Indispensable Party**

The County's entire Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join the State of Utah.  Under Federal Rule of Civil Procedure 19(a)(1), a necessary party must be joined if joinder is feasible.  *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1288-89 (10th Cir. 2003).  A party is deemed "necessary" under Rule 19(a)(1) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1); *Davis ex rel. Davis*, 343 F.3d at 1289.  If a necessary party cannot be joined, the action must be dismissed if the party is "indispensable."  The Tenth Circuit has described the test for dismissal of a case for failure to join a necessary and indispensable party under Fed. R. Civ. P. 19 as follows:

> Determining whether an absent party is indispensable requires a two-part analysis. The court must first determine under Rule 19(a) whether the party is necessary to the suit and must therefore be joined if joinder is feasible.  If the absent party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable.  If so, the suit must be dismissed.

*Rashell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996) (citations omitted).

14

In quiet title actions, all persons with an asserted interest in the real property at issue are generally deemed indispensable.  As the court in *Hugoton Energy Corp. v. Plains Resources, Inc.* observed, based on several authorities:

> As a general rule, in actions to quiet title, all persons claiming an interest in the subject property are considered indispensable.   7 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1621 (1986) ("whenever a party seeks to quiet title to a piece of land, he must join all known persons who are claiming title in order to settle the property's ownership without additional litigation");  3a J. Moore, *Moore's Federal Practice* ¶ 19.09[1] (1989) (in quiet title suits, "all persons interested in the title who will be directly affected by the decree are indispensable parties").   *See Atlantis Dev. Corp. v. United States*, 379 F.2d 818 (5th Cir. 1967) (in suit by government to assert its exclusive dominion and control over certain islands, the nonjoined party who also claimed ownership of the islands was deemed indispensable, and allowed to intervene as of right);  *Arizona Lead Mines*,  3 F.R.D. at 137 ("In a suit to quiet title . . . anyone claiming to hold any interest in the property [in question] may be required to come in and set up the nature of his interest and its source.").

141 F.R.D. 320, 322-23 (D. Kan. 1991) (alterations in citations).

In accordance with these authorities, the State is a necessary and indispensable party, and the Complaint must be dismissed if the State is not joined.  The State is a necessary and indispensable party because it is the putative owner of a joint undivided interest in all claimed R.S. 2477 rights-of-way, county roads, and Class D roads in Utah.  *See* Utah Code Ann. § 72-5-302(2) ("The state and its political subdivisions have title to the R.S. 2477 rights-of-ways in accordance with Sections 72-3-102, 72-3-103, 72-3-104, 72-3-105, and 72-5-103."); *id.* § 72-3-103(3) ("The state and county have joint undivided interest in the title to all rights-of-way for all county [class B] roads"); *id.* § 72-3-105(3) ("The state and county have joint undivided interest in the title to all rights-of-way for class D roads."); *id.* § 72-5-103(2)(b) ("If the highway is a county road . . . or right-of-way described in Title 72, Chapter 5, Part 3, Rights-of-way Across

15

Federal Lands Act, title to all interests in real property less than fee simple held under this section is held jointly by the state and the county, city, or town holding the interest.").[9]  As the putative owner of a joint undivided interest in each claimed R.S. 2477 right-of-way in this case, the State of Utah must be a party in this QTA action so that title can be fully adjudicated.

The State of Utah must also be joined because, absent its joinder, the United States will face a substantial risk of incurring double or inconsistent obligations.  *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).  By not joining the State in this action, the State would potentially have a second "bite at the apple" should the County lose on any of its claims since the State may contest that it is not bound by an adverse determination or precluded from relitigating the issue in an effort to achieve a different result.

The State of Utah's asserted statutory rights of ownership are implicated in this case, and the United States faces a substantial risk of incurring double or inconsistent obligations.  Both factors under Rule 19(a)(1) provide independent grounds for requiring that the State of Utah be joined in this action.[10]  Under Federal Rule of Civil Procedure 12(b)(7), the Court should dismiss this Complaint for the County's failure to join the State as a necessary and indispensable party.

---

[9] Although the United States understands that the State of Utah claims an interest in R.S. 2477 rights-of-way throughout the state pursuant to these Utah statutes, the United States does not concede the validity of such post-1976 statutes or that such statutes were sufficient to vest the State with an interest.  The United States reserves its defenses to such claims.  Nonetheless, the State of Utah must be joined to address its claimed interest in the rights-of way.

[10] Should the State of Utah join the action, it would be required to satisfy the statutory notice requirement of the QTA, which requires a State to provide a 180-day notice to the appropriate federal agency to inform the agency of the State's intention to sue, its basis for the suit, and a description of the lands involved.  *See* 28 U.S.C. § 2409a(m).

## II.   Standard of Review - Fed. R. Civ. P. 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction are properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(1); *see also Bateman v. City of W. Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996).  When determining a motion to dismiss under Rule 12(b)(1), "the court may consider not only the complaint itself, but also the affidavits, deposition testimony, and other materials outside the complaint."  *U.S. Synthetic Corp. v. ReedHycalog, Ltd.*, 407 F. Supp. 2d 1274, 1276-77 (D. Utah 2005) (citing *United States v. Spectrum Emergency Care, Inc.*, 190 F. 3d 1156, 1160 n.5 (10th Cir. 1999)); *see also Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005).  When jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of producing evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence.  *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).

