IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KANE COUNTY, UTAH (2), (3), and (4), a Utah political subdivision; and STATE OF UTAH, <br><br> Plaintiffs (or Plaintiff-Intervenor, as to State of Utah in Kane County (2)), <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant, <br><br> and <br><br> SOUTHERN UTAH WILDERNESS ALLIANCE et al., <br><br> Defendant-Intervenors. | **MEMORANDUM DECISION AND ORDER RE SUWA'S PARTICIPATION** <br><br><br> Consolidated Case No. 2:10-cv-1073-CW[1] <br><br> (Consolidated with Case Nos. 2:11-cv-1031-CW and 2:12-cv-476-CW) <br><br> Judge Clark Waddoups |

Now before the court is SUWA's Motion to Allow SUWA Full-Party Participation or to Address the Motion to Intervene on the Merits. The moments in time that make one pause and reflect are varied. SUWA's most recent motions brought about one of those moments. To evaluate

---

[1] All "ECF No." references in this memorandum decision refer to docket entries in Case No. 2:10-cv-1073, unless otherwise noted. Additionally, when referring to a page number, the court references the ECF page numbering at the top of the page and not the numbering at the bottom of a document.

what SUWA's role should be going forward, the court took an opportunity to look backwards. There is a reason why phrases such as "20/20 hindsight" and "life can only be understood backwards"[2] have resonance when different issues are confronted. The phrases reflect that in the moment of a decision, it is almost always hard to predict future effects and outcomes. After those effects and outcomes happen, however, then the decision is more fully understood. Having looked backwards, the court recognizes it erred, and that a course correction is warranted.

In making this ruling, the court has taken into consideration SUWA's four Motions to Intervene on the docket in this case, including its most recent briefing and exhibits.[3] Because

---

[2] "Life can only be understood backwards; but it must be lived forwards." Søren Kierkegaard.

[3] On April 18, 2013, the court consolidated and merged *Kane County (3) v. United States*, 2:11-cv-1031 into *Kane County (2) v. United States*, 2:10-cv-1073. Order, ¶ 2, at 3 (ECF No. 91). Although the cases were merged and consolidated,

- On April 22, 2013, SUWA filed an entry on the *Kane County 2* docket moving to intervene in *Kane County (3)* (ECF No. 103).

- It then filed a second Motion to Intervene on April 23, 2013 for *Kane County (2)* (ECF No. 105).

- It filed a Renewed Motion to Intervene on May 25, 2018 (ECF No. 410), which should have only been lodged as discussed later in this memorandum decision.

- It filed a fourth Motion to Intervene on July 10, 2019 (ECF No. 516).

- After the fourth motion was terminated as moot, on July 25, 2019, SUWA then filed a motion to obtain full participation or to revive its fourth Motion to Intervene (ECF No. 530).

In addition to the above motions, this court also has addressed two other Motions to Intervene by SUWA in *Kane County (1)*, 2:08-cv-315. *See* Motion to Intervene, filed on November 11, 2008 (ECF No. 28 in Case No. 2:08-cv-315); Motion to Intervene, filed on December 27, 2017 (ECF No. 298 in Case No. 2:08-cv-315). Additionally, the court has addressed all of SUWA's other Motions to Intervene in the other R.S. 2477 road cases under the court's management. Ultimately, however, whether SUWA may intervene as of right likely will rest with the Tenth Circuit.

SUWA has briefed and/or argued the issue repeatedly in this case and in other cases before this court, the court is fully informed about SUWA's position and concludes that further briefing and oral argument would not be beneficial. For the reasons stated below, the court denies SUWA's motion to participate as a full party. To the extent there is an outstanding Motion to Intervene in this case, the court also denies that motion. It further modifies the limitations on SUWA's involvement as a limited permissive intervenor under the court's discretionary authority.

## BACKGROUND

This court has been assigned *Kane County (1)*, which was filed in 2008, and *Kane County (2)*, which was filed in 2010. Both cases involve R.S. 2477 road issues. In or around 2012, more than twenty other cases were filed by other counties alleging claims to approximately 12,000 roads. In 2013, this court also was assigned to do case management on the new R.S. 2477 litigation pending in this district. Although the cases are factually distinct, "consolidation motions, discovery preservation issues, and third-party motions to intervene" were arising in multiple cases. Case Mgmt. Order, at 2 (ECF No. 78). The parties asked for a consolidated case management order. Based on the "benefit from a coordinated and consistent approach to resolving similar pretrial issues," and the need to minimize the strain on resources, as well as to achieve "the efficient and orderly presentation of business before it," a global case management order was entered on March 13, 2013 (ECF No. 78), and has directed the management of these cases.[4] Throughout all of this litigation, this court has had interaction with SUWA. It knows of SUWA's role from the

---

[4] Because Kane County filed its cases before the others, it was on a different path. Consequently, it was not subject to the case management order, but the *Kane County (2)* case number has been listed in captions involving case management orders due to the State of Utah's role.

time it first sought to intervene in these R.S. 2477 road cases, which informs this decision.

## UNDERSTANDING THE PROPERTY RIGHT AT ISSUE

Understanding the property right at issue should be easy, and it is easy if one looks only at the surface. The answer, however, does not lie on the surface. Instead, the property right at issue may only be understood by placing it in historical context and being informed by the comparative elements and nature of the claim. It is the elements and nature of the particular property dispute before the court that inform whether SUWA may participate in this action.

## I.    WHY HAVE A ROAD?

After the United States expanded its boundaries to the Pacific Ocean, Congress passed a series of acts to encourage settlement and development of the west. Among these were the Homestead Act of 1862 (granting lands for settlement), the Pacific Railway Act of 1862 (supporting development of a transcontinental railroad by granting lands), and the Morrill Act of 1862 (promoting development of public colleges by granting lands). Against this backdrop, in 1866, Congress also gave "an open-ended grant of 'the right-of-way for the construction of highways across public lands, not otherwise reserved for public purposes.'" *S. Utah Wilderness All. v. BLM*, 425 F.3d 735, 740 (10th Cir. 2005) (quoting Mining Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (1866), *repealed by* Federal Land Policy Management Act of 1976, Pub. L. No. 94-579, § 706(a), 90 Stat. 2743)). Such highways are now commonly referred to as R.S. 2477 roads, and "most of the transportation routes of the West were established under [R.S. 2477's] authority." *Id.* at 740. Indeed, "R.S. 2477 rights of way were an integral part of the congressional pro-development lands policy," and were "deemed a good thing." *Id.* at 740–41.

From 1866 through 1976, the grant for the creation of highways remained in place until

Congress passed the Federal Land Policy Management Act of 1976 ("FLPMA"). Although Congress changed its focus in 1976 to conservation and preservation, FLPMA nevertheless provided that any valid R.S. 2477 right-of-way existing at the time of FLPMA's passage "would continue in effect." *Id.* at 741 (citing Pub. L. No. 94-579, § 701(a), 90 Stat. 2743, 2786 (1976)).

The court takes judicial notice that Kane County was founded in 1864 while Utah was still a territory. It was formed in the midst of the Acts discussed above to settle the west and establish roads across public lands. It would be illogical to conclude that no R.S. 2477 roads were established between 1866 and 1976 in Kane County. Kane County therefore has a legitimate interest in protecting any valid property rights it acquired during that time period.[5] Unfortunately, what "used to be a non-issue" with respect to these roads, has now "become a flash point." *Id.* at 742. This action arises due to FLPMA's grandfathering provision and ensuing disputes.

## II.    WHOSE ROAD IS ON THE GROUND?

Because FLPMA grandfathered in existing property rights, Plaintiffs' suit is not about establishing new roads across public lands. It is about proving who the title owner is of roads that *already exist on the ground*. For Plaintiffs to prove they acquired these roads before FLPMA's passage, courts have required Plaintiffs to file a Quiet Title Action under 28 U.S.C. § 2409a.

