TODD KIM, Assistant Attorney General
JOSEPH H. KIM, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0207

TRINA A. HIGGINS, United States Attorney (7349)
MELINA SHIRALDI, Assistant United States Attorney (13110)
MICHAEL D. SMITH, Special Assistant United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 524-5682

Attorneys for Defendant United States of America

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KANE COUNTY, UTAH (2), (3), and (4), a Utah political subdivision; GARFIELD COUNTY (1), UTAH, a Utah political subdivision, and STATE OF UTAH, <br><br> Plaintiffs (or Plaintiff-Intervenor, as to State of Utah in Kane County (2)), <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant, <br><br> and <br><br> SOUTHERN UTAH WILDERNESS ALLIANCE, *et al.*, <br><br> Defendant-Intervenors. | **DEFENDANT UNITED STATES' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTIONS TO DISMISS** <br><br> Case Nos. 2:10-cv-01073-CW; <br> 2:11-cv-1045-CW <br><br> Judge Clark Waddoups |

The United States has filed motions to dismiss [*Garfield (1)* ECF No. 325; *Kane (2)* ECF Nos. 671 and 755], which were heard by this Court on July 27, 2023. *See Garfield (1)* ECF No. 336. Subsequently, this Court ordered supplemental briefing on three questions:

1. What is the proper definition of a "holder" on an R.S. 2477 right-of-way?

2. If a "holder" includes one who holds a vested property right, even if title has not been perfected, does the act of refusing to consult on a road improvement, or the act of refusing to allow regular maintenance, constitute a denial that the State and County hold an R.S. 2477 right, so as to trigger the case or controversy requirement under the QTA?

3. If so, when was the statute of limitations triggered, if at all, for the remaining eight roads at issue?

*Garfield (1)* ECF No. 337; *Kane (2)* ECF No. 773 ["Supplemental Briefing Order"].

For the reasons explained below, the United States concurs that "a 'holder' includes one who holds a vested property right, even if title has not been perfected[.]" Supplemental Briefing Order at 11. But it does not follow that a dispute will necessarily arise concerning an alleged R.S. 2477 right of way anytime the Bureau of Land Management ("BLM") declines to consult with an alleged "holder" on a road improvement project. A dispute arises only when the operative pleadings present allegations consistent with the Quiet Title Act's ("QTA") jurisdictional inquiry, as reflected in *Kane County v. United States* (*Kane (1)*), 772 F.3d 1205, 1210-11 (10th Cir. 2014), *abrogated on other grounds by Wilkins v. United States*, 598 U.S. 152 (2023). And Plaintiffs' operative pleadings do not identify any dispute consistent with that standard, because they do not allege that BLM has prohibited routine maintenance, or that BLM has disallowed improvements that are asserted to be within the scope of asserted R.S. 2477 rights.

## I. A "Holder" is a Claimant Who Holds a Vested Property Right

The Tenth Circuit makes clear that a "holder" is simply one who holds an R.S. 2477 right-of-way. *See, e.g., S. Utah Wilderness All. v. BLM (SUWA)*, 425 F.3d 735, 745 (10th Cir. 2005) (discussing "the holder of an R.S. 2477 right of way"); *id.* at 746 (discussing "the holder of the easement"); *id.* at 747 (discussing "the easement holder"); *id.* at 748 (discussing "the right-of-way holder" and citing to *Sierra Club v. Hodel*, 848 F.2d 1068, 1084 (10th Cir. 1988)). Indeed, "holder" may simply be shorthand for what *Hodel* discussed as "R.S. 2477 rightholders." 848 F.2d at 1082; *see also id.* at 1079 n.9 (discussing "the holder of the right-of-way").

