HOLLAND & HART LLP
Shawn T. Welch (#7113)
Richard D. Flint (#7525)
Michelle Quist (#13559)
Sydney J. Sell (#17313)
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
stwelch@hollandhart.com
rdflint@hollandhart.com
mlquist@hollandhart.com
sjsell@hollandhart.com

Kathy A.F. Davis (#4022)
Kaitlin Tess Davis (#15831)
ASSISTANT ATTORNEYS GENERAL
Sean D. Reyes (#7969)
UTAH ATTORNEY GENERAL
5110 State Office Building
P.O. Box 142477
Salt Lake City, Utah 84114-2477
kathydavis@agutah.gov
kaitlindavis@agutah.gov
Telephone: (801) 538-9819

*Attorneys for Plaintiff State of Utah*

Rob Van Dyke (#12704)
Deputy Kane County Attorney
76 N. Main Street
Kanab, Utah 84741
Telephone: (435) 644-5278
rvandyke@kane.utah.gov

*Attorneys for Plaintiff Kane County, Utah*

# IN THE UNITED STATES JUDICIAL DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KANE COUNTY, UTAH (2), (3) and (4), a Utah political subdivision; and STATE OF UTAH,<br><br>    Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant, | **KANE COUNTY, UTAH'S AND THE STATE OF UTAH'S REQUEST FOR HEARING**<br><br>**Case No. 2:10-cv-01073**<br><br>(consolidated with 2:11-cv-1031, 2:12-cv-476)<br><br>Judge: Hon. Clark Waddoups |

Plaintiffs Kane County, Utah ("County"), and the State of Utah ("State"), respectfully request the Court to hold a hearing on an expedited basis to address the long-needed installation

of box culverts on the K6000 House Rock Valley Road at the Buckskin Wash crossing. For no legitimate reason, the Bureau of Land Management ("BLM") has ignored the County's requests to allow it to install the culverts and has ignored the growing public safety and welfare concerns repeatedly communicated by County officials and acknowledged by BLM itself. Upon consideration, the Court should enter an order allowing the County to install the culverts, even on an interim basis and regardless of title to the road, or require the BLM to pay for the excess maintenance and response costs that the BLM's obstinance continues to shift to the County.

### 1 – The Location And Course Of The K6000 House Rock Valley Road.

The K6000 House Rock Valley Road is located in south-central Kane County, Utah. The road begins at Highway 89 and travels southerly for roughly 10 miles to the Arizona state line. In Arizona, the road continues another 19 miles to Highway 89A near Jacob Lake, Arizona.



A demonstrative map showing the course and location of the K6000 House Rock Valley Road, with excerpts of the State of Utah's recorded information for the road, is attached for the court's reference. *See* Exhibit 1, at 3. This request involves a short segment of the K6000 House Rock Valley Road where it crosses the Buckskin Wash (blue arrow) in Section 15, Township 43 South, Range 3 West, S.L.M. The Buckskin Wash is a generally dry crossing, but is also prone to flash flooding several times per year. The flash floods make the crossing impassable due to mud and debris deposited across the roadway, and travelers

sometimes venture into the mud and become stuck or are trapped on one side of the road.[1] Before May of 1980, travelers created a bypass route that runs parallel to the wash on the north and turns southerly to cross the wash about 220 feet east of the House Rock Valley Road. On a few occasions, Kane County has bladed the bypass route to be able to access the south side of the wash when the main crossing was obstructed by debris.

 

The aerial image on the left shows the crossing (at the BLM label) and the bypass (blue arrow) as of May 22, 1980.[2] The aerial image on the right shows the crossing and bypass as of November 12, 2023.[3]

---

[1] *See, e.g.,* Buckskin Wash Flash Flood, 7/29/17, https://www.youtube.com/watch?app=desktop&v=_EaAcSx1mFQ

[2] Source: USGS, www.earthexplorer.usgs.gov.

[3] Source: Google Earth.