## III.   This Court Lacks Subject Matter Jurisdiction Because There is No Case or Controversy to Adjudicate

At the most elemental level, the constitutional minimum for the exercise of federal court jurisdiction is a dispute presenting a justiciable "case or controversy." U.S. Const. art. III, § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984).  Federal courts are courts of limited jurisdiction and are presumed to lack jurisdiction unless the contrary affirmatively appears.  *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1048 (10th Cir. 2004).  In other words, an actual, live controversy must exist between the parties before jurisdiction is proper in federal district court.  *Garcia v. Bd. of Educ. of Albuquerque Pub. Schs.*, 520 F.3d 1116, 1123 (10th Cir. 2008)

17

(quoting *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996)); *cf. Unified Sch. Dist. No. 259 v. Disability Rights Ctr.*, 491 F.3d 1143, 1147 (10th Cir. 2007) ("It is well established that what makes a declaratory judgment action 'a proper judicial resolution of a "case or controversy" rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff.'" (quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994))).  Kane County has failed to meet the jurisdictional minimum for forty-three of its forty-nine claims, and instead essentially seeks an advisory opinion from this Court confirming title to claimed rights-of-way for which no actual dispute exists sufficient to invoke this Court's jurisdiction.

The court in *Washington County v. United States* determined under similar circumstances that a Utah county seeking to quiet title to alleged R.S. 2477 rights-of-way on roads crossing federal land had not presented a case or controversy.  903 F. Supp. 40, 41 (D. Utah 1995). Specifically, the court found the allegation that the "United States claims, or may claim, the right to deny [plaintiff] its right to construct and maintain its R.S. 2477 rights-of-way to meet applicable safety standards" was "insufficient to present "a definite and concrete controversy." *Id.*  Because the plaintiff had not alleged that the United States was interfering with or denying the existence of any rights claimed by the plaintiff, the court concluded that the complaint failed to state a case or controversy.[11]  *Id.* at 42.

---

[11] Some arguments similar to those asserted in the present Motion were previously raised in two earlier cases in this District that did not result in decisions that are relevant here.  In one, *Kane Cnty. v. United States*, Dkt. No. 20, No. 2:10-cv-00136-TC (filed Sept. 14, 2010), the County voluntarily dismissed its complaint after the defendant filed its motion to dismiss.  In the other, *Kane Cnty. v. United States*, Dkt. No. 102, No. 2:08-cv-00315-CW (filed Oct. 30, 2009), the

Similarly, here Kane County has failed in its burden of establishing the existence of a "definite and concrete controversy" for forty-three roads because it does not demonstrate that the United States has "interfered with or denied the existence" of the rights-of-way asserted for these roads. The County seeks to establish a case or controversy principally by alleging that the Monument Plan and the Kanab Plan impair and deny the use, maintenance, and/or existence of alleged R.S. 2477 rights-of-way crossing the lands managed by these plans. The County further asserts that the Department of Interior has taken actions separate and apart from these plans to impair and deny the same rights-of-way. Each allegation of controversy fails.

### a. The Monument Plan Does Not Impair or Deny Any Potentially Valid R.S. 2477 Right-of-Way

1. <u>The Monument Plan Permits Public Motor Vehicle Use on the Monument Roads and Allows Routine Maintenance on Those Roads.</u>

The Monument Plan does not create a case or controversy because the Plan does not close the twenty-three Monument Roads to the public or prevent Kane County from conducting routine maintenance on these roads. Kane County asserts that the Monument Plan constitutes a "deliberate decision" by BLM not to acknowledge or recognize the County's rights-of-way, its interest in public highway management, its need to maintain its roads, or its regulatory authority over its transportation system, and that such refusal constitutes an impairment and denial of the County's vested rights. Pl.'s Compl. ¶¶ 103-07. However, the BLM has no duty to acknowledge any such rights in the Monument Plan, and there is no legal effect which could result from BLM not doing so. *Kane Cnty. v. Salazar*, 562 F.3d 1077, 1086-88 (10th Cir. 2009) (holding that the

---

district judge denied a motion to dismiss from the bench but has not issued an opinion containing his analysis and conclusions.

BLM had no duty in preparing land management plan to identify and determine the existence of alleged R.S. 2477 rights-of-way within the plan).

The Plan, by its terms, does not affect any R.S. 2477 rights-of-way, but rather preserves the status quo as to such rights-of-way.  As Kane County itself admits in its Complaint, the Monument Plan expressly states that it does not affect valid existing rights.  Ex. A, Monument Plan at 46; Pl.'s Compl. ¶¶ 78.  The Monument Plan also explicitly provides for continued routine road maintenance on all open roads, noting that "open routes may be maintained within the disturbed travel surface area."  Ex. A, Monument Plan at 47.  Nothing in the Plan denies, disputes, contradicts, or conflicts with Kane County's putative rights here.

The plain language of the Monument Plan contradicts the County's allegations of harm.  In discussing the Monument Plan, the County asserts that "for the first time" a plan was adopted "purporting to specifically restrict the maintenance and uses of the roads."  Pl.'s Compl. ¶ 79.  But as stated above, the Monument Plan was established subject to valid existing rights.  Ex. A, Monument Plan at 46.  This plan in no way operates to extinguish any putative R.S. 2477 right-of-way and does not interfere with the public motor vehicle use on the roads or the County's ability to perform routine maintenance on the roads.

Moreover, the County's allegation that "BLM has recently commenced to enforce several land management plans under the premise that Kane County has no valid existing rights of way" is merely an attempt at creative pleading.  *See* Pl.'s Compl. ¶ 60.  The County provides no specific instances of this alleged "enforcement" which have operated to impair or deny any alleged rights-of-way.  The County refers to a lone trespass citation issued in 1996, but has identified no roads claimed in this action for which it has received any trespass citations.  The

20

United States is only presently aware of a few citations which were issued in the mid-1990s, and all for roads not claimed in this action.  Further, the referenced 1996 citation would have been issued regardless of whether the County held a valid, existing or adjudicated R.S. 2477 right-of-way.  In that circumstance, the County had undertaken to conduct wide-scale road changes and improvements which went far beyond routine road maintenance, and without consultation with the BLM.  In such a situation, the County is required to coordinate with the BLM regardless of the existence of any valid R.S. 2477 right-of-way.  *SUWA*, 425 F.3d at 748.  Accordingly, the previous issuance of such a citation is not a valid basis for a present case or controversy here.