For a cause of action to lie under § 2409a, Plaintiffs must prove "(1) the United States 'claims an interest' in the property at issue; and (2) title to the property is 'disputed.'" *Kane*

---

[5]    It would be equally illogical to conclude that Kane County holds title to all 770 claims (approximately) it has made in its consolidated complaints. Thus, the United States has a legitimate interest in protecting its ownership of property rights that were retained and are exclusive to it. The parties recognize these truths and are seeking to sort out legal principles through a bellwether process that will guide the resolution of future roads in accordance with rights of the legitimate owner of the right-of-way.

*County, Utah v. United States*, 772 F.3d 1205, 1210–11 (10th Cir. 2014) (citation omitted). If Plaintiffs can pass that jurisdictional bar, they then must prove acceptance of the grant typically by public use or by mechanical means prior to October 21, 1976. The court makes the distinction between title arising under R.S. 2477 and title arising in another context.

To illustrate this distinction, the court references School and Institutional Trust Lands ("SITLA parcels"). SITLA parcels are owned by the State of Utah. Some of the SITLA parcels are located within federal preservation areas. To ensure the State can make use of its SITLA parcels and that the BLM can maintain its priority preservation areas, at times, the State and the United States have entered into exchanges of property. One of the more recent exchanges occurred under the Utah Recreational Land Exchange Act of 2009. It involved a present-day conveyance of title to parcels from one government to another in exchange for a corresponding conveyance of title to other parcels. The very nature of that title exchange necessitated complex environmental analyses and cost studies before the exchange could be put into effect. One would anticipate competing interests being evaluated under such circumstances.

In contrast, R.S. 2477 title issues do not involve the present day. They look to events that had to have occurred before October 21, 1976. No matter how vehemently a person may oppose a road in a certain area today, or how justified that vehemence is, those factors are irrelevant to the court's analysis. When determining title under R.S. 2477, the court does not consider anyone's present *interest* in land use issues or management, much less anyone's *competing interests*. Kane County is a hotbed for competing land interests. For every group that wants to preserve land, there is a competing group that wants the land open for development or recreation. Such competing interests cannot and do not inform the court's decision about who owns *title* to the property when

that title arises under R.S. 2477.  The specific R.S. 2477 title issue is simply not open for public opinion or comment.  Thus, the nature of the particular property dispute before the court informs whether SUWA has a right to participate in this action.

<h2 style="text-align:center">STANDING</h2>

## I.     ARTICLE III STANDING

"One essential aspect of [a court's jurisdiction] is that any person invoking the power of a federal court must demonstrate standing to do so."  *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019) (quotations and citation omitted).  Article III standing "is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  It satisfies the constitutional "cases" and "controversies" requirement, *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017) (citing U.S. Const. art. III, § 2), and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  *Spokeo, Inc.*, 136 S. Ct. at 1547 (citations omitted).

At a minimum, the person seeking entrance to the court on its own footing must have (1) suffered "a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable judicial decision."  *Bethune-Hill*, 139 S. Ct. at 1950 (citations omitted). The first element is "first and foremost."  *Spokeo*, 136 S. Ct. at 1547 (quotations, citation, and alteration omitted).  It involves "an invasion of a legally protected interest" that is "actual or imminent."  *Id.* at 1548 (quotations and citation omitted).

With respect to a person seeking entry as an intervenor, the United States Supreme Court has clarified that "[f]or all relief sought, there must be a litigant with standing. . . . Thus, *at the least*, an intervenor of right must demonstrate Article III standing when it seeks additional relief

beyond that which the [real party in interest] requests." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (emphasis added). When a person "is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1997) (citations omitted).

In SUWA's Motion to Intervene on May 25, 2018 and its Motion to Intervene on July 10, 2019, SUWA did not mention standing or meet its obligation to explain how it has standing before the court. The court references the latter two Motions to Intervene because by those dates the Supreme Court had issued its clarifying ruling on intervenor-standing requirements.[6] The court addresses this issue now because the Supreme Court has stated Article III "standing to litigate cannot be waived." *Bethune-Hill*, 139 S. Ct. at 1951.

### A.    Injury in Fact

In *Sierra Club v. Morton*, 405 U.S. 727, 728 (1972), the Supreme Court addressed whether the Sierra Club had standing to challenge the development of an extensive ski resort at Mineral King Valley in the midst of the Sierra Nevada Mountains. The Court stated, "[t]he injury alleged by the Sierra Club will be incurred entirely by reason of the change in the uses to which Mineral King will be put, and the attendant change in the aesthetics and ecology of the area." *Id.* at 734. It then said, "[w]e do not question that this type of harm *may* amount to an 'injury in fact' sufficient

---

[6]  In *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013), the Supreme Court stated, "*any* person invoking the power of a federal court must demonstrate standing to do so," and concluded the intervenors in that case failed to meet standing requirements. In 2017, the Supreme Court issued its decision in *Town of Chester, N.Y.* stating "*at the least*, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that requested by" the actual parties. 137 S. Ct. at 1647 (emphasis added).

to lay the basis for standing under § 10 of the APA." *Id.* (emphasis added). This is so because "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society." *Id.*

Notably, *Sierra Club* pertained to changing Mineral King from a quiet valley to an extensive ski resort. Mineral King was going to be altered fundamentally with a new road and new structures. Nevertheless, the Supreme Court ruled the Sierra Club lacked standing because the test was not injury to the environment or "injury to a cognizable interest," but injury to the party seeking review of an administrative action. *See id.* at 734–35. The Sierra Club had failed to show such injury to gain Article III standing.

The facts of this case are even more attenuated from standing than those presented in *Sierra Club* because no administrative decision on land use is being challenged. No new roads are at play. No new structures are being built. This suit only pertains to who holds title to roads already existing on the ground.[7]

In more recent years, the Tenth Circuit has ruled that "SUWA's environmental concern is a legally protectable interest." *San Juan County, Utah v. United* States, 503 F.3d 1163, 1199 (10th Cir. 2007). This interest has allowed SUWA to sue the United States, under certain circumstances, when it believes federal lands have not been maintained or managed properly. SUWA seeks to use its legally protectable interest (tied to land uses, not title) to act as a party of right in this

---

[7]  Separate processes exist to address land use issues after title rights are determined. Whether SUWA may participate in those arenas is a separate standing issue than the one before this court. Here, the case or controversy pertains only to title of rights-of-way and the legal description of that title (i.e. the boundary lines of the roads) if Plaintiffs are determined to be the title holders of any of the rights-of-way.

litigation.  SUWA contends it has a right to be in this litigation because if Plaintiffs prove they established a road before 1976, it will suffer injury to its interests in how the land is used and managed.

Notably, SUWA is not a property owner.  Unlike the real parties in interest, it has no claim of title to any of the land at issue.  Thus, its protectable interest is tangential to this quiet title action.  This is significant because all of the land at issue is subject to existing R.S. 2477 property rights.  Whatever protectable interest SUWA may have, it emerged subject to those R.S. 2477 interests and cannot encroach upon them.  In other words, if a road at issue ends up being Plaintiffs' and wider than SUWA wants, but the grant of that road width existed before SUWA's interests arose, SUWA cannot claim it suffered a concrete and particularized injury because there was no actual injury to a legitimate interest.