The United States concurs that "a 'holder' includes one who holds a vested property right, even if title has not been perfected[.]"[1] Supplemental Briefing Order at 11. The United States, thus, respectfully disagrees with the Court's statement, that, "[a]ccording to the United States, Plaintiffs cannot be a 'holder' unless (1) title has been adjudicated by a court, or (2) the BLM has administratively determined the validity of an R.S. 2477 claim for its own purposes." Supplemental Briefing Order at 7 (citing to ECF No. 736 at 4-5). They can be. The United States' point was (and is) simply that when confronted with an asserted holder, the United States need not accept the assertion unless one of those identified events has occurred. *See* ECF No. 736 at 4-5 (noting that the "predicate determination of 'holder' status has not yet occurred").

In sum, the above references to "holder" reflect those instances where a court has adjudicated title to an R.S. 2477 right-of-way in favor of a State or county, or when an agency has made a non-binding determination of the existence of an R.S. 2477 right-of-way. But the

---

[1] In the R.S. 2477 context, the United States understands "perfected" to refer to a scenario where a Plaintiff has established through evidence, in an appropriate QTA case, that a right-of-way was accepted.

United States concurs that if an entity asserting title to an R.S. 2477 right-of-way is correct in its assertion, then it is a "holder."[2]

II.     **Whether an Action or Omission by BLM Gives Rise to a "Disputed Title" is Necessarily Fact Specific; a "Disputed Title" Does Not Necessarily Arise Anytime BLM Declines to Consult With an Asserted Holder on a Proposed Road Improvement**

As an initial matter, BLM has no obligation to administratively recognize a claimant's title interest in an R.S. 2477 right of way. For example, in *Kane County, Utah v. Salazar*, 562 F.3d 1077, 1087 (10th Cir. 2009), the Tenth Circuit rejected Kane County's Administrative Procedure Act claim that the BLM must administratively validate (or possibly even consider) the county's asserted R.S. 2477 rights-of-way before the BLM issued travel management planning decisions. *Id.* The Tenth Circuit held that "nothing in federal law requires the BLM to do so." *Id.* It went on to conclude that:

> even though the County plaintiffs might prefer that the BLM informally adjudicate their *purported* rights-of-way, they may not, as the district court correctly concluded, 'shift their burden *as R.S. 2477 claimants or shortcut the existing processes for determining their unresolved R.S. 2477 claims* by insisting that the BLM import its [internal and] preliminary road inventory work on unresolved R.S. 2477 claims in 1991 and 1993 [prior

---

[2]     The United States does not interpret the Court's order to suggest that the State or County presumptively hold vested rights under RS 2477 barring a dispute by the United States. *See* Supplemental Briefing Order at 10 (stating that, "[u]ntil the United States disputes vested title . . . the *SUWA Decision* and FLPMA appear to recognize the State and County hold property rights that vested in 1976"). Nor could such a presumption be appropriate. It is well-established that "land grants are construed favorably to the Government, that nothing passes except what is conveyed in clear language, and that if there are doubts they are resolved for the Government, not against it." *SUWA*, 425 F.3d at 769 (citing *Watt v. Western Nuclear, Inc.*, 462 U.S. 36, 59 (1983)). The United States instead interprets this part of the Order to mean that an RS 2477 claimant may hold vested title in fact regardless of whether the prerequisites for a QTA lawsuit (a vehicle for perfecting that title) are met. Regardless of the Court's intent, however, the law is clear that there is no presumption of vested rights – rather, a QTA plaintiff bears the burden of proving its asserted rights. *See id.* (noting that the party "claiming R.S. 2477 rights, bear[s] the burden of proof"). Any dispute (or absence therefore) by the United States of such claimed rights does nothing to satisfy a QTA claimant's burden of proof. Instead, the presence or absence of a dispute bears only on whether a claimant has satisfied the jurisdictional prerequisites for asserting a QTA claim.

>to this court's decision in *S. Utah*] into its planning processes in formulating the 1999 Management Plan.'