The K6000 House Rock Valley Road now has several parking areas and trailheads along its 10-mile path in Utah, including at the Buckskin Gulch trailhead (above at bottom right), and at the trailhead for the world-famous Wave and Wire Pass hiking areas. The parking lot and facilities for the Wave and Wire Pass are shown below in an aerial photograph dated November



12, 2023.[4] The BLM expanded these parking facilities in the last few years and more than tripled the daily permits from 20 to 64 for visitors to hike the Wave. The BLM also advertises Wire Pass as a standalone hike or in conjunction with longer hikes. "Wire Pass is most popularly hiked as a day hike. Wire Pass is also often used as a beginning or end point for overnight trips through Buckskin Gulch and Paria Canyon."[5] "The road that accesses the permit area is unpaved and minimally maintained. Most of the time, it is possible to reach the trailhead in a two-wheel-drive, high-clearance vehicle." *Id*. "However, four-wheel-drive, high-clearance vehicles may be required when the road is wet. During the rainy season and the winter months, *the road may become impassable for all vehicles*, even those with four-wheel-drive." *Id*. (emphasis added).

---

[4] Source: Google Earth.

[5] https://www.blm.gov/visit/wire-pass last visited July 18, 2024.

4

South of the Wave and Wire Pass parking lot, the House Rock Valley Road continues to the State Line Campground and to growing tourist attractions in Arizona, such as White Pocket and a Condor viewing site, and to renowned tourist attractions such as Lee's Ferry and Jacob Lake, Arizona.

These locations are attracting an increasing number of visitors who travel on the House Rock Valley Road, including many new out-of-state and international visitors. A significant number of these visitors are inexperienced with travel on southern Utah roads.

**2 – The Increased Demand, Impacts, And Public Safety Needs**.

Two primary factors caused the dramatic increase in travel on the House Rock Valley Road. First, two national monuments were declared along the road. In 1996, President William J. Clinton issued Proclamation 6920 to create the Grand Staircase-Escalante National Monument ("Monument"),[6] and in 2000 President Clinton issued Proclamation 7374 to create the Vermillion Cliffs National Monument ("VCNM").[7] The designation of these national monuments, the creation of visitor centers, travel maps, and the published descriptions of the sites and trails in the monuments, has widely disseminated the beauty and wonders of the monuments, including popular locations along the House Rock Valley Road.

Second, contemporaneous with the creation of the Monument came the advent of internet browsers. The "WorldWideWeb"[8] became a global broadcast tool for advertising and travel planning. This includes the world-wide distribution of countless remarkable photographs of the

---

[6] *See* https://www.blm.gov/programs/national-conservation-lands/utah/grand-staircase-escalante-national-monument, last visited July 14, 2024.

[7] *See* https://www.blm.gov/national-conservation-lands/arizona/vermilion-cliffs, last visited July 14, 2024.

[8] *See* https://www.mozilla.org/en-US/firefox/browsers/browser-history/, last visited July 15, 2024.

area, vacation packages, and offers for guide services. Now, people across the world search, discover, and plan trips to the sights along the House Rock Valley Road. Federal, state, and local governments also advertise the areas as tourist destinations and tour guides advertise their services – all of which bring new visitors to the remarkable public resources along the House Rock Valley Road.

In 2000, the Monument "had just 600,000 visitors; in FY20, despite COVID-19, the [M]onument recorded 950,000 visitors. In FY21, visitation topped out at over 1.3 million. In FY22, visitation slightly decreased with 1,029,000 visitors. Visitor use will continue to increase within [the Monument]."[9] In FY23, visitation dipped to 890,000.[10]

The VCNM has also experienced dramatically increased visitation, which presents significant complications because of the cross-border mix of Utah and Arizona trailheads and sites. "Visitor use continues to rise, and many visitors are not fully prepared for the climate and remoteness. As a result, the number of search and rescue (SAR) events has continued to increase, resulting in additional costs for BLM and local law enforcement."[11] "That also poses a challenge for both SAR, law enforcement, and the overall public." *Id*. Whether responding from Page, Arizona, or Kanab, Utah, search and rescue vehicles must be able to cross the Buckskin Wash to reach Buckskin Gulch, Wire Pass, the Wave, and the most visited sites in the VCNM. The County's culverts will ensure that search and rescue vehicles can travel to the areas where the need exists.