      2.  <u>Kane County Fails to Identify any BLM Signs in the Monument that Impair the Use or Maintenance of the Monument Roads.</u>

Kane County also alleges that the Monument Plan creates a case or controversy because the BLM posted road closure and vehicle restriction signs pursuant to the Plan on unspecified roads throughout the Monument.  Pl.'s Compl. ¶¶ 82-83.  This allegation fails to demonstrate a case or controversy for numerous reasons.  First, the County cannot establish the presence of any offending road closure signs posted pursuant to the Monument Plan because the Plan does not close any roads which are the subject of this Motion.  Second and consistent with the foregoing fact, the County has not identified a single road in the Complaint that is allegedly subject to such signage, thereby avoiding its obligation to demonstrate any specific instance of dispute.[12]  Third,

---

[12] The only specific road mentioned in this portion of the County's Complaint is Cottonwood Canyon road, and the County complains that the BLM has assigned this road a number that is different than that assigned by the County.  *See* Pl.'s Compl. ¶ 91.  However, this allegation is also wholly devoid of specificity, as the County fails to allege the context in which this road number assignment was made, or whether a sign bearing this road number has been posted.  In any case, the County does not suggest, much less establish, how a different route number would create a case or controversy here.

the County has neither described any specific vehicle restrictions that are imposed by the alleged signs nor how any such restrictions would injure their claimed rights-of-way in the Monument. Fourth and finally, the County fails to demonstrate a case or controversy as a result of the BLM's maintenance of road numbering signs in the Monument, *see* Pl.'s Compl. at ¶¶88, 91, as the County fails to explain how assigning road numbers for BLM management and identification purposes for roads crossing federal lands equates to an assertion of ownership of the rights-of-way, as opposed to the federal land management activities.

Moreover, even were the County to establish R.S. 2477 rights-of-way for all of the Monument Roads, the allegations regarding vehicle restriction signs would still not establish a case or controversy because the BLM remains free to reasonably regulate the rights-of-way which pass through the Monument.  *See, e.g.*, *SUWA*, 425 F.3d at 746 (stating that "changes in roads on R.S. 2477 rights of way across federal lands are subject to regulation by the relevant federal land management agencies" and citing cases acknowledging that, regardless of whether a trail in question is a right of way, it is nonetheless subject to agency regulation); *United States v. Jenks*, 22 F.3d 1513, 1518 (10th Cir. 1994) (holding that under "basic principles of property law," easement rights are subject to regulation by a federal agency as the owner of the servient estate); *Wilkenson v. Dep't of Interior*, 634 F. Supp. 1265, 1278-80 (D. Colo. 1986) (recognizing R.S. 2477 right-of-way, but allowing the National Park Service to regulate size, cargo, and speed of motor vehicles utilizing the right-of-way within a national monument).  Kane County's allegations appear to be predicated on a desire that the County be declared the sole owner of the claimed roads.  *See, e.g.,* Pl.'s Compl. ¶¶ 168-171.  However, as an alleged "holder" of the claimed rights-of-way, Kane County can never be fully and completely free of the fact that the

underlying land is owned by the federal government and such rights-of-way will be subject to reasonable regulation.  As in any dominant-servient estate situation, this requires a "system of coordination," and the two interests are, and will remain, necessarily connected and intertwined. *See SUWA*, 425 F.3d at 746.

Indeed, BLM has an obligation to protect the land over which the Monument Roads pass. *See* FLPMA § 302(b), 43 U.S.C. § 1732 (b) ("In managing the public lands, the Secretary shall, subject to this Act and other applicable law and under such terms and conditions as are consistent with such law, regulate, through easements . . . [and] licenses . . . the use, occupancy, and development of the public lands . . . In managing the public lands, the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands."); *accord SUWA*, 425 F.3d at 747 (further acknowledging that "[a] right of way is not tantamount to fee simple ownership of a defined parcel of territory.  Rather, it is an entitlement to use certain land in a particular way.").  Therefore, Kane County cannot establish a case or controversy for the Monument Roads based upon any signs allegedly posted pursuant to the Monument Plan that regulate rather than deny the use of the alleged rights-of-way, as the BLM has the right to reasonably regulate existing rights-of-way as they cross federal land.

### 3.  Prior Court Statements by the BLM Do Not Create a Case or Controversy.

Finally, the County attempts to establish the existence of a controversy based upon previous statements made in court by the BLM, where the County claims the BLM said that "Kane County had nothing more than 'unproven' assertions and no vested rights-of-way within the Monument" and that "Kane County's remedy was to sue to quiet title to its rights-of-way." Pl.'s Compl. at ¶¶ 100-101.  Even assuming, *arguendo*, that the BLM made these statements,

nothing about them would relieve the County of its irreducible constitutional obligation to

establish a present case or controversy in any action brought in federal court as to any particular

claimed rights-of-way.  It is only once a question or cloud has arisen regarding specific claimed

rights-of-way – in other words, a case or controversy – that the federal courts are vested with

subject matter jurisdiction to adjudicate a title dispute over those claimed rights.  Unless and

until a legitimate question arises, this Court lacks subject matter jurisdiction in this action.

> **b. The Kanab Plan Does Not Impair or Deny Any Potentially Valid R.S. 2477 Rights-of-Way**

For many of the same reasons as set forth above, the County also fails to assert a case or

controversy regarding the Kanab Plan.  As with the Monument Plan, each of the twenty-one

Kanab Roads is designated as open to public motor vehicle use under the Kanab Plan, which

allows the public to use each road in the same manner as before the Plan's issuance.  Ex. B,

Dekeyrel Decl. ¶ 6.  Nothing in the Kanab Plan prevents the public from operating motor

vehicles on the Kanab Roads, and nothing in the Plan prevents Kane County from continuing

with routine maintenance on such roads.