When Presidential Proclamation 6920 was issued to establish the Grand-Staircase-Escalante National Monument, it "expressly preserved all valid existing rights-of-way" within the Monument.  *Kane County, Utah v. U.S.*, 934 F. Supp. 2d 1344, 1351 (D. Utah 2013), *affirmed in part and rev'd in part on other grounds*, 772 F.3d 1205 (10th Cir. 2014).  When the Monument's management plan was developed, it stated:

> If claims are determined to be valid R.S. 2477 highways, the Approved Plan will respect those as valid existing rights. . . . Nothing in this Plan alters in any way any legal rights the Counties of Garfield and Kane or the State of Utah has [sic] to assert and protect R.S. 2477 rights, and to challenge in Federal court or other appropriate venue any BLM road closures that they believe are inconsistent with their rights.

*Wilderness Soc'y v. Kane County*, 632 F.3d 1162, 1166 (10th Cir. 2011) (en banc) (quoting Monument's Management Plan) (alterations in original).

When FLPMA was passed, it directed the Secretary of the Interior to inventory federal lands to determine areas that were roadless and had wilderness characteristics.[8] *Kane County, Utah v. United States*, 772 F.3d 1205, 1216 (10th Cir. 2014). When the Secretary designated a land as a wilderness study area ("WSA"), the Secretary then had "to manage such lands 'in a manner so as not to impair the suitability of such areas for preservation as wilderness,' and to 'take any action required to prevent unnecessary or undue degradation of the lands and their resources.'" *Id.* (quoting 43 U.S.C. § 1782(c)).

As stated above, however, FLPMA also required that all valid R.S. 2477 rights-of-way be grandfathered in and preserved for those who acquired them before October 21, 1976. The BLM reconciled these competing aspects of FLPMA by stating "roadless" areas for purposes of a WSA involve "roads" that are "not coterminous with a 'road' under R.S. 2477." *Id.* "[T]he BLM Director of Utah issued" the following clarification: "The wilderness inventory process uses a definition of a road that is distinct from the definition of 'public' road contemplated by R.S. 2477 (43 U.S.C. § 932) and is a definition for inventory purposes only, not for establishing rights of counties, etc. . . ." *Id.* (quoting Instruction Memorandum No. UT '80-240 (Mar. 6, 1980)).

Moreover, "[a] subsequent nationwide BLM memorandum stated that where WSAs overlap with R.S. 2477 rights-of-way, 'the WSA/wilderness designation *is subject to* the terms and conditions of the pre-existing R/W grant.'" *Id.* at 1216–17 (quoting Instructional Memorandum No. 90-589 (Aug. 15, 1990) (emphasis added)). The Secretary of the Interior then further explained "that valid existing rights, including rights-of-way, were excepted from the non-

_____

[8] This was in harmony with the Wilderness Act of 1964 that sought to preserve wilderness areas containing at least five thousand areas of land. Pub. L. No. 88-577, 78 Stat. 890 (1964).

impairment requirements of 43 U.S.C. § 1782(c)." *Id.* at 1217 (citing United States Dep't of the Interior Solicitor's Opinion M–36910, 88 I.D. 909, 1981 WL 29226 (Oct. 5, 1981)). Thus, wilderness study areas can, and do, exist with roads in them.

The wilderness study areas that the BLM now manages in Kane County did not exist at the time the R.S. 2477 roads were being established.[9] The Grand-Staircase-Escalante National Monument likewise did not exist at the time.[10] Indeed, SUWA did not exist at the time.[11] And no other defendant-intervenor in this action ever litigated the status of any road in Kane County or the State of Utah before 1976, as to whether a road should be opened, closed, or otherwise. This is not surprising because "the federal government's pre-1976 policy of opening and developing the public lands" meant "parties rarely had an incentive to raise or resolve potential R.S. 2477 issues while the statute was in effect," and to the extent they did, it involved private land. *S. Utah Wilderness All. v. BLM*, 425 F.3d 735, 741 (10th Cir. 2005).

Given these circumstances, the court states again that whatever protectable interest SUWA has, it was taken subject to the title holder's interests that arose before SUWA's, and SUWA cannot encroach upon them. SUWA is not facing an "invasion of [its] legally protectable interest" because it can have no "concrete and particularized injury" by yielding that which it never legally had.

The court offers the following example to illustrate this point.

---

[9] Although the Wilderness Act of 1964 had already been passed, and Roadless Review Areas were under review, the Wilderness Act did not involve lands managed by the BLM. FLMPA altered that, and wilderness study areas became a focus post-1976 for BLM managed land.

[10] The court takes judicial notice that the Monument was established in 1996.

[11] This particular reference to SUWA refers to the Southern Utah Wilderness Alliance, and the court takes judicial notice that it was formed in 1983.

> A property owner owns a large parcel of pristine land. It has a main access road across it, but the land is largely undisturbed. The property owner believes in conserving land. He therefore enters into an agreement with a land trust company to put a conservation easement on his property. One of the terms of the agreement is that there can be no public roads across the land. The property owner puts a gate across the road and posts a "No Trespassing" sign to ensure the public does not drive on the road. The problem, however, is that both the property owner and the land trust company knew at the time of entering the agreement the road may be a public way.

Under such a circumstance, the agreement and subsequent actions by the property owner cannot alter the status of the road. Nor can a person enter into an agreement, knowing the agreement may be contrary to someone else's rights, and then claim standing because its interests in the agreement are being injured. If this were so, anyone could write his or her way into any lawsuit. Such is not the concrete and particularized injury that is *actual*, as required by Article III standing.

### B.     Other Prongs of Article III Standing

Having failed to satisfy the first prong for standing, SUWA cannot satisfy the remaining prongs because they both derive from an injury in fact. The court will note, however, that this litigation is not like many other forms of litigation. It does not involve a wrong committed by one person to the detriment of another. Instead, the question is whether Plaintiffs accepted a grant from the United States during a period of time when the United States freely offered that grant.

Just because SUWA "has taken sides in what is essentially a property dispute between two landowners," *Wilderness Soc'y*, 632 F.3d at 1171, does not mean it has an injury supporting standing, much less that it is traceable to Plaintiffs' conduct. Rather, if Plaintiffs prevail, then it is SUWA's interests that encroached upon Plaintiffs' rights, not vice versa. If the United States prevails, SUWA suffers no injury. Either way, there is no injury to SUWA fairly traceable to Plaintiffs' conduct that is at issue.

To satisfy the requirement for redressability, a party must show a "likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citations omitted). But in the context of Article III standing, the injury at play is that which "it takes to make a justiciable case." *Id.* at 102 (citation omitted). SUWA does not have a justiciable injury in an R.S. 2477 context. It certainly wants the United States to prevail so it can continue its land use objectives without Plaintiffs' involvement, but land use issues are for another day and in another arena. A quiet title action is not one of them.

Because SUWA has shown no justiciable injury in this case, there is nothing to redress. The court therefore concludes that SUWA has no Article III standing to the extent it seeks additional relief beyond that which the United States requests.

**INTERVENTION AS OF RIGHT**

## I. ELEMENTS

Rule 24(a) of the Federal Rules of Civil Procedure set forth the conditions for intervention as of right. SUWA must (1) "claim[] an interest relating to the property or transaction that is the subject of the action," and (2) be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless [3] existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

### A. Interest Relating to Property and Impairment or Impediment of that Interest

The Tenth Circuit has recognized that SUWA has a legal interest in land management issues, and that such an interest may carry over into a particular quiet title action.[12] *See San Juan*

---

[12] The court notes that the decision in *San Juan County* was "highly fact-specific" and that courts must "exercise judgment based on the specific circumstances of the case" when making an intervention determination. *San Juan County*, 503 F.3d at 1197, 1199. "As a result, one must be

14

*County*, 503 F.3d at 1199. In making that determination, the Tenth Circuit rejected the requirement that SUWA's interest "be direct, substantial, and legally protectable." *See id.* at 1192–93 (quotations and citation omitted). Rather, it focused on the "practical judgment [that] must be applied in determining whether the strength of the interest . . . justif[ies] intervention." *Id.* at 1199. In light of the Supreme Court's recent rulings on standing, it is unclear what interplay exists between the injury-in-fact requirement versus the Tenth Circuit's "practical judgment" standard on the types of interest that justify intervention as of right. This court declines to wade into that analysis, however, due to its conclusions regarding adequacy of representation.