*Id.* (quoting *Kane County, Utah v. Kempthorne*, 495 F. Supp. 2d 1143, 1158 (D. Utah 2007) (emphasis added)). The Department of the Interior's long-standing Norton Policy reflects this law. In place for more than seventeen years, the Norton Policy states that "ultimately deciding who holds legal title to an interest in real property, including an R.S. 2477 right of way, 'is a judicial, not an executive, function.'" PX 610 (Secretary Norton Policy) at 6 (quoting *SUWA*, 425 F.3d at 752). Thus, "if a claimant seeks a definitive, binding determination of its R.S. 2477 rights, it must file a claim under the Quiet Title Act, 28 U.S.C. § 2409a." *Id.* But this policy also notes that in many instances it is possible to preserve the status quo without any definitive determinations of title, including, for example, by acknowledging and not disrupting counties' routine maintenance operations. *Id.* In this manner, BLM can and often does act consistent with a county's asserted rights despite declining to affirm those asserted rights.

Against that backdrop, the act of declining to consult with an asserted holder on a proposal for road improvement does not necessarily constitute a dispute by BLM of the claimed right-of-way, and thus does not necessarily waive sovereign immunity under the QTA. It might. Or it might not. The answer will be situational and fact-specific, and based on the standard for disputed title set forth by the Tenth Circuit in *Kane (1)*, 772 F.3d at 1212. In that case, the Tenth Circuit set forth the proper understanding of the QTA's disputed title requirement with sufficient clarity. "[T]o satisfy the 'disputed title' element of the QTA, a plaintiff must show that the United States has either expressly disputed title or taken action that implicitly disputes it." *Id.* Amplifying this definition, the Tenth Circuit noted that, "[u]nder this standard, a plaintiff need not show the United States took direct action to close or deny access to a road -- indirect action or assertions that actually conflict with a plaintiff's title will suffice." *Id.* "However, actions of

the United States that merely produce some ambiguity regarding a plaintiff's title are insufficient to constitute 'disputed title'." *Id*.

Thus, when faced with a mere claim to an R.S. 2477 right-of-way (in other words, an asserted claim that, if correct, has already vested, but has not yet been perfected), it matters what actions the United States takes (or perhaps fails to take), and those facts and circumstances must be analyzed to determine whether the disputed title element of the QTA has been satisfied. This is true even where an asserted R.S. 2477 holder seeks to improve a road. Since at least *SUWA*, the Tenth Circuit has been relatively clear about the differences between maintenance and improvements on R.S. 2477 rights-of-way. Relevant here is that routine maintenance does not require any consultation with the relevant federal land management agency. *E.g., SUWA*, 425 F.3d at 748. Thus, requiring an asserted holder to consult with BLM (for example) before allowing regular maintenance would almost certainly dispute the asserted title. A proposed improvement to an asserted right-of-way, however, would require interaction with the relevant federal land management agency. If the relevant federal land management agency flatly refused to interact, or refused to allow the improvement under any circumstances, that would likely similarly dispute the asserted title. But where the relevant federal land management agency does interact, and is willing to allow the improvement, regardless of whether the asserted holder in fact has the right to such an improvement, then the disputed title element of the QTA is not likely to be satisfied. The specific allegations must be analyzed using the *Kane (1)* standard for disputed title.

### III.  Title Has Not Been Disputed for the Eight Claims Now at Issue

Under this proper understanding of the QTA's disputed title requirement, and under the facts alleged in the operative complaints in these cases, title has not been disputed for the eight claims now at issue.

The Court is not correct when it states that "[t]he United States' definition of a 'holder' . . . has interfered with the State and County's ability to maintain the roads and the United States' obligation to consult with the State and County on any improvements."  Supplemental Briefing Order at 9.  The United States' definition of a "holder," by itself, cannot meet the *Kane (1)* standard for disputed title, which is based on actions (either direct or indirect) that "either expressly disputed title or . . . implicitly disputes it."  *Kane (1)*, 772 F.3d at 1212.  Presumably, what the Court meant was that the United States' definition of a "holder" may have led it to take actions that disputed title.  But this possibility has not occurred for these eight claims now at issue, and Plaintiffs do not allege otherwise.