---

[9] Source: search "Grand Staircase-Escalante National Monument FY2022 Managers Report". Excerpt located at 4.

[10] Source: search "Grand Staircase-Escalante National Monument FY2023 Managers Report". Excerpt located at 4.

[11] Source: search "2023 VCNM Managers Report Final". Excerpt located at 3.

As visitation has multiplied and search and rescue events increase, BLM's travel management remains stuck in the 1990s. Commenced in 1996 and published as final in February of 2000, the BLM adopted the first and only transportation plan for the GSENM. Despite preparing two new Monument management plans—including a comprehensive plan that is now overdue—the BLM refuses to revisit its Monument transportation plan. Thus, the serious transportation problems will continue to grow in the Monument.

What is worse, however, is that BLM refuses to update its Monument transportation plan solely as a litigation tactic in this lawsuit: it is desperately trying to argue that there is no case or controversy or title dispute as to numerous roads, including the K6000 House Rock Valley Road. *See* Defendant United States' Renewed Motions to Dismiss (ECF 755), at 2 (K6000 House Rock Valley Road should be dismissed for lack of jurisdiction."). This is particularly egregious in view of the efforts and ongoing actions of the BLM, itself, to promote visitation to the Monument and the areas serviced by the House Rock Valley Road specifically.

The BLM's obstinance will continue, but the County has already notified BLM that it will install the box culverts. *See generally* Notice (ECF783). The United States, on the other hand, continues to seek dismissal because it has not disputed the State and County's title to the K6000 House Rock Valley Road, but it inconsistently asserts that it is in full possession and control of the road. *See generally* Defendant United States' Response to Plaintiffs Notice [ECF No. 783] (ECF 784).

### 3 – The County Has Historically Cleared And Excavated The Buckskin Wash Crossing And Generally Installed Culverts On Class B Roads Wherever Needed.

The K6000 House Rock Valley Road, where it crosses the Buckskin Wash, appears on that U.S.G.S. Escalante map dated 1886 (Powell Survey topography), a copy of which is

7

attached as Exhibit 2 (Tr. Ex. 294, road shown bottom left). Since at least 1950, the County has maintained the House Rock Valley Road as a Class B General Highway. *See* Exhibit 3 (Tr. Ex. 176), at 3. The County has historically installed culverts wherever and whenever needed to protect the surface of its Class B roads. Culverts are drainage features that serve to protect the roads from repeated washouts and water damage. Culverts are, to the County and according to past practice with the BLM, a tool of preventative maintenance and not an upgrade or improvement. *See* Utah Code § 72-6-109(1)(d)(ii) ("the installation or replacement of . . . culverts" is "maintenance."). Culverts serve to protect a short segment of the traveled surface from repeated water damage, to keep it safe and operable for the traveling public, and to reduce the need to blade and maintain the road. Culverts are drainage features and stand on different footing from road upgrades or improvements.

**4 – The Law And Custom Supports The County's Installation Of These Culverts**.

In *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005) ("*SUWA*"), the court drew a "line between routine maintenance, which does not require consultation with the BLM, and construction of improvements, which does." *Id*. at 748-49. In doing so, the Tenth Circuit "endorse[d] the definition *crafted* by the district court in *Garfield County*:" *Id*. at 749 (emphasis added).

> Defined in terms of the nature of the work, "construction" for purposes of 36 C.F.R. § 5.7 includes the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g*., going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any "improvement," "betterment," or any other change in the nature of the road that may significantly impact Park lands, resources, or values. "Maintenance" preserves the existing road, including the physical upkeep or repair of wear or damage whether from natural or other causes, maintaining the shape of the road, grading it, making sure that the shape of the road permits drainage [, and] keeping drainage features open and operable--essentially preserving the status quo.

8

*Id.*, citing *United States v. Garfield Cnty.*, 122 F.Supp.2d 1201, 1226 (D. Utah 2000).

"As long as the Counties act within the existing scope of their rights of way, performing *maintenance and repair that preserves the existing state of the road*, they have no legal obligation to consult with the BLM (though notice of what they are doing might well avoid misunderstanding or friction)." *Id*. at 749 (emphasis added). "In the event of disagreement, the parties may resort to the courts." *Id*. at 748.