The Kanab Plan also expressly states that it "does not affect valid existing rights," and

disclaims any intent to make any determinations concerning the ownership or validity of R.S.

2477 claims, declaring that "[t]he Approved RMP does not adjudicate, analyze, or otherwise

determine the validity of claimed rights-of-way."  Ex. C, Kanab Plan at 17.  The Kanab Plan

further acknowledges that "[s]ome government entities may have a valid existing right to an

access route under Revised Statute (RS) 2477," *id.* at 153, and more specifically that:

> The State of Utah and Kane and Garfield counties may hold valid existing rights-of-way in the planning area pursuant to [R.S.] 2477 . . . This RMP does not

24

adjudicate, analyze, or otherwise determine the validity of claimed rights-of-way. However, nothing in the RMP extinguishes any valid right-of-way, or alters in any way the legal rights the state and counties have to assert and protect RS 2477 rights or to challenge in Federal Court or other appropriate venue any use restrictions imposed by the RMP that they believe are inconsistent with their rights.

Ex. E, PRMP at 1-13 to 1-14. As with the Monument Plan, these provisions are fatal to the County's assertions of injury because they establish that the Kanab Plan preserves the status quo as to R.S. 2477 rights-of-way without purporting to adjudicate or otherwise affect their validity.

Regarding road maintenance, the Kanab Plan contains no restrictions on road maintenance by the County and contemplates that the BLM will pursue "[road] maintenance agreements with highway authorities in the decision area." Ex. C, Kanab Plan at 108. The Kanab Plan expressly contemplates future cooperative efforts between the BLM and the County concerning rights-of-way claims and discusses the means by which the BLM might document its position on these rights-of-way in its official records. *Id.* at 17. Accordingly, the Kanab Plan does not affect and contains no restrictions on the County's ability to perform routine maintenance on the Kanab Roads sufficient to establish a justiciable case or controversy. Nothing in the Plan denies, disputes, contradicts, or conflicts with Kane County's putative rights here.

Furthermore, the County has not identified a single "enforcement" action attributed to the Kanab Plan that could give rise to a case or controversy. BLM planners ensured that the Kanab Plan was enacted subject to valid existing rights, and the enactment and alleged "enforcement" of the plan accordingly does not impair any rights and interests the public may have. The County admits that the Kanab Plan was enacted subject to such rights, *see* Pl.'s Compl. ¶¶ 111,

113, and the County has not identified any use restriction contained in the Kanab Plan which is inconsistent with any public right of use.  Rather, the County claims that the BLM's alleged failure to acknowledge the County's claimed rights-of-way in an express manner in the Kanab Plan creates the inconsistency.  But this is not so.  The BLM has no duty to acknowledge any such rights in the Kanab Plan, and there is no legal effect which could result from BLM not doing so.  *Salazar*, 562 F.3d at 1086-88 (holding that the BLM had no duty in preparing land management plan to identify and determine the existence of alleged R.S. 2477 rights-of-way within the plan).

Kane County likewise finds no support for its position in alleging that "BLM has claimed Kane County's roads crossing federal land in the Kanab Field Office as BLM roads . . . [and] [t]he BLM's road numbering signs and management of Kane County's roads conflicts with Kane County's right, title and interest in its public highway rights-of-way."  Pl.'s Compl. ¶ 119. Because the Kanab Plan by its terms does not make any R.S. 2477 determinations or have any effect on R.S. 2477 claims, the posting of road numbering signs pursuant to the Plan for resource management purposes does not equate to an assertion of title to any rights-of-way claimed by the County and is insufficient to create a justiciable case or controversy or cognizable injury. Rather, the placement of road numbering signs is simply an act to identify roads for the purpose of assisting the public with navigation as they traverse the lands covered by the Kanab Plan .

Moreover, Kane County's ability to post certain road numbering signs would not eliminate the BLM's ability to do the same.  The mere posting of road numbering signs does not create a conflict unless the road signs create a conflict over any public right of use.  *See TWS v. Kane Cnty.*, 560 F. Supp. 2d at 1159 (holding County ordinance and road signs invalid only

where they purported to open routes to off-highway vehicle use that had previously been closed

by the relevant federal land management plan).  The County has not identified a single specific

road where a road sign has created a conflict over any public right of use.  Accordingly, the

County cannot establish a case or controversy as to the Kanab Roads because the Plan allows

public motor vehicle use on these roads and does nothing to impair or inhibit the County's ability

to conduct routine maintenance on these roads or to any public right of use.

> ### c.  Kane County Has Failed to Make Any Credible Allegations Sufficient to Establish that the National Park Service's Management of the Glen Canyon NRA Has Impaired or Denied Any Potentially Valid R.S. 2477 Rights-of-Way

Kane County also relies upon vague allegations concerning the National Park Service's

management of the Glen Canyon NRA in an effort to establish a case or controversy as to certain

unidentified roads.  However, the only specific road named in the County's Complaint in

connection with the NRA is the Hole In The Rock Road, which is not one of the roads for which

jurisdictional dismissal is sought in the present Motion.  Moreover, even considering the

County's allegations concerning the NRA, any alleged controversy or injury that could be

extrapolated from these vague allegations would be speculative and illogical.

The County first erroneously relies upon a statement allegedly made over five years ago

by an unnamed NRA Chief Ranger, who stated that roads in the NRA would be managed

consistent with National Park Service ("NPS") policies.  Pl.'s Compl. ¶ 138.  This statement is

insufficient to create a case or controversy because it does nothing more than state the general

and non-controversial proposition that a unit of the NPS is to be managed in accordance with

NPS policies.   The County also errs in further alleging that a conflict would exist between Kane

County's then-existing OHV ordinance and the NPS's management of the NRA.  Because Kane County revoked the ordinance in question in 2008, it cannot serve as the basis for a case or controversy in the present action.  In any event, the County has not identified any management action that applies to any specific alleged R.S. 2477 right-of-way in the NRA, much less explained how such management action would interfere with any such right-of-way.