### B.      Adequate Representation of Interests

#### i.      SUWA's Converging Interests

"Even if an applicant satisfies the other requirements of Rule 24(a)(2), it is not entitled to intervene if its 'interest is adequately represented by existing parties.'" *Kane County, Utah v. United States*, 597 F.3d 1129, 1133–34 (10th Cir. 2010) (quoting Fed. R. Civ. P. 24(a)(2)) (other citation omitted). SUWA contends the United States cannot adequately represent its interest. It relies on a line of cases that state, "the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be-intervenor." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001). In such situations, only a minimal burden must be met to show inadequacy of representation. *See id.* at 1254–55 (citation omitted).

--------------------------------------------------

careful not to paint with too broad a brush in construing Rule 24(a)(2)," such that there is "a rigid formula" applied. *Id.* at 1199. Consequently, while the Tenth Circuit did acknowledge SUWA has an interest that fit within the facts of *San Juan County*, that interest has not been stated so emphatically as to nullify the need to consider its application in subsequent intervention cases involving quiet title.

But there is a caveat. The federal government is not always obligated to consider a broader spectrum of views. That obligation only arises when it is "litigating on behalf of the general public," *see id.* at 1256, or when statutory obligations impose a duty on the government "to serve two distinct interests, which are related, but not identical." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 (1972).

In situations where the federal government is not representing interests other than its own, then the "representation is *adequate* when the objective of the applicant for intervention is identical to that of one of the parties." *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (quotations and citations omitted) (alteration in original). This is so even if the intervenors' "ultimate motivation" in an action is different from the real party in interest. *Id.*

In criminal cases, the United States is litigating on behalf of the public. In environmental protection cases, the United States is litigating on behalf of the public. In anti-trust litigation, the United States is litigating on behalf of the public. And the list goes on.

Here, though, the United States is not litigating to protect the general public's rights. It is litigating to protect its own exclusive title to property. It is a landowner that does not want its property right encumbered by a right-of-way owned by Kane County or the State. Moreover, there is no statutory provision that requires the United States to consider any other competing interests but its own in this dispute. If the issue were how the land would be managed, the interests for consideration by the United States may be broader, but that is not this case.

Thus, while SUWA may contend that the United States "is obligated to consider a broader spectrum of views," that statement has no support in reality. It is divorced from the context in which that language was stated in caselaw and it has no statutory support for quiet title actions

under § 2409a.  In other words, SUWA's contention is simply an unsupported assertion.  And simply making an assertion does not make something so when the actual facts show otherwise.

As the court has held already on two prior occasions in this case, SUWA's objective in this litigation is the same as the United States.  Both seek for title to be quieted in the United States.  In this, they are harmonious.  Although they may have diverging views about how title is to be quieted, SUWA is still *adequately* represented by the United States.

This is true regardless of whether the court is determining who is the owner of the right-of-way, or the scope of that right-of-way.  For scope is but a function of title.  Saying a person has title to something means nothing unless one identifies to what the person has title.  Scope in the R.S. 2477 context means defining a road's length and width so that the dividing line between one property and another is known.

"The scope of the right-of-way is that which is reasonable and necessary to ensure safe travel according to the facts and circumstances."  *Clearwater Farms LLC v. Giles,* 2016 UT App 126, ¶ 10, 379 P.3d 1 (quotations and citations omitted).  What does the phrase "according to the facts and circumstances" mean?  Does it means weighing SUWA's interests?  Does it mean weighing an ATV club's interests?  The Utah Supreme Court[13] has answered these questions.

In *Jeremy v. Bertagnole*, the Court stated it is "proper and necessary for the court in defining the road to determine its width, and to fix the same according to what was reasonable and necessary, under all the facts and circumstances, *for the uses which were made of the road*."  116 P.2d 420, 423 (Utah 1941) (quotations and citations omitted) (emphasis added).  Once a particular

---

[13]  To the extent Utah law does not contravene federal requirements and congressional intent, Utah law is borrowed to inform the court about what constitutes a public way, how it is formed, and what its dedication includes.  *S. Utah Wilderness All.*, 425 F.3d at 766–78.

type of use has been established, "such width should be decreed by the court as will make such use convenient and safe." *Id.* at 424. The width is not limited to the actual travel surface (i.e. the "beaten path") but it is still bounded. *Id.* at 423–24. The Court explained the boundaries as follows:

> A bridle path abandoned to the public may not be expanded, by court decree, into a boulevard. On the other hand, the implied dedication of a roadway to automobile traffic is the dedication of a roadway of sufficient width for safe and convenient use thereof by such traffic.

*Id.* at 424.

The above confirms scope pertains to determining what the width of the road was prior to October 21, 1976, and what its uses were at that time. This fixes the type of road and an approximate boundary for that road. Then, the next question is what will make the road safe and convenient to perpetuate that type of use? The past commands the decision, but present safety considerations and convenience considerations that apply to maintaining suitable road conditions clarify it. *Id.* at 423–24 (citing *Whitesides v. Green*, 44 P.1032, 1033 (Utah 1896)); *see also Kane County, Utah*, 772 F.3d at 1223 (explaining "the proper inquiry is what width is reasonable and necessary in light of the pre-1976 uses of the road"). The court sets the boundary from that information.

For SUWA to say it has a right to participate in this determination because the United States must weigh the competing interests of the public is not correct. That argument confuses present day land use issues with what was dedicated to the public prior to October 1976. Safety and maintenance considerations do not alter the dedication. Rather, they give meaning to what is needed to ensure the right-of-way continues to serve the same purpose and function today as it did

when it was dedicated in the past. That is the focus when determining the boundary lines for the right-of-way.

The scope determination does not weigh if a road should be open or closed to vehicular travel. The past use determines the type of road. It does not weigh if it is adjoined by a wilderness study area. Those areas were taken subject to the right-of-way. It does not involve a NEPA analysis or any other environmental or cost analysis because any dedication has already occurred. Scope only specifies the boundaries of the title acquired by an R.S. 2477 owner, and what is needed to ensure the road's function and purpose continue on as previously established.

Through all of this, the United States has asserted it intends to argue for the narrowest width possible if a right-of-way is established in Plaintiffs' favor, and indeed, it has not acted contrary to its representations. SUWA can ask for no more. Based on the parameters of how scope of title is determined and the United States' representations, the court concludes SUWA's interests are adequately protected by the very entity who owns the land and who has been involved with it for more than 150 years.

The fact that we now have a different President than when this action commenced does not alter the court's analysis. By the time this case reaches trial, has post-trial briefing, and a written ruling, we likely will be past the 2020 elections. That is how complex this case is. Speculating about what effect the Trump administration may have during an election year, and further speculating that he will be re-elected and focus on the R.S. 2477 cases is just that—speculation. The fact that no settlement has occurred on any R.S. 2477 road in Utah while President Trump has been in office does not support intervention as of right.

Moreover, Ken Salazar, who served as the United States Secretary of the Interior during the Obama administration, issued a memorandum in 2010, that clarified the United States' policy about R.S. 2477 roads. It stated the Secretary was working towards a pilot project to negotiate resolution of the R.S. 2477 claims in Utah.[14] If the United States can work towards that solution under the Obama administration, then working towards such a solution under the Trump administration is not a sea change.