There are no allegations that the United States has expressly disputed title.  *Kane (1)*, 772 F.3d at 1212.  Rather, Plaintiffs only allege that the United States has failed to take a position on their assertions of title, which does not represent a dispute of title sufficient to waive sovereign immunity.  *See, e.g., id.* at 1213 (the United States' denial of allegations in a complaint did not dispute title); *id.* at 1214 (BLM's issuance of coextensive Title V rights-of-way to private entities for three Cave Lakes roads did not dispute Kane County's title because dominant and servient estate holders can coexist as long as they do not "unreasonably interfere with the other," and Kane County had failed to produce "evidence as to how the permits interfered with any development plans" necessary to show there is a dispute); *see also Salazar*, 562 F.3d at 1087; *Owyhee Cnty. v. United States*, No. 1:21-CV-00070-DKG, 2022 WL 1591895 at *6-9 (D. Idaho,

May 19, 2022) (rejecting Plaintiffs' argument that statements in a BLM transportation planning environmental assessment requiring Plaintiffs to validate their R.S. 2477 claims (through court adjudication) before the United States would recognize the roads as R.S. 2477 rights-of-way established a dispute of title, and specifically rejecting Plaintiffs' attempt to focus entirely on the BLM's definition or classification of Plaintiffs' claimed R.S. 2477 rights-of-way as, at most, demonstrating an ambiguity concerning the status of Plaintiffs' R.S. 2477 claims, which are insufficient to constitute a title dispute under the QTA).

Nor are there any allegations that the United States has implicitly disputed title through an action or assertions that actually conflict with a plaintiff's asserted title. *Kane (1)*, 772 F.3d at 1212. There are no allegations that Plaintiffs have been denied the ability to conduct regular maintenance of these eight roads. Nor are there any allegations that Plaintiffs have been denied the ability to undertake specific improvements involving any of these eight roads. The closest Plaintiffs come to this is to note that, for the K9000 (Hole-in-the Rock Road) claim, "[t]his pioneer-era road is in desperate need of repair, and federal road funds have been withheld from Kane County directly because of the Department of Interior's inexplicable *refusal to acknowledge* Kane County's right-of-way for this road." *Kane (2)* Amended Complaint [ECF No. 21] at ¶ 2079 (emphasis added). This does not refer to any action that disputed title, but merely to the refusal to acknowledge the asserted title. Nor does this refusal to acknowledge necessarily prevent any road work. Federal Defendants have been willing to discuss allowing such road work, regardless of whether Plaintiffs hold sufficient rights, through a Title V process that would not prejudice the asserted rights (if they in fact exist). *See* DX 1023. The asserted, but as yet unpled, allegations regarding the K6000 and G9000 claims involve similar circumstances.

To be sure, the complaints contain many similar allegations of a "cloud on title." And when the Tenth Circuit issued its opinion in *Kane (1)* in 2014 setting forth the proper understanding of the QTA's disputed title requirement, it noted that it was deciding this as a matter "of first impression in this circuit." *Kane (1)*, 772 F.3d at 1211. Thus, it is not surprising that Plaintiffs' earlier-filed complaints have failed to allege facts sufficient to meet this proper standard. But it is now clear that Plaintiffs were incorrect to rely on a "cloud on title" standard for disputed title, as *Kane (1)* explicitly rejects a "cloud on title" standard. 772 F.3d at 1212. What is more surprising is that Plaintiffs have not made any attempt to amend their complaints to try to meet the proper standard for disputed title, or to try to properly raise more recent events that they assert are relevant to the two additional claims (K6000 and G9000) Plaintiffs have added to the present litigation.[3]

To even attempt to avoid dismissal, Plaintiffs would need to amend their complaints to allege actions taken by the United States that "either expressly disputed title or . . . implicitly disputes it." *Kane (1)*, 772 F.3d at 1212. But this is not a mere pleading failure. Even outside their pleadings, Plaintiffs have failed to even suggest sufficient actions.