In endorsing the *Garfield County* definition of maintenance versus improvement, the Tenth Circuit acknowledged that the cited regulation (36 C.F.R. § 5.7) "applies in national parks" (*id.*), like Capitol Reef National Park which was at issue in that lawsuit. In crafting the definition under the regulation, the court in *Garfield County* upheld the regulation with express deference to the regulation then warranted under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Garfield Cnty.*, 122 F.Supp.2d at 1215, n.20. However, *Chevron* deference has been overruled and given a "tombstone." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, ___ (2024) (Gorsuch, J., concurring). Thus, the regulation underlying the *crafted* definition is not definitive.

Additionally, the courts in *SUWA* and *Garfield County* stated that their maintenance/improvement definition "'comports with the commonly understood meanings of the words, the pertinent statutes, *agency interpretations, and the past experience of the parties* on the Capitol Reef segment, including the experience leading up to February 13, 1996.'" *SUWA*, 425 F.3d at 749 (emphasis added), quoting *Garfield Cnty.*, 122 F.Supp.2d at 1253.

With respect to the "pertinent statutes" (*id*.), the National Park Service must manage park lands "with resource protection the overarching concern." *Garfield Cnty.*, 122 F.Supp.2d at 1215 (citation omitted). Here, the relevant statute directs the BLM to manage the land "to prevent

9

unnecessary or undue degradation." 43 U.S.C. § 1732(b). Thus, the pertinent statute in this lawsuit is far less restrictive than the statute at issue in *Garfield Cnty*.

Moreover, in *SUWA* and *Garfield County* the courts stated that "agency interpretations, and the past experience of the parties" informed their definitions. *SUWA*, 425 F.3d at 749 (emphasis added), quoting *Garfield Cnty.*, 122 F.Supp.2d at 1253. Here, the County has historically installed culverts whenever and wherever needed to protect the surface of the road from damage caused by crossing water. The County, with BLM's full knowledge and without objection, has installed culverts as preventative maintenance, not as an improvement. Culverts make "sure that the shape of the road permits drainage" and keep "drainage features open and operable", which essentially preserves the status quo of a maintained Class B road. *SUWA*, 425 F.3d at 749.

## 5 – The Court Should Require BLM To Bring A Witness With Actual Authority.

Management of R.S. 2477 public roads has not always been harmonious in Utah, but it became "one of the more contentious land use issues in the West" (*id*. at 740) when past Secretary of the Interior Bruce Babbitt (1993 – 2001) unilaterally cancelled all Utah counties' road maintenance agreements; tried to promulgate regulations in 1994 giving the Department of the Interior ("Interior") the power to adjudicate State and County R.S. 2477 rights-of-way (*id*. at 756), and forced the Monument transportation plan—the first of its kind in Utah—upon the State and County. As stated above, the BLM's travel management remains stuck in the 1990s.

Another 1990s artifact of BLM's hostility to R.S. 2477 is that southern Utah road decisions must now be made by some unknown person in Interior. Thus, the State and County request that a duly authorized management witness from Interior appear at the hearing. As shown

in the remand trial in *Kane County (1) v. United States*, No. 08-cv-0315 CW (D. Utah), Harry Barber is not that witness.

Wherefore, the State and County request the Court to hold a hearing on an expedited basis. Thereafter, the Court should enter its order allowing the County to install the box culverts at Buckskin Wash, even on an interim basis and regardless of title to the road, or require the BLM to pay for the excess maintenance and response costs caused by the BLM's refusal to allow the culverts.

RESPECTFULLY SUBMITTED this 19th day of July 2024.

HOLLAND & HART LLP

*/s/ Shawn Welch*
Shawn T. Welch
Richard D. Flint
Michelle L. Quist
Sydney J. Sell
*Attorneys for Plaintiff Kane County, Utah*

UTAH ATTORNEY GENERAL'S OFFICE

*/s/ Kathy Davis\**
Kathy A.F. Davis
Kaitlin Tess Davis
Assistant Attorneys General
*Attorneys for Plaintiff State of Utah*

*\* Signed with permission given to filing counsel*

31932094_v1