In addition, from the seemingly innocuous, and indeed fairly obvious, statement that the NRA would be managed consistent with NPS policies, Kane County has made the illogical leap that this NPS statement was equivalent to an outright denial of Kane County's alleged ownership of purported R.S. 2477 rights-of-way in the Glen Canyon NRA.  Pl.'s Compl. ¶ 139-40. However, as the County acknowledges in the Complaint, the Glen Canyon NRA was established "subject to valid existing rights."  *Id.* at ¶ 128.  There is no dispute that the Glen Canyon NRA was established subject to such rights, and the County has identified no single action or event that could establish a case or controversy sufficient under Article III.

### d. Actions by the Department of Interior Following the Approval of Its Management Plans Do Not Impair or Deny Any Potentially Valid R.S. 2477 Right-of-Way

Kane County has also failed to assert a case or controversy in relying upon alleged actions of the Department of Interior ("DOI") undertaken following the approval of its management plans.

The County asserts that DOI, through the alleged testimony of a Solicitor's Office attorney, has stated that either a federal court or DOI must first find Kane County to be a holder of a R.S. 2477 right-of-way before the County may conduct routine maintenance of a claimed county road.  *Id.* at ¶ 151.  Assuming for discussion that the allegation was accurate, it fails to

28

recognize that a Solicitor's Office attorney is not authorized to undertake action sufficient to create a case or controversy. *See United States v. Watashe*, 102 F.2d 428, 431 (10th Cir. 1939) ("Without statutory authority, subordinate officials have no power with respect to the duties of an office involving the exercise of judgment and discretion"). Moreover, this allegation selectively ignores contrary evidence, which demonstrates DOI's recently stated position regarding routine road maintenance to be quite the opposite. On March 23, 2010, Monument Manager Rene Berkhoudt sent a letter to Bert Harris, Kane County Road Supervisor, which expressly stated that:

> [t]he Grand Staircase has consistently maintained that Kane County retains the right and the authority to continue road maintenance and snow removal operations and that these rights have not been affected by recent litigation and court rulings by the District Court of Utah and the 10th Circuit Court of Appeals upholding the Grand Staircase Escalante National Monument Travel Management Plan.

Ex. G, Berkhoudt Letter. A second letter was also recently sent from DOI to Kane County Commissioners Daniel Hulet, Doug Heaton, and Mark Habbeshaw, urging that "Kane County separate the performance of road maintenance and snow removal activities from the ongoing litigation as a matter of public safety" and warning that "BLM does not have the assets to conduct routine road maintenance or snow removal in Kane County." Ex. H, Berkhoudt and Barber Letter.

Nevertheless, Kane County has voluntarily, and unilaterally, acted to terminate its own road maintenance work. *See* Ex. I, Habbeshaw Decl. ¶ 19 ("Kane County stopped managing and maintaining all of its R.S. 2477 Class B and Class D roads" to avoid potentially being "sued again by the BLM for trespass" and being "held in contempt of court for violating Judge

29

Campbell's decision [in *The Wilderness Society v. Kane County*, 05-cv-854 (D. Utah)].").

Additional correspondence from the former Utah State Director of BLM specifically notes that

Kane County had previously continued its road maintenance work through the summer of 2008

when the County itself decided to cease its own maintenance activities.  Ex. J, Sierra Email.

Notably, Kane County does not assert that the BLM has ever affirmatively prevented the County

from conducting routine road maintenance activities.  In fact, the County concedes that it has

voluntarily ceased its own maintenance activities.  *See* Pl.'s Compl. ¶ 162.  As demonstrated

above, the BLM has actively attempted to persuade the County to continue its maintenance

activities, but Kane County has voluntarily acted to cease its road maintenance work.

 The County's assertions of case or controversy also appear largely to rely upon a

misreading of the prior court ruling in *The Wilderness Society v. Kane County* ("*TWS I*"), 560 F.

Supp. 2d 1147.[13]  Kane County attempts to characterize the court's previous ruling in *TWS I* as

establishing a justiciable injury where the United States fails to acknowledge the County's

purported rights-of-way in approving its federal travel management plans.  This contention

completely mischaracterizes the Court's ruling and squarely conflicts with the Court's

subsequent clarification of its prior decision.  *See The Wilderness Soc'y v. Kane Cnty.* ("*TWS

II*"), No. 2:05-CV-854-TC, 2008 WL 2421163 (D. Utah June 13, 2008) (unpublished).

 In *TWS I*, several environmental groups challenged the placement of certain Kane County

signs which purported to open roads on federal public land to off-road vehicle use, *even though*

---

[13] The Tenth Circuit reversed the District Court in an en banc opinion issued on January 11,
2011.  *The Wilderness Society v. Kane Cnty.*, No. 08-4090, 2011 WL 79487, ___ F.3d ___ (10th
Cir. Jan. 11, 2011) (deciding 6-3-2 that plaintiffs lacked prudential standing and vacating and
remanding with instructions to dismiss the action).

*those same roads had been closed to that precise type of vehicle use under the applicable federal land management plan*.  560 F. Supp. 2d at 1149, 1156.  The County's argument in support of its sign placement rested in part on its assertion that it held R.S. 2477 rights-of-way for the roads where the disputed signs were placed, but the Court found that supporting assertion unavailing since the County had never properly established those asserted rights-of-way in a court of law. *Id.* at 1159-60.  The only signs that the Court ordered the County to remove were those whose placement created a "conflict with federal land management plans."  *Id.* at 1166.  The ruling did not otherwise restrict Kane County's ability to use or maintain any roads where such use or maintenance was <u>not</u> in conflict with federal land management plans.