The court makes one final note. To the extent SUWA is contending the United States does not represent it adequately because the United States is not turning over every rock or making every possible argument, or because it may possibly disclaim or settle a claim, the court refers SUWA to Rule 1 of the Federal Rules of Civil Procedure. Rule 1 states all of the civil rules (including those pertaining to discovery and intervention) are to "be construed, administered, and employed by the court *and* the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." (Emphasis added.) If a party has a litigation tactic that contravenes Rule 1, that tactic should not be used to justify intervention but to halt it. To do otherwise is to ignore the very problem Rule 1 seeks to address.

      ii.     SUWA's Alleged Competing Interests and Relief

Although the court has determined that SUWA's interests are adequately protected by the United States, even if they were not, SUWA still is not permitted to intervene as of right. As stated above, the parties have entered into a bellwether process to aid in resolution of the large number of roads at issue. They have selected fifteen roads to test legal principles that can then be applied

---

[14] Press Release, July 30, 2010 at https://www.doi.gov/news/pressreleases/Salazar-Lays-Groundwork-for-Utah-Pilot-Project-to-Resolve-Old-Road-Claims-on-Public-Land.

not only to the 770 roads in Kane County, but to approximately 12,000 other roads that have been claimed throughout the State. Another bellwether process is anticipated in the future with respect to Garfield County. Once the bellwether trials are complete, the parties anticipate using the final rulings to determine if disputes regarding other roads may be resolved.

SUWA seeks relief different from this. At a hearing on May 21, 2018, SUWA argued its third Motion to Intervene as of right. It stated, "Now, I think that the [past] four years demonstrate our divergence of interest with respect to even the title issues." Hearing Tr., at 23 (ECF No. 418). It noted that with "the change in administration, there is a clear divergence there with respect to that interest," because the administration was talking settlement. *Id.* at 21–23. SUWA's third Motion to Intervene contends this means the United States does not intend "to fully litigate Plaintiffs' claims in favor of pursuing settlement." Renewed Mot. to Intervene, at 11 (ECF No. 410). As a result, "SUWA cannot rely on the United States to defend *its focused interest in land protection*. . . ." *Id.* at 13 (emphasis added). "Indeed, SUWA's interest as to scope—that *any* right of way be *closed to vehicular traffic*," is another difference SUWA is pursuing. *Id.* at 16 (emphasis added). Finally, SUWA noted the divergence in defense strategies, and that "the United States and SUWA have fundamentally different interests, priorities, and risk assessments." *Id.* at 18–19.

In short, SUWA wants its own footing in the case to pursue its own relief and defenses separate and apart from the United States. "[A]n intervenor of right," however, "must demonstrate Article III standing when it seeks additional relief beyond that which the [real party in interest] requests." *Town of Chester, N.Y.*, 137 S. Ct. at 1651. To the extent SUWA opposes resolution through settlement or disclaimer, and that its interests in outcome do diverge in the manner stated

above, it is seeking relief different from the United States. Accordingly, SUWA lacks Article III standing and cannot intervene as of right.

## LIMITED AND DISCRETIONARY PERMISSIVE INTERVENTION

SUWA does not meet the requirements to intervene as of right. Stated differently, SUWA has no legal right to be in this case. Any participation it has is because the court has said it could participate. That is the nature of *permissive* intervention. SUWA's role in this litigation was meant to be limited because this is not SUWA's case. It is not about SUWA's rights. It is not about SUWA's defenses.[15] And yet, at the global hearing on intervention, SUWA had "at least 18 lawyers from national and international firms," present "as well as experienced local attorneys who have been retained and [would] apply the resources necessary to properly defend this case." Hearing Tr., at 25 (ECF No. 93 in Case No. 2:11-cv-1045). It informed the court "[w]e intend to litigate [the R.S. 2477 cases] aggressively using every resource available to us." *Id.* at 77.

While the court appreciated SUWA's candidness in that moment, it was clear SUWA had the intent to take a lead role in this litigation. A lead to which it had no right to take.[16] A lead that could well harm the actual parties who do have a right to be before the court.

---

[15] The defenses in this case pertain to who the title holder is. The United States is defending that it has retained exclusive title to the roads at issue. Any defense of that title is on behalf of the United States.

[16] At the time of the global hearing, the Tenth Circuit had affirmed this court's decision that SUWA could not intervene as of right in *Kane County (1)* because the United States would adequately represent its interests. *See Kane County v. United States*, 597 F.3d 1129 (10th Cir. 2010). The Tenth Circuit had also affirmed the denial of SUWA's motion to intervene as of right in another quiet title action three years earlier. *See San Juan County, Utah v. United States*, 503 F.3d 1162 (10th Cir. 2007) (en banc). The court saw no substantive difference in the adequacy of representation in *Kane County (1)* and the other R.S. 2477 cases pending before the court.

When considering whether a party may permissively intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Based on SUWA's representations and show of its litigation team, the court concluded, "[i]f SUWA were allowed to intervene, without *strict limitations*, . . . this case would become 'fruitlessly complex or unending,' to the prejudice of the parties." *Sevier County v. United States*, No. 2:12-cv-452, 2013 WL 2643608, at *4 (D. Utah June 12, 2013) (citation omitted) (emphasis added); *Kane County (2)* Order, at 2 (ECF No. 181) (adopting same reasoning for conditions stated in *Sevier County*).

SUWA, however, had represented at the global intervention hearing that it had access to evidence that the federal government did not have. Hearing Tr., at 25 (ECF No. 93 in Case No. 2:11-cv-1045). The court was persuaded that if SUWA did have such evidence, then it could be a backstop to the United States. To ensure SUWA acted only as a backstop, and not as a lead to the detriment of the actual parties, the court set specific conditions on SUWA's participation. It did so based on its discretionary authority and in aid of the "efficient conduct of the proceedings." *United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1396 (10th Cir. 2009) (quotations omitted) (citing *San Juan County*, 503 F.3d at 1189; *Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352–53 (5th Cir. 1997) ("It is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right.")).

From the time the court placed limitations on SUWA's role, SUWA has bristled over the restrictions and sought to thwart them so it could take the lead and act as a full party. Its conduct lacks the boldness that smacks you in the face. But in reviewing its past activities to determine SUWA's present motions, 20/20 hindsight shows just how far awry SUWA has gone from this

court's order to the detriment of the actual parties. The court now turns to just a few of these instances.

## I. CONDITIONS PLACED BY COURT

### A. Claims and Defenses

The court's intervention order prohibited SUWA "from asserting new . . . defenses in this matter." Order, at 3 (ECF No. 181). Prior to *Kane County (2)*, the court had experience with SUWA in *Kane County (1)*. In an amicus capacity, SUWA raised several statute of limitations defenses that required a significant amount of the Plaintiffs' time and the court's time to address. Ultimately, the court concluded that none of them had merit, *see Kane County, Utah v. United States*, 934 F. Supp. 2d 1344, 1360–64 (D. Utah 2013), which ruling was affirmed on appeal, 772 F.3d 1205 (10th Cir. 2014).[17]

When this court ruled on SUWA's defenses in *Kane County (1)*, it noted the following:

> [W]hen the United States initially filed its Answer [in *Kane County (1)*], it asserted a statute of limitations defense. After conducting discovery on the issue, however, the United States concluded that none of its actions was sufficient to show an adverse claim against Kane County. It therefore stipulated that the statute of limitations had not run. Given that the United States is the very entity that was involved in these matters, and not SUWA, it is in a better position to determine if the United States asserted an adverse claim against Kane County.