As the Court notes, "the United States may refuse to disclaim title . . . [or] may refuse to enter into informal determinations of title without creating a case or controversy." Supplemental Briefing Order at 8. In other words, the United States need not take any position on Plaintiffs'

---

[3] Plaintiffs have suggested that there are "additional facts and issues" that they believe now "prove that the United States disputed Plaintiffs' title[.]" *Kane (2)* ECF No. 756 at 4. The United States does not concede that more recent events demonstrate the "disputed title" necessary for jurisdictional purposes. More fundamentally, however, these motions to dismiss are necessarily based on the pleadings currently on file. These operative pleadings predate the referenced "additional facts and issues." Thus, to the extent Plaintiffs believe that the referenced "facts and issues" are important or relevant to preventing dismissal, it is incumbent upon them to move for leave to amend or supplement the operative pleadings.

assertion of title, and such a circumstance by itself will not have disputed title within the meaning of the QTA. *See Kane (1)*, 772 F.3d at 1213 (similar to the United States' denial of allegations in a complaint); *see also Salazar*, 562 F.3d at 1087; *Owyhee Cnty*, 2022 U.S. LEXIS at *16-19, *26-27. And that is all that has happened here, with respect to the eight claims now at issue. Plaintiffs can only establish that the United States has failed to recognize their claims to title. But that is not sufficient to establish disputed title. Nor can Plaintiffs establish that because the United States has failed to recognize their claims to title, it has taken any other actions that have directly or indirectly disputed their claimed title. For roads that are open to the general public, there is no actual dispute but only, at most, a mere cloud on title where the United States has failed to take any position on Plaintiffs' assertion of title. And it makes no difference that for a subset of these eight claims (K4500, K6000, K8200, K8600, K9000, and G9000), the United States has restricted the types of vehicles that the general public may use on these roads. That is because, even assuming Plaintiffs hold R.S. 2477 rights, these rights would remain subject to reasonable regulations like these existing restrictions. *See SUWA*, 425 F.3d at 746 ("[C]hanges in roads on R.S. 2477 rights of way across federal lands are subject to regulation by the relevant federal land management agencies." (citing *Clouser v. Espy*, 42 F.3d 1522, 1538 (9th Cir. 1994))). Thus, the imposition of such regulations cannot be said to implicitly dispute the claimed rights. Nor is it significant that for three roads (K6000, K9000, and G9000) that Plaintiffs seek to improve, the United States has so far failed to recognize Plaintiffs' claims to be a holder.[4] What could be significant is if the United States refused to allow these improvements that are asserted to be within the scope of asserted rights held. But that has not been pled. Nor

---

[4] A similar, but more recent issue regarding a proposed improvement is being addressed in the separate *Kane (1)* case.

could it be, as the fact is that the United States has been willing to discuss allowing these improvements, regardless of whether Plaintiffs hold any rights to them. And under such a circumstance, title has merely been clouded, but not disputed for QTA purposes.[5]

Respectfully submitted this 7th day of November, 2023,

TODD KIM
Assistant Attorney General

/s/ Joseph H. Kim
JOSEPH H. KIM, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0207

TRINA A. HIGGINS (7349)
United States Attorney
District of Utah
MELINA SHIRALDI (13110)
Assistant U.S. Attorney
MICHAEL D. SMITH
Special Assistant U.S. Attorney
111 South Main Street, Suite 1800
Salt Lake City, UT 84111
(801) 524-5682

*Attorneys for Defendant United States of America*

---

[5] The three other claims where title has been asserted to be disputed for long enough to be barred by the QTA's statute of limitations are already fully briefed and pending with the Court. *E.g.*, Supplemental Briefing Order at 6-7. But their contrast with the eight claims now at issue is illuminating. For those other three claims, title has been asserted to be disputed by specific acts, such as posting part of the road as closed to the general public. No comparable acts are alleged for the eight claims now at issue. Or, to the extent that the Court decides to deny dismissal for these three other claims, based on a finding of a lack of disputed title, it could be hard to square that with a ruling that (for example) allowing an improvement, but through a FLPMA Title V process, that does not prejudice the asserted rights, but provides an expedient way to allow the work regardless of whether rights are held, nonetheless somehow disputes Plaintiffs' title.

Of Counsel:
Cameron B. Johnson
Office of the Regional Solicitor
U.S. Department of the Interior