As the Court subsequently clarified and explained, its ruling does not purport to deny the existence of any R.S. 2477 claims, nor does it affect in any way the County's ability to use and maintain roads that are designated as open under the federal plans.  *TWS II*, 2008 WL 2421163, at *1 ("To the extent the language needs clarifying, the court emphasizes here that it has enjoined any County action that purports to manage or open to vehicle use *any route or area closed to such use by governing federal land management plan or federal law* absent a court-validated right-of-way. That is, the court's order only applies to actions that directly conflict with federal closures and federal limitations on modes and methods of transportation on routes within federal land.") (emphasis in original).  Only when a conflict arises between the BLM road status designation and Kane County's use of the road can a case or controversy or injury arise – such as if BLM designates a road as permanently "closed" and the public is prevented from using the road.  That is not the case for the forty-three roads that are the subject of the present Motion.

31

These roads are designated as "open" and no conflict exists between those designations and Kane County's use and maintenance of the roads.

Kane County's allegations concerning the "administrative determination" process, which assert that DOI has not recently completed any such determinations, are equally unavailing. *See* Pl.'s Compl. ¶¶ 152-154.  The County has not alleged that it filed a single request for such a determination for any road named in this Complaint.  Moreover, the courts have held that the administrative determination process is neither sufficient nor necessary to validate conclusively an R.S. 2477 right-of-way.  *See SUWA*, 425 F.3d at 757.  Even if the BLM chose to conduct such administrative proceedings for its own purposes and within the discretion of the Department of Interior, BLM has not been under any obligation to do so for the forty-three roads that are the subject of this Motion.  The failure to conduct such a determination therefore cannot provide the basis for a case or controversy.

In summary, DOI's actions do not give rise to a case or controversy sufficient to bestow jurisdiction under Article III as to forty-three of the County's claims.  Kane County has not been impeded in conducting routine road maintenance, but instead has voluntarily chosen to cease its own road maintenance activities.  Judicial resources should be reserved to address cases of actual title disputes, rather than for the timely, costly, and unnecessary adjudication of these forty-three claims that are predicated wholly on nonspecific allegations, speculation, and legally erroneous conclusions.

**IV.**     **Kane County Lacks Standing Because It Has Not Suffered an Actual Injury**
            **Traceable to the United States**

     In addition to failing to allege a general case or controversy, Kane County also

specifically fails to establish standing to pursue its claims.  "The constitutional limits on standing

eliminate claims in which the plaintiff has failed to make out a case or controversy between

himself and the defendant."  *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979).  In

essence, this means that, throughout the litigation, the "[plaintiff] must have suffered, or be

threatened with, an actual injury traceable to the defendant and likely to be redressed by a

favorable judicial decision."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

     To assert standing, a plaintiff must satisfy three elements under *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992).  *See also Am. Charities for Reasonable Fundraising*

*Regulation, Inc. v. Olsen*, No. 2:08-cv-00875DAK, 2010 WL 2802497, at *3 (D. Utah July 15,

2010).  First, a plaintiff must establish an injury in fact that is concrete, particularized, and

"actual or imminent."  *Lujan*, 504 U.S. at 560; *SUWA v. Sierra*, No. 2:07-cv-00199-CW, 2010

WL 4782976, at *3 (D. Utah Nov. 16, 2010).  Second, a causal connection must exist between

the injury and the challenged conduct that is fairly traceable to the defendant.  *Lujan*, 504 U.S. at

560.  Third, "it must be likely . . . [and not] merely speculative that the injury will be redressed

by a favorable decision."  *Id.* at 561.  "Plaintiffs must establish injury, not as a mere pleading

requirement but rather as an indispensable part of their case."  *SUWA v. Sierra*, 2010 WL

4782976 at *3.

     With respect to the Monument Roads and the Kanab Roads, the County has alleged no

injury-in-fact or causal connection between the alleged injury and challenged conduct that is

traceable to the United States.  Rather, the only apparent injury here has been caused by Kane County's unilateral, voluntary refusal to continue maintaining the respective roads.  Kane County attempts to distort the cause behind its allegations through loose paraphrasing and conclusory statements, but the irreducible constitutional minimum of standing has not been met.

For reasons similar to those discussed in the argument addressing the lack of case or controversy, the County's assertions of injury in the present litigation based upon the provisions of the Monument Plan and Kanab Plan (the "Plans") fail.  First, the County cannot demonstrate any injury to its interests based upon the Plans because the Plans do not close any roads that are the subject of this Motion.  Furthermore, and as this court has previously recognized, the Monument Plan "contemplates maintenance work on roads designated as 'open' within the Monument," *Kane Cnty. v. Kempthorne*, 495 F. Supp. 2d 1143, 1158 (D. Utah 2007), and the Kanab Plan similarly excludes maintenance from its scope.  *See* Ex. C, Kanab Plan at 17, 108. Finally, the County cannot demonstrate standing based upon an allegedly "deliberate decision" by BLM not to acknowledge or recognize its rights-of-way in the Plans or the NRA, *see, e.g.,* Pl.'s Compl. ¶¶ 103-06; 120; 141, because BLM was not obligated to so acknowledge or recognize any such rights in any formal manner.