*Kane County, Utah*, 934 F. Supp. 2d, at 1364 (internal citations omitted). Recognizing that SUWA (1) had not added anything meaningful in *Kane County (1)* when it raised the defenses it did, (2)

---

[17] The Tenth Circuit's ruling addressed two memorandum decisions issued by the court. A portion of the court's rulings were reversed by the Tenth Circuit, but none of those portions involved the court's rulings pertaining to SUWA's defenses.

that the United States had exercised proper judgment in defending title and adequately protected SUWA's interests, and (3) that both the parties and the court had expended unnecessary resources to address issues raised by SUWA, the court sought to avoid the same problem in the new R.S. 2477 road cases. It therefore prohibited SUWA from asserting new defenses in the R.S. 2477 road cases.

On May 30, 2014, the United States filed a Motion for Partial Dismissal, which asserted the claims in *Garfield County* were barred by Utah Code Ann. § 78B-2-201 on statute of limitations grounds. Mot. to Dismiss, at 58–60 (ECF No. 135 in Case No. 2:11-cv-1045). SUWA requested leave to file a memorandum in support. It acknowledged it could not raise new defenses and represented that its brief merely expanded upon certain points the United States had already raised. Mem. re Leave to File, at 2 (ECF No. 137 in Case No. 2:11-cv-1045).

Contrary to SUWA's representation, its brief raised a new defense. It did not expand upon the United States' argument that Plaintiffs' claims were barred by a statute of limitations. Instead, it argued that § 78B-2-201 is not a statute of limitations at all, but a statute of repose.

The State originally filed an objection to SUWA's motion. Mem. in Opp'n (ECF No. 138 in Case No. 2:11-cv-1045). Later, however, it asked for an extension to respond substantively to the defense raised by SUWA. Mot. for Extension (ECF No. 141 in Case No. 2:11-cv-1045). After the State filed its opposition to both, the court granted SUWA's motion to file its supporting brief, and made it retroactive to June 27, 2014, to conform the record. Order (ECF No. 151 in Case No. 2:11-cv-1045).

The court still had the inherent authority to later strike SUWA's defense. During this same time frame, however, SUWA filed a parallel state action in Tooele County seeking to enjoin the

State Attorney General from litigating *all* R.S. 2477 cases based on § 78B-2-201 being a statute of repose.  This placed SUWA in a lead role and multiplied and divided the proceedings.[18]  One way or another, Plaintiffs would have to deal with the defense.

Prior Utah cases addressing § 78B-2-201 had always applied it as a statute of limitations.  Certification Order, at 7–8 (ECF No. 211); *see also* (ECF No. 169 in Case No. 2:11-cv-1045).  The cases, however, had not directly addressed whether § 78B-2-201 was a statute of repose.  "[I]n deference to the State's right to determine the meaning of its laws," the active judges in this district certified the question to the Utah Supreme Court on April 17, 2015.  Certification Order, at 3 (ECF No. 211).

On July 26, 2017, the Utah Supreme Court issued its ruling.  It concluded that § 78B-2-201 on its face may be read as a statute of repose.  But such a construction was "absurd and could not have been intended by the legislature."  *Garfield County v. United States*, 2017 UT 41, ¶ 1, 424 P.3d 46.  Consequently, based on the absurdity doctrine, the Utah Supreme Court construed the statute as a statute of limitations.  *Id.*

When the Tenth Circuit issued its en banc ruling in *San Juan County, Utah v. United States*, 503 F.3d 1163 (10th Cir. 2007), Judge Kelly authored a concurring decision that was joined by five other judges.  They expressed concern over the newly adopted "practical effect" test for

---

[18]  This court temporarily enjoined SUWA from proceeding in the new case under the All Writs Act, 28 U.S.C. § 1651, until it could determine "whether an injunction is appropriate under the Anti-Injunction Act, 28 U.S.C. § 2283."  *See Tooele County, Utah v. United* States (ECF Nos. 89, 90 in Case No. 2:12-cv-477).  SUWA appealed the matter before the court issued that analysis, and in 2016, the Tenth Circuit struck down the injunction on the ground it did not meet the Anti-Injunction Act requirements.  This court respects that judgment.  It does not negate the fact, however, that SUWA multiplied the proceedings.

intervention due to "the substantial 'practical effect' an intervenor may have on litigation." *Id.* at 1209. They noted "an intervenor in a quiet title action seeking to maintain the land's current use has every incentive to use its participation to postpone a final decision on the merits, thereby prolonging its use at the expense of the parties' need to have a final adjudication of the title." *Id.* Although the concurring judges did not "suggest that SUWA [had] engaged in delaying tactics in [the *San Juan*] lawsuit," they noted "the potential for abuse is very real." *Id.* at 1209, n.7. Unfortunately, in the present case, those observations have proved all too true when SUWA acted to circumvent the court's limitation on filing a defense.

For over two years, Plaintiffs' time and resources were taxed as they addressed SUWA's defense before the Utah Supreme Court on an argument that ultimately was struck down as absurd.[19] *See* Mot. to Amend Order, at 13–14 (ECF No. 396). A two-year delay in an R.S. 2477 context means the roads at issue have indefinite road signs to guide the public and a lack of maintenance because the parties do not know who should be maintaining them. It also means evidence is lost because the witnesses who have knowledge about a road's use pre-1976 are aging. Some are in poor health, and others have died during the pendency of this litigation. The harm arising from the delay is real, and it has occurred because SUWA thwarted the court's order and insisted on taking a dominant role.

---

[19] During the global hearing on intervention, that State contended, "And I would submit, Your Honor, that the kinds of issues and the kinds of evidence that SUWA would inject into this litigation would be both cause for tremendous delay, but it would also greatly prejudice the efforts that are being made by the United States and by the plaintiffs to get through all this." Hearing Tr., at 62 (ECF No. 93 in Case No. 2:11-cv-1045). Unfortunately, that has proven to be true as well.

After its statute of repose defense was struck down by the Utah Supreme Court, SUWA filed another new defense.[20]  Similar to the first time, SUWA denies it did so.  Hearing Tr., at 55–56 (ECF No. 430).  But when the United States raises eight affirmative defenses in its Answer and SUWA raises nine, basic arithmetic answers whether SUWA has again ignored the court's order.  Such conduct confirms that SUWA intends to resist the court's efforts to control the litigation and limit SUWA to backstopping the United States as the court originally directed.

### B.    Discovery

As stated above, SUWA represented to the court it had unique evidence that the United States did not have.  That is the premise upon which SUWA was allowed in the case.  It was not that it was going to use Plaintiffs' documents to defend the United States' title, but that it had its own information.  Accordingly, the court did not allow SUWA to take party discovery.[21]  *See* Order, at 2–3 (ECF No. 181) (authorizing only reasonable third-party discovery).

Then SUWA pressed to expand its limited role.  After the Utah Supreme Court issued its decision, SUWA changed its focus to mounting direct attacks on the Plaintiffs.  It filed a motion on September 20, 2017, to lift a restriction so it could propound discovery on the Plaintiffs.  Mot. for Limited Discovery, at 2–3 (ECF No. 340).  The court denied the motion on January 8, 2018.  Order (ECF No. 357).

---

[20]  *Compare* SUWA's Answer, at 197 (ECF No. 421) (asserting ninth affirmative defense that "Plaintiffs have failed to accept, or demonstrate acceptance, of any R.S. 2477 right-of-way claimed herein") *with* United States' Answer, at 202–03 (ECF No. 420) (asserting only eight affirmative defenses).

[21]  Plaintiffs and the United States were still required to produce a copy to SUWA of any discovery they exchanged.  Order, at 2 (ECF No. 181).