The County's assertions of injury are similar to those already rejected in prior litigation challenging the validity of the Monument Plan under the Administrative Procedure Act.  In that litigation, the County argued that the Monument Plan impaired its interest by, among other things, leaving its rights-of-way claims stuck in the status quo.  *Kempthorne*, 495 F. Supp. 2d at 1157, *aff'd by Kane County v. Salazar*, 562 F.3d 1077 (10th Cir. 2009).  The district court rejected this claim, holding that the County lacked standing because "maintaining the status quo

34

as to unresolved claims, without more, cannot cause the Counties a discrete injury-in-fact sufficient to afford them standing to challenge the validity of the [Monument] Plan under the APA." *Id.*  The Tenth Circuit affirmed this dismissal, in part, on the grounds that the BLM had no duty in preparing the Monument Plan to identify and determine the existence of all alleged R.S. 2477 rights-of-way in the Monument in preparing the Plan. *Salazar*, 562 F.3d at 1086-88. Standing cannot be grounded upon "harm" flowing from the failure to carry out a non-existent duty. *See Utah v. Babbitt*, 137 F.3d 1193, 1207 (10th Cir. 1998).

The Plans are also not the cause of any alleged impairment in Kane County's ability to conduct routine maintenance.  The Plans include no provisions that preclude routine maintenance of the Monument Roads and Kanab Roads, but rather Kane County has unilaterally decided to stop its own routine road maintenance work. *See* Ex. I, Habbeshaw Decl ¶ 19; Pl.'s Compl. ¶ 162.  Such self-inflicted injury is not sufficient to create a case or controversy or judicially cognizable injury giving rise to standing. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) ("No [party] can be heard to complain about damage inflicted by its own hand.").  The County cannot establish causation regarding the Plans.

Finally, the alleged failure of the Department of Interior to acknowledge the County's claimed R.S. 2477 rights cannot support the County's standing.  Such a failure does not constitute a judicially cognizable injury, nor the cause of such injury, because DOI does not have any duty to identify or acknowledge unproven R.S. 2477 rights-of-way before adopting management plans.  Accordingly, the County's assertions of harm based upon the BLM's alleged failure to perform this non-existent duty cannot serve as the basis for standing. *See Salazar*, 562 F.3d at 1086-88; *Williams v. Bankert*, No. 2:05CV503DAK, 2007 WL 3053293, at *6 (D. Utah

35

Oct. 18, 2007) (unpublished) ("Neither FLPMA nor any other statute imposes a duty on the BLM to determine the validity of R.S. 2477 right-of-way claims as part of the process of preparing the Travel Plan.").  In sum, the County cannot establish standing because it has not identified a concrete and particularized injury that has been caused by the actions of the United States.

**V.     The Court Lacks Jurisdiction Under the Quiet Title Act Where the United States Has Never Asserted a Claim as to the Monument and Kanab Roads and Where There is No Present Disputed Title to Real Property**

The Court also lacks jurisdiction over Kane County's forty-three claims for the Monument Roads and the Kanab Roads because the claims do not satisfy the QTA's prerequisites for a waiver of the United States' sovereign immunity.  Absent an express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006).  "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."  *United States v. Mottaz*, 476 U.S. 834, 841 (1986).  A waiver of sovereign immunity by the United States must be expressed unequivocally.  *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992).

Kane County brings this action pursuant to the QTA, which is the only potential source of waiver of the United States' sovereign immunity in suits seeking to quiet title to federal lands. *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983); *Sw. Four Wheel Drive Assn. v. Bureau of Land Mgm't*, 363 F.3d 1069, 1071 (10th Cir. 2004).  The waiver provided by the QTA, as with any waiver of sovereign immunity, must be strictly construed.  *See Governor of Kansas v. Kempthorne*, 516 F.3d 833, 845 (10th Cir. 2008).  Before a court can

36

exercise jurisdiction under the QTA, several conditions must be satisfied, including that the

United States must claim an interest in the property at issue, 28 U.S.C. § 2409a(a), and that there

be a disputed title to real property.  *Id.* § 2409a(d); *see also Hazel Green Ranch, LLC v. U.S.*

*Dep't of Interior*, No. 1:07-cv-00414 OWW SMS, 2008 WL 4755325, at *2-3 (E.D. Cal. Oct. 28,

2008) (unpublished).  Plaintiffs must also plead with particularity "the right, title, or interest

claimed by the United States."  28 U.S.C. § 2409a(d).  As discussed below, because Kane

County fails to satisfy these requirements as to the Monument Roads and the Kanab Roads, this

Court does not have jurisdiction over the rights-of-way claimed for these roads under the QTA.

### a.    The United States Has Never Asserted a Claim Over the Monument and Kanab Roads Sufficient to Give Rise to a Quiet Title Action

The United States has never acted in a manner sufficient to "claim an interest" in forty-

three of the claimed rights-of-way at issue here, because the United States has confirmed that

both the Monument Plan and the Kanab Plan were issued subject to valid existing rights, and has

not interfered with, denied the right to use, or otherwise asserted an interest inconsistent with

those forty-three claimed rights-of-way.  *See* Ex. A, Monument Plan at 46; *accord* Ex. C, Kanab

Plan at 17.  As demonstrated above, the County has failed to carry its burden of identifying any

ownership claim by the United States sufficient to give rise to a QTA claim.  Indeed, the Plans

by their very terms exclude any R.S. 2477 determinations from their scope, specifically disclaim

any effect on such rights-of-way, and commit to recognize any R.S. 2477 rights-of-way that are

subsequently determined to be valid.

In *Peterson v. Morton*, the court held that where a public law authorized the sale of

federal land, but which sale was "subject to any existing valid rights pertaining to the lands

37

included within the transfer area," the proposed sale did not trigger the running of the statute of limitations under the QTA.  465 F. Supp. 986, 990 (D. Nev. 1979) (quoting Section 5 of Pub. L. No. 86-433, 74 Stat. 74 (1960)), *partly vacated on other grounds*, *Peterson v. Watt*, 666 F.2d 361 (9th Cir. 1982).  While that case was directed at the issue of whether the statute of limitations had begun to run, the same reasoning is applicable to whether the United States has ever in the first instance asserted a claim sufficient to waive sovereign immunity.  By making the sale subject to pre-existing rights, the government did not assert a claim to those other rights, but expressly declared that the pre-existing rights would continue undisturbed.  To similar effect, by making the Monument Plan and Kanab Plan subject to pre-existing rights, which includes claimed R.S. 2477 rights-of-way, the United States did not assert a claim to those rights sufficient to waive its sovereign immunity under the QTA.