On May 4, 2018, SUWA sought leave to file a motion for scheduling order that again asserted the restriction needed to be lifted to "confirm SUWA's discovery rights." Mot. for Leave re Scheduling Order, at 8 (ECF No. 389). It said it had approached Plaintiffs to work out an agreement about SUWA's discovery rights, but Plaintiffs would not agree. SUWA then argued it had "*no choice* but to approach the Court for relief." *Id.* at 10 (emphasis added). In actuality, this was just another attempt to get the court to expand its intervention order.

Based on SUWA's arguments and this being a bellwether case, the court issued a Bellwether Trial Scheduling Order that said SUWA could propound non-duplicative discovery on the parties, but only *after* SUWA obtained permission from the court. Bellwether Order, at 1 (ECF No. 406). Thus, while modifying its order, the court simultaneously placed a different restriction to ensure SUWA would not abuse that modification.

Despite the court's ruling, SUWA demanded discovery in a letter to Plaintiffs on September 14, 2018. It was six pages, single spaced, and asserted that Plaintiffs' production of discovery was lacking. Letter, at 2 (ECF No. 516-10). It further contended that SUWA may have some follow up for additional discovery in the future. It then directed Plaintiffs to produce specific portions of the discovery no later than September 28, 2018. *Id.* at 5. SUWA did not seek leave of the court to pursue such discovery. It nevertheless attempts to argue that Plaintiffs are at fault for not engaging in a meaningful meet and confer with them. *See* Fourth Mot. to Intervene, at 28–29 (ECF No. 516). Whether the discovery is formal or informal, it is still discovery. These end runs around the conditions set by the court are unacceptable. They show a disregard for the court's rulings, and they continue to multiply the proceedings by an intervenor who was only supposed to have a limited role.

## C. Motions

The court also restricted SUWA from filing motions without leave of court. By having to ask to file a motion, the limitation was meant to reflect such motions should be infrequent and made with care. As stated above, the court intended for the real parties in interest to lead the case, and not have their attention and the court's attention diverted by SUWA.

While SUWA has dutifully filed motions for leave to file a motion most of the time, those actions merely had the appearance of compliance with the purpose behind the limitation. The court recognized it was frequently addressing motions filed by SUWA, but it failed to comprehend just how far SUWA had gone from the restrictions the court had imposed. In truth, SUWA has filed about *four times* as many motions as any other party.[22] In hindsight, the court recognizes how much SUWA has dominated the proceedings by its motion practice, and that the court should have stopped its filings earlier to avoid the parties from having to address the issues raised by SUWA.

The court notes, however, that when the court did deny a motion for leave to file a motion, SUWA ignored that denial. One of the instances occurred when SUWA sought leave on May 15, 2018, to file another motion to intervene as of right. Mot. for Leave re Mot. to Intervene (ECF No. 398). The court denied the request. Docket Text Order (ECF No. 402).

Despite having denied the request, during the next hearing on another matter, SUWA said it had "some limited comments [it] would like to make." Hearing Tr., at 8 (ECF No. 418). SUWA then proceeded to argue about how it needed to build its defenses and needed the discovery

---

[22] The court has separated out the motions for leave to file a motion from the motion itself and not double counted them.

limitations lifted. *See id.* at 8–24. It further argued how things have changed and why intervention as of right was appropriate. *Id.* at 19–24. In other words, it argued its motion to intervene, which the court had already disallowed. SUWA also asked to lodge its brief. *Id.* at 20. The court granted permission to *lodge* it, but four days after the hearing, SUWA filed its brief as a motion. *See* Motion to Intervene (ECF No. 410). Thus, even when SUWA was denied leave to file a motion, that denial only meant SUWA sought ways around it. SUWA had its motion fully heard, and it later filed its motion, rather than lodging it as the court directed.

During the same hearing, after SUWA said it had some limited comments to make, it pulled up a power point presentation and said it was skipping past many of the slides. Hearing Tr., at 9 (ECF No. 418). After making its intervention arguments, SUWA's counsel stated, "[t]ypically it is *my practice* when I present a slide to the court here to lodge that. May I have leave to file the electronic copy *of what I presented* to you." *Id.* at 30 (emphasis added). The court allowed the filing based on how the statement was presented. Thereafter, SUWA lodged a twenty-five page, one-sided, slide presentation that presents multiple arguments, including full argument on its motion to intervene. *See* Notice re Visual Presentation (ECF No. 407). The slide presentation was not limited to the few slides presented in court. Moreover, contrary to its representations to the court during the hearing, SUWA has filed no other visual presentations in *Kane County (2)*, the *Garfield County* case, or the *Tooele County* case. In other words, the practice has been *not* to file them despite SUWA's representation to the contrary. SUWA used these tactics to affect the record. A record it only has access to because the court allowed it to intervene permissively. SUWA has abused that access through its excessive motion practice and gamesmanship.

**D.      Nature of Representations to the Court**

During a hearing where SUWA stated its plans to put on a "vigorous" defense, it said its "vigorous advocacy" is required under the "rules of professional conduct," and therefore its actions could not be "an abuse or a prejudice." *See e.g.* Hearing Tr., at 11, 16, 18 (ECF No. 418). Being an advocate, however, does not excuse SUWA's conduct in ignoring the court's orders. It also does not excuse counsel from the care required when making representations to the court. SUWA has failed to exercise the proper care. The court uses SUWA's most recent Motion to Intervene (ECF No. 516), to illustrate this point.

SUWA said it "has largely been a mere bystander" in this litigation. *Id.* at 2. The above facts do not bear this out.

It also said that the "Trump administration's decision to gut the Grand Staircase-Escalante National Monument . . . rescind[ed] federal protection over all or part of twelve of the fifteen Bellwether routes at issue in this case." *Id.* at 15. This implies there is no federal protection of the routes. Yet, the routes remain on federal land under BLM management.

SUWA also represented that during a seventeen-month period,[23] Plaintiffs "took a slew of depositions, none of which SUWA was permitted to participate in, and ten of which Plaintiffs now

---

[23]    This court has been assigned *Kane County (1)* since November 2008. It was assigned case management of *Kane County (2)* on March 13, 2013, along with the other R.S. 2477 cases. *See* Mem. Dec. (ECF No. 78). On April 17, 2013, this court allowed SUWA to attend all preservation depositions before its Motion to Intervene was addressed. Minute Entry (ECF No. 89). On May 31, 2013, this court transferred *Kane County (2)* back to the presiding judge due to a pending dispositive motion. Docket Order (ECF No. 121). At that point, SUWA's motion to intervene in *Kane County (2)* had not been fully briefed and because the court was no longer assigned the case, it did not address the motion to intervene. On June 17, 2014, the presiding judge referred the case back to this court for consideration of the pending Motions to Intervene. Order (ECF No. 171). The court ruled on the motion on September 10, 2014. This is the seventeen-month period referenced by SUWA. The court notes that on August 29, 2015, the presiding judge recused from

intend to use at trial." *Id.* at 18. This implies SUWA had no involvement in the depositions. That is incorrect. SUWA was permitted to attend the depositions and ask questions through the United States, which they did do.[24] *See* Mem. in Opp'n, at 5 and Attached Exhibits (ECF No. 523).

SUWA further represented it could not issue its own discovery, which also is not true. Mot. to Intervene, at 18 (ECF No. 516). As long as third-party discovery was reasonable, SUWA was allowed by the court's order to issue subpoenas. Unfortunately, SUWA abused this right by consistently issuing subpoenas that were overbroad. *See e.g.*, Mem. Dec., at 5 (ECF No. 394) (quashing subpoena because "for five categories of information," SUWA sought "all documents" related to the 770 roads claimed by Kane County and the 730 roads claimed by Garfield County, even though this case is only focused on 15 roads presently to ensure proper management and avoidance of undue burdens).