### b.   The United States Has Not Waived Its Sovereign Immunity Because There is No Present Disputed Title to Real Property

For many of the same reasons, the County has also not demonstrated that a present disputed title to real property exists.  Courts strictly apply the threshold requirement that a dispute or conflict in title exist.  *See, e.g., Alaska v. United States*, 201 F.3d 1154 (9th Cir. 2000). In *Alaska*, the State argued that the United States had disputed its claim of title to a certain riverbed based upon the United States' position on several similarly-situated rivers, and therefore a QTA claim should stand.  *Id.* at 1164-65.  The court disagreed, and held that since the United States had never actually disputed the State's claim as to that specific river, the State had no basis for a QTA claim as to that river, even though the United States refused to either confirm or deny the State's claimed property right.  *Id.*

38

As in *Alaska*, here Kane County has not demonstrated a dispute or conflict regarding its asserted property interests in forty-three of its right-of-way claims.  Both the Monument Plan and the Kanab Plan currently identify the roads associated with these forty-three claimed rights-of-way as "open" and do nothing to interfere with the County's maintenance of these roads.  Moreover, the Plaintiff's Complaint does not identify any further federal action denying Kane County's asserted property interests in these roads.  Therefore, this Court has no subject matter jurisdiction to hear these claims under the QTA, and they should be dismissed.

> **c.      Kane County Has Not Pled Its Claims With the Statutorily-Required Particularity Necessary to Invoke Jurisdiction Under the Quiet Title Act**

The County's allegations regarding "the right, title, or interest claimed by the United States" fail to satisfy the QTA's requirement that allegations be plead with particularity.  The QTA provides:

> The complaint shall set forth <u>with particularity</u> the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States.

28 U.S.C. § 2409a(d) (emphasis added).  Consistent with the limited waiver of sovereign immunity in the QTA, the requirements of the QTA "must be strictly observed and exceptions thereto are not to be implied."  *Stubbs v. United States*, 620 F.2d 775, 779 (10th Cir. 1980); *accord Mottaz*, 476 U.S. at 841.  As a result, where a complaint is based upon conclusory allegations rather than specific averments regarding the basis of a claim, the complaint should be dismissed.

In keeping with this rule, the court in *Washington County v. United States* dismissed several claims to R.S. 2477 rights-of-way, in part, on the grounds that the complaint did not

39

allege with particularity the interests claimed or the circumstances under which the interests were acquired.  903 F. Supp. 40.  As the court stated in support of its decision:

> Plaintiff alleges that it is "the owner of the highway rights-of-way shown" on the map attached to its complaint and that it "acquired its rights-of-way through public use, by County construction and maintenance of the rights-of-way or both."  The court agrees with the United States that these conclusory allegations do not identify "with particularity" any interest in real property; nor, do they . . . describe "the circumstances under which" any property interest was acquired.  Accordingly, as an additional basis for dismissing plaintiff's complaint, the court concludes that plaintiff has failed to comply with the conditions and requirements of 28 U.S.C. § 2409a by which the United States consents to suit in quiet title actions.

903 F. Supp. at 42; *see also Buchler v. United States*, 384 F. Supp 709, 711 (E.D. Cal. 1974) (dismissing quiet title claim for failure to plead with particularity the circumstances under which claimed interest was acquired and interest claimed by the United States); *City and Cnty. of Denver v. Bergland*, 517 F. Supp. 155, 175 (D. Colo. 1981) (dismissing QTA claim for failure to describe with particularity the interest claimed), *aff'd in part, rev'd in part*, 695 F.2d 465 (10th Cir. 1982).  Thus, the language of the QTA and its judicial interpretations make it clear that the United States has not waived its sovereign immunity to allow itself to be sued to quiet title based on general, conclusory allegations concerning the basis of the plaintiff's claims and the interest asserted by the United States.  Where a complaint suffers from such defects, there is no waiver of the United States' sovereign immunity under the QTA, and the court is without jurisdiction.

The County's Complaint fails to satisfy this basic condition to the waiver of the United States' sovereign immunity under the QTA – namely that the County allege with particularity "the right, title, or interest claimed by the United States."  As discussed throughout this

memorandum, the County has failed to identify any specific action taken by the United States asserting an interest in, or interfering with, the use of the rights-of-way claimed for the Kanab Roads and Monument Roads.  Kane County has therefore failed to satisfy the conditions necessary to effect a waiver of the United States' sovereign immunity under the QTA, and the Court lacks jurisdiction over the Complaint as to these claims.

## CONCLUSION

Because Kane County has failed to join a necessary and indispensable party, the Court should dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(7). In addition, because Kane County has not established a case or controversy or standing as to the forty-three roads discussed above, and because the United States has not waived its sovereign immunity under the QTA, the Court lacks subject matter jurisdiction over the claims concerning those roads and should dismiss those claims.

Respectfully submitted this 12th day of January, 2011.

IGNACIA S. MORENO
Assistant Attorney General

*/s/ Joanna K. Brinkman*
JOANNA K. BRINKMAN
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section

CARLIE CHRISTENSEN
United States Attorney, District of Utah
JOHN K. MANGUM
Assistant United States Attorney

ATTORNEYS FOR THE UNITED
STATES

41

Of Counsel:

James Karkut
Office of the Solicitor, Intermountain Region
Department of the Interior
125 S. State St., Suite 6201
Salt Lake City, Utah 84138

Kenneth Paur
Assistant Regional Attorney
USDA Office of the General Counsel
507 25th St., Room 205
Ogden, Utah 84401