SUWA also said it could not assert a new defense without obtaining permission. Mot. to Intervene, at 18 (ECF No. 516). This is incorrect. SUWA is prohibited from asserting new defenses—period. There is no provision in the court's intervention order allowing for leave on this subject,[25] but SUWA has ignored that limitation.

---

this case (ECF No. 252), but this court continued to address all case management issues. This case was then formally assigned to this court on January 26, 2018 (ECF No. 363).

[24]  The court subsequently amended its ruling, so SUWA could ask questions directly, but subject to time limitations. Second Amended Permissive Intervention Order, at 3 (ECF No. 184).

[25]  *See* original Memorandum Decision on Intervention, *Sevier County v. United States*, No. 2:12-cv-452, 2013 WL 2643608, at *5 (D. Utah June 12, 2013) (stating "SUWA is prohibited from asserting new . . . defenses in the Road Cases," and that when making "an argument not made by the United States," that argument "shall be limited in scope to the existing claims or defenses in the case"); *see also* Modified Order re Permissive Intervention, at 4 (ECF No. 124 in Case No. 2:11-cv-1045; ECF No. 91 in Case No. 2:12-cv-452) (stating the same); Second Amended

SUWA also asserted the preservation depositions were one-sided, with only the Plaintiffs taking them. *See id.* at 19–20. Yet, the intervention order allows SUWA to seek leave to depose witnesses not listed by Plaintiffs.

All of these representations were made in one document. The court does not believe it necessary or useful to detail all of the other instances when SUWA has misrepresented a proceeding, or acted contrary to a court order, but they exist not only in the record of this case, but in the other R.S. 2477 cases this court is assigned and/or managing. Such conduct is not appropriate for any party, much less a party that is a limited permissive intervenor.

The court recognizes that SUWA has strong environmental interests and that it desires to protect those interests. The court does not fault SUWA for that. Protecting the environment is an important public concern. No matter how keen a person's interest is, however, it still must yield to orders issued by a court. To view an order merely as a limitation to be circumvented and avoided does not serve the purpose of a fair resolution of the dispute between the real parties in interest. Nor does improper advocacy serve the purpose of the judicial system. Whatever frustrations SUWA has experienced over the court's limitations, the court emphasizes again that SUWA's role in this litigation was meant to be limited. It cannot take a lead role because of the harm to the actual parties.

## II.     MOTION TO PARTICIPATE AS A FULL PARTY

SUWA contends the court is required to allow it to participate as a full party based on a recent Tenth Circuit decision in *Kane County (1)*. When the mandate on that decision ultimately

_____

Permissive Intervention Order, at 3–4 (ECF No. 184) (same); Third Amended Permissive Intervention Order, 3 (ECF No. 405) (same).

issues, the court will respect the ruling, but presently there is a request pending for an en banc hearing. Consequently, until the mandate issues, there is no final, binding decision that governs this court. The court therefore denies SUWA's request to participate as a full party.

The court does not intend to allow this case to stall, and based on SUWA's present discovery requests, it questions whether SUWA shares the goal of a timely and fair resolution of the dispute. The court questions whether SUWA actually intends to go to trial in February 2020. During a hearing about a year ago, the State commented that everyone's objective should be "to get this job done the best way we can." Hearing Tr., at 37 (ECF No. 471). It then remarked, "I know the court's committed to that, . . . the State of Utah is committed to that, Kane County is committed to that, the United States is committed to that. My question is is SUWA really committed to that?" *Id.* The court has a similar question.

Plaintiffs have produced 25,000 pages of documents, and the United States has produced 340,000 pages of documents. Objection to Discovery, at 3 (ECF No. 538). A large portion of the United States' discovery pertains to jurisdiction, and it was produced in 2015 and 2016. Stipulated Mot. to Vacate Hr., at 2 (ECF No. 299); Hearing Tr., at 12 (ECF No. 418). Nevertheless, in August 2018, SUWA represented that even though it had "nearly a dozen lawyers" reviewing discovery, they had only been able to review 60,000 pages of documents and therefore argued that the schedule needed to be extended for them. Hearing Tr., at 42 (ECF No. 430). Yet, at the same time it argued that it needed more discovery, despite SUWA also having obtained additional discovery through GRAMA and FOIA requests.

SUWA is now asking the court to open the doors even wider to allow additional discovery, and the ability for follow-up discovery, all with trial scheduled in five months. As discussed in a

separate memorandum decision, the court is not inclined to allow the additional discovery. This is due to the discovery requests themselves, but also due to trying to hold the trial date. The trial was initially scheduled for February 2019. Because of the government shutdown earlier this year, the trial had to be postponed. The court offered a new trial date in May 2019, but the United States had a conflict. SUWA then had conflicts in June 2019. Consequently, the trial was scheduled for August 2019. In July 2019, SUWA filed its fourth Motion to Intervene and asked for a trial continuance. Motion to Intervene (ECF No. 516); Motion to Continue Trial (ECF No. 518). The proceedings halted again while the real parties in interest attempted to work out a resolution with SUWA based on prudential factors. The court then reset the trial for February 2020, one year after the original trial date and years after the meaningless detour to the Utah Supreme Court. SUWA offers no convincing support that the discovery it now seeks would add anything of substance to the trial. As such, these requests seem to be yet another attempt by SUWA to delay this proceeding. Any further delay will only cause more prejudice to the real parties in interest and will no longer be tolerated.

As such, and for the reasons discussed herein, the court believes that SUWA's conduct in this case warrants further limitations rather than increased allowances. Because SUWA has repeatedly circumvented the court's prior orders, as well as their purpose, the court is not convinced that SUWA would give an order allowing its limited continued involvement any more heed at trial than it has done in the past. Consequently, the court directs that SUWA only participate through the United States and not independently. This means that SUWA's Ninth Affirmative Defense is hereby stricken. SUWA's Answer, at 197 (ECF No. 421). At trial, if SUWA has exhibits or a witness to proffer, they shall only be offered by and through the United

States, to the extent the United States determines they are warranted. The United States should be able to decide what evidence and witnesses advance its position, and it may have reasons why it does not want particular evidence or theories proffered by SUWA to be offered in the case. It is therefore up to the United States to determine what evidence to offer—SUWA may make suggestions to the United States but can do no more. Further, SUWA shall not be permitted to file additional motions, briefing, objections, or pleadings, with one exception—SUWA is authorized to file a Trial Brief on or before January 15, 2020. To the extent Plaintiffs or the United States believe a limitation should be modified in the future for prudential reasons, they may make such a request for the court's consideration.

The court believes these limitations are necessary so that this case may remain on schedule for a February 2020 trial. The limitations are to ensure a fair process for the actual parties. They are not directed at any particular outcome and are not meant to favor one party over another. Instead, they are to ensure the court is hearing from the actual parties and not having the lead taken from them by a tangential permissive intervenor. When an intervenor's rights and actions surpass that of the actual parties, something is wrong. The course needs to be corrected.

## CONCLUSION

The court GRANTS IN PART and DENIES IN PART SUWA's Motion to Allow SUWA Full-Party Participation or to Address the Motion to Intervene on the Merits (ECF No. 530). For the reasons stated above, the court denies the motion to allow SUWA full-party participation. The court grants SUWA's request that the court address, on the merits, the fourth Motion to Intervene. Having considered the motion on the merits, for the reasons stated above, the court DENIES SUWA's fourth Motion to Intervene (ECF No. 516). The court further STRIKES the Ninth

Affirmative Defense in SUWA's Answer (ECF No. 421 at 197). Finally, the court sets forth above the new conditions under which SUWA may participate in this case as a limited permissive intervenor.

DATED this 5th day of September, 2019.

BY THE COURT:

Clark Waddoups
United States District Court