HOLLAND & HART LLP
Shawn T. Welch (#7113)
Richard D. Flint (#7525)
Sydney J. Sell (#17313)
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
stwelch@hollandhart.com
rdflint@hollandhart.com
sjsell@hollandhart.com

Rob Van Dyke (#12704)
Deputy Kane County Attorney
76 N. Main Street
Kanab, Utah 84741
Telephone: (435) 644-5278
rvandyke@kane.utah.gov
*Attorneys for Plaintiff Kane County, Utah*

Kathy A.F. Davis (#4022)
Kaitlin Tess Davis (#15831)
ASSISTANT ATTORNEYS GENERAL
Sean D. Reyes (#7969)
UTAH ATTORNEY GENERAL
1594 W. North Temple, Ste. 300
Salt Lake City, Utah 84116
kathydavis@agutah.gov
kaitlindavis@agutah.gov
Telephone: (801) 537-9801
*Attorneys for Plaintiff State of Utah*

## IN THE UNITED STATES JUDICIAL DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KANE COUNTY, UTAH (2), (3) and (4), a Utah political subdivision; and STATE OF UTAH,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant,<br><br>and<br><br>SOUTHERN UTAH WILDERNESS ALLIANCE, ET AL.,<br><br>    Defendant-Intervenors. | **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT K6000 HOUSE ROCK VALLEY ROAD**<br><br>**Case No. 2:10-cv-01073**<br><br>(consolidated with 2:11-cv-1031, 2:12-cv-476)<br><br>Judge: Hon. Clark Waddoups |

# TABLE OF CONTENTS

STATEMENT OF RELIEF REQUESTED ...................................................................1

INTRODUCTION ........................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS AND ISSUES ....................4

   I.   THE PARTIES, INTERESTS AND APPLICABLE LAW. ................................4

       A. State of Utah Highway Law ......................................................................5

       B. R.S. 2477 And Department Of The Interior Interpretive Regulations ............................6

   II.  THE R.S. 2477 RIGHT-OF-WAY FOR THE K6000 HOUSE ROCK VALLEY
       ROAD .................................................................................................................8

       A. Description Of The K6000 House Rock Valley Road And The Unreserved
          Public Lands Crossed By Its R.S. 2477 Right-of-Way ......................................8

       B. The State And Kane County Accepted An R.S. 2477 Right-of-Way For The
          K6000 House Rock Valley Road .................................................................10

       C. The State And Kane County Formally Accepted The R.S. 2477 Right-of-Way
          For The House Rock Valley Road. ..............................................................12

       D. The K6000 House Rock Valley Road Exists On Lands Formerly Owned By The
          Utah School And Institutional Trust Lands Administration. .............................13

       E. The Public Accepted An R.S. 2477 Right-of-Way For The K6000 House Rock
          Valley Road By Public Use Prior to 1976. ....................................................16

   III. THE STATE AND KANE COUNTY FILED THIS ACTION WITHIN 12
       YEARS OF NOTICE OF AN ADVERSE CLAIM TO TITLE TO THE RIGHT-
       OF-WAY AT ISSUE .........................................................................................16

SUMMARY OF ARGUMENT .................................................................................17

LEGAL STANDARD ................................................................................................18

ARGUMENT .............................................................................................................19

   I.   CONGRESS ENACTED R.S. 2477 TO LIBERALLY GRANT PUBLIC
       HIGHWAY RIGHTS-OF-WAY .....................................................................19

II.  THE REQUIREMENTS OF THE QUIET TITLE ACT. ....................................................20

    A. The Quiet Title Act. ..............................................................................................20

    B. The State And Kane County Timely Filed this Action To Resolve A Disputed
       Title. .................................................................................................................22

III. THE STATE, KANE COUNTY AND THE PUBLIC ACCEPTED THE RIGHT-
     OF-WAY FOR THE K6000 HOUSE ROCK VALLEY ROAD ON
     UNRESERVED PUBLIC LANDS PRIOR TO OCTOBER 21, 1976. ............................22

    A. The Lands Crossed By The K6000 House Rock Valley Road Were Unreserved
       Public Lands......................................................................................................22

    B. The State And Kane County Accepted The R.S. 2477 Right-of-Way For the
       K6000 House Rock Valley Road.......................................................................23

    C. The R.S. 2477 Right-Of-Way For The K6000 House Rock Valley Road Was
       Accepted By Public Use. ..................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barney v. Pulsipher*,
    143 F.3d 1299 (10th Cir. 1998) .........................................................19

*Kane Cnty. (1) v. United States*,
    No. 2:08-cv-00315, 2013 U.S. Dist. LEXIS 40118 (D. Utah Mar. 20, 2013) ................ *passim*

*Kane Cnty. v. United States*,
    No. 2:10-cv-1073, 2024 U.S. Dist. LEXIS 142312 (D. Utah Aug. 9, 2024)
    .........................................................................................12, 17, 22, 23

*Knopf v. Williams*,
    884 F.3d 939 (10th Cir. 2018) .........................................................18

*Leisnoi, Inc. v. United States*,
    170 F.3d 1188 (9th Cir. 1999) .........................................................21

*McFarland v. Norton*,
    425 F.3d 724 (9th Cir. 2005) .........................................................21

*Richards v. Pines Ranch, Inc.*,
    559 P.2d 948 (Utah 1977)..........................................................24

*Skranak v. Castenada*,
    425 F.3d 1213 (9th Cir. 2005) .........................................................21

*Smith v. Mitchell*,
    58 P. 667 (Wash. 1899)..........................................................19, 20

*Streeter v. Stalnaker*,
    85 N.W. 47 (Neb. 1901)..........................................................19

*SUWA v. BLM*,
    425 F.3d 735 (10th Cir. 2005) .........................................................20, 24

*United States v. Garfield County*,
    122 F. Supp. 2d 1201 (D. Utah 2000)..................................................21

*Wilkins v. United States*,
    598 U.S. 152 (2023)..........................................................21

i

## Statutes and Rules

28 U.S.C. § 2409a(a) ..............................................................................................1, 4, 20, 21

43 U.S.C. § 932 ..........................................................................................................1, 19

43 U.S.C. § 1701, note ..................................................................................................20

43 U.S.C. § 1769(a) ......................................................................................................20

Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (R.S. 2477) ......................... *passim*

Federal Land Policy Management Act of 1976, Pub.L. No. 94-579 § 706(a), 90
    Stat. 2743 ................................................................................................................9, 19

Fed. R. Civ. P. 56(a) ......................................................................................................18

Utah Code Ann. § 17-50-302(2) ......................................................................................5

Utah Code Ann. § 17-50-309 ...........................................................................................5

Utah Code Ann. § 36-2-17 (1943) ...................................................................................6

Utah Code Ann. § 36-6-28 (1943) ................................................................................5, 6

Utah Code Ann. § 72-3-103 ..........................................................................................5, 6

Utah Code Ann. §§ 72-3-103(3) and 72-3-105(3) ........................................................5, 6

Utah Code Ann. §72-3-108 ..............................................................................................6

Utah Code Ann. § 72-5-104(2) ........................................................................................5

Utah Code Ann. § 72-5-302 .............................................................................................5

Utah Code Ann. § 72-5-305 .............................................................................................6

Utah Code Ann. § 72-6-109(d) ........................................................................................6

Utah Enabling Act, chap. 138, 28 Stat. 107 (1894) .........................................................4

Utah. Rev. Stat., Title 25, Ch. 1, § 1114 (1898) .............................................................5

Utah. Rev. Stat., Title 25, Ch. 1, § 1115 (1898) .........................................................5, 24

**Other Authorities**

43 C.F.R. §244.55 (1939) ...................................................................................................6

43 C.F.R. § 244.58 (1963) .................................................................................................6

43 C.F.R. §§ 2822.1-2 & 2822.2-1 (1974)........................................................................7

H.R. Rep. No. 1559, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 4552 .......................21

## STATEMENT OF RELIEF REQUESTED

This consolidated lawsuit arises under the Federal Quiet Title Act, 28 U.S.C. § 2409a ("QTA") and involves rights-of-way for several hundred roads in Kane County, Utah. Plaintiffs Kane County, Utah ("Kane County" or "County") and the State of Utah ("State"), file this Motion For Partial Summary Judgment – K6000 House Rock Valley Road to confirm their existing title to the right-of-way for the road.[1] The State and County claim ownership of the right-of-way for the House Rock Valley Road pursuant to a federal statute known as R.S. 2477.[2] The undisputed material facts show that the grant of the right-of-way for the House Rock Valley Road was accepted prior to 1976, and perhaps as early as 1877. Accordingly, for the reasons set forth below, the Court should grant partial summary judgment in favor of the State and Kane County confirming their existing title to an R.S. 2477 right-of-way for the K6000 House Rock Valley Road, while reserving the issue of scope for future proceedings.

## INTRODUCTION

Congress enacted R.S. 2477 to liberally grant highway rights-of-way on public land for the use and benefit of settlers, miners, explorers and the traveling public. This congressional land grant serves a vital role in Utah where nearly 70% of the land is federal land, land ownership is checkerboarded in many areas, and R.S. 2477 is the sole legal authority for the vast majority of the public highways linking communities, businesses,

---

[1] Cause of Action No. 47, Kane County Amended Complaint (ECF 21); Cause of Action No. 47, State of Utah Amended Complaint (ECF 57).

[2] Section 8 of the Mining Law of 1866, 14 Stat. 253, later codified as Revised Statute 2477, and later as 43 U.S.C. § 932 (repealed) (hereinafter "R.S. 2477"), provides: "And be it further enacted, That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

1

homes, ranches, and spectacular public lands. For 110 years R.S. 2477 implemented the congressional intent of promoting exploration, settlement, and development of the West.  It was a simple law that operated with ease:  state and local governments, or the public, could accept the grant of a right-of-way by building and using a road.

The K6000 House Rock Valley Road is one of many historic public highways for which an R.S. 2477 right-of-way was accepted by both public use and government action. First, the public has traveled the House Rock Valley Road for over 140 years. The road appears on a United States General Land Office cadastral survey plat as early as 1877, and by 1917 a cadastral survey plat designated the K6000 House Rock Valley Road as the road from "Pahreah [Paria Townsite] to Lee's Ferry" in Arizona. The general public continues to travel the House Rock Valley Road as a public highway linking Utah and Arizona.

Second, the State and County accepted an R.S. 2477 right-of-way for the House Rock Valley Road by designating the road as a Class B General Public Highway in the 1950's. Using state road funds, Kane County has improved, installed drainage features, and regularly maintained the road for safe travel for roughly 70 years. The road provides the only access to heavily visited destinations within Kane County such as The Wave, Wire Pass, Buckskin Gulch Trailhead, and the Stateline Campground. The road further serves as the collector road from Highway 89 in Utah to Highway 89A near Jacob Lake in Arizona, and it provides the only access to the visited sections of the Vermilion Cliffs National Monument ("VCNM") in Arizona, such as White Pocket.

The creation of the Grand Staircase-Escalante National Monument ("Monument") in 1999 and the VCNM in 2000, has resulted in a drastic increase in travel on the House Rock

Valley Road. Additionally, the Bureau of Land Management ("BLM")[3] more recently expanded the parking lot and doubled the number of daily permits for visitors to The Wave.

Historically, the State and County and the broader public enjoyed quiet and peaceful use of their roads.  Kane County and the BLM worked cooperatively to meet the need for a safe and efficient transportation system.  Commencing in the 1990s, the BLM changed course and decided that it would proceed to manage roads crossing federal land as if there were no R.S. 2477 rights-of-way.  In February of 2000, the BLM adopted its first Management Plan ("Plan") for the Monument.  The Plan stated that it will be administered subject to valid existing R.S. 2477 rights-of-way, but also admits that the BLM chose to ignore whether any State or County rights-of-way existed or would be affected by the Monument Plan.

Without considering its impact, the Plan imposed the BLM's unilateral decisions affecting public transportation in the Monument, including purporting to prohibit off-highway vehicles from traveling the K6000 House Rock Valley Road and impeding the County's ability to keep the road in safe, passable condition.  For five years, the BLM chose to ignore Kane County's attempts to cooperate in the County's installation of a much-needed culvert at the Buckskin Wash Crossing. *See generally* Transcript of Evidentiary Hearing dated August 21-22, 2024 (ECF 811 – 812).

---

[3] A reference to the BLM may include, as appropriate, reference to its predecessor, the General Land Office. The General Land Office and United States Grazing Service were merged in 1946 to create the BLM. *See* https://www.blm.gov/about/history#:~:text=The%20General%20Land%20Office%20 (GLO,Service%2C%20to%20create%20the%20BLM.

The United States has taken wholly inconsistent positions regarding the State's and County's title to the right-of-way for the K6000 House Rock Valley Road, including that it does not dispute the State and County's title *and* that it does dispute title. Accordingly, partial summary judgment confirming the State and County's existing title is in the public interest.

## STATEMENT OF UNDISPUTED MATERIAL FACTS AND ISSUES

### I.  THE PARTIES, INTERESTS AND APPLICABLE LAW.

1.  The K6000 House Rock Valley Road is 9.78 miles long and is located in south-central Kane County, Utah. *See generally* K6000 House Rock Valley Road State Recordation recorded on June 18, 2008, in Book 351, Page 646, a copy of which is attached as Exhibit 1.[4] *See* Declaration of Brita Larsen, a copy of which is attached as Exhibit 29.

2.  The United States is the owner of the lands crossed by the road and right-of-way. Exhibit 1 at 3 (map) and 6 (ownership); State and County Amended Complaint (ECF 7, cons.), ¶ 11; United States' Bellwether Answer (ECF 420), ¶ 11.

3.  The State is one of the fifty sovereign states forming the United States of America, having been admitted to the Union on January 4, 1896. State and County Amended Complaint (ECF 7, cons.), ¶ 9; United States' Bellwether Answer (ECF 420), ¶ 9; Utah Enabling Act, chap. 138, 28 Stat. 107 (1894).

4.  The State complied with the QTA's 180-day advance notice provision in 28 U.S.C. § 2409a(m) by notifying the Secretary of the Department of the Interior of its intent to file

---

[4] The exhibits referenced herein are contained in the State and County Appendix of Evidence submitted pursuant to DUCivR 56-1(e).

suit. *See* Notices of Intent to Sue dated June 14, 2000 (Tr. Ex. 613), and May 17, 2011 (Tr. Ex.

614), copies of which are attached as Exhibits 2 and 3.

5.     Kane County is a local political subdivision of the State of Utah.  State and

County Amended Complaint (ECF 7, cons.), ¶ 7; United States' Bellwether Answer (ECF 420),

¶ 7; Utah Code Ann. § 17-50-302(2).

6.     The State and County own title to, and have statutory duties regarding, county

roads, public highways, and their rights-of-way within Kane County, Utah. State and County

Amended Complaint (ECF 7, cons.), ¶¶ 3, 8; United States' Bellwether Answer (ECF 420), ¶ 3,

32 – 34; s*ee also* Utah Code Ann. §§ 17-50-309, 72-3-103, 72-5-103–105, and 72-5-302.

### A.     State of Utah Highway Law.

7.     As enacted in 1898, Utah law provided:  "In all counties of this state, all roads,

streets, alleys, lanes, courts, places, trails, and bridges laid out or erected as such by the public, or

dedicated or abandoned to the public . . . are public highways."  Utah. Rev. Stat., Title 25, Ch. 1,

§ 1114 (1898).

8.     Separately, a public highway would "be deemed to have been dedicated and

abandoned to the use of the public when it has been continuously used as a public thoroughfare

for a period of ten years."  Utah. Rev. Stat., Title 25, Ch. 1, § 1115 (1898).  The ten-year user

statute remains in Utah law.  Utah Code Ann. § 72-5-104(2).

9.     By 1938, Utah law designated a class of county roads as "Class B roads, and such

roads shall be constructed and maintained by or under the authority of the county commissioners

of respective counties from funds made available for that purpose . . . ."  Utah Code Ann. § 36-6-

28 (1943).

10.     By 1938, State motor vehicle funds were distributed through the State Road

Commission to the counties to construct and maintain county Class B roads.  *Id*; *see also* Utah

Code Ann. § 36-2-17 (1943).  Class B roads continue to be roads that are constructed and

regularly maintained by the counties using appropriated State and County funds. *See* Utah Code

Ann. § 72-3-103.

11.     Under Utah law, maintenance includes installing culverts. Utah Code Ann. § 72-

6-109(d).

12.     "The state and county have joint undivided title to all rights-of-way for all county

roads."  Utah Code Ann. §§ 72-3-103(3) and 72-3-105(3).

13.     Once established, public highway rights-of-way cannot be abandoned or vacated

except by formal action, notwithstanding the passage of time or whether the servient estate is

transferred out of the public domain.  Utah Code Ann. §§ 72-5-305 and 72-3-108.

**B.      R.S. 2477 And Department Of The Interior Interpretive Regulations.**

14.     Across the years, the Department of the Interior ("DOI") adopted numerous

regulations and policies interpreting the congressional grant of R.S. 2477 rights-of-way.

15.     As of and following 1939, R.S. 2477 interpretive regulations found at 43 C.F.R.

§244.55 (1939) stated:

[R.S. 2477] becomes effective upon the construction or establishing of highways,
in accordance with the State laws, over public lands not reserved for public uses. No
application should be filed under said R.S. 2477 as no action on the part of the Federal
Government is necessary.

16.     As of and following 1963, R.S. 2477 interpretive regulations found at 43 C.F.R. §

244.58 (1963) stated:

6

Grants of [R.S. 2477 rights-of-way] become effective upon the construction or establishment of highways, in accordance with the State laws, over public lands, not reserved for public uses.  No application should be filed under R.S. 2477, as no action on the part of the Government is necessary.

17.     As of and following 1974, R.S. 2477 interpretive regulations found at 43 C.F.R.

§§ 2822.1-2 & 2822.2-1 (1974) stated:

No application should be filed under R.S. 2477, as no action on the part of the Government is necessary.… Grants of [R.S. 2477 rights-of-way] become effective upon the construction or establishment of highways, in accordance with the State laws, over public lands, not reserved for public uses.

18.     As of and following 1986, the BLM's R.S. 2477 interpretive policies stated that

the "grant became fixed when a highway was constructed and accepted as a public highway. * *

* State law specifying widths of public highways within the State shall be [used] . . . to

determine the width of the RS 2477 grant."  BLM Manual 2801, Rel. 2-229[5] (Tr. Ex. 565), a copy

of which is attached as Exhibit 4.  The quoted text is found at Exhibit 4, p. 4.

19.     "Authorized officers shall presume that pre-FLPMA roads, that evidence

construction and open use by the public and not acknowledged by the Bureau, are authorized

under RS 2477.  The presumption shall be held until the road is found not to be authorized under

RS 2477."  Exhibit 4, p. 4.

20.     "Road maintenance over several years may equal construction.  *When public funds

have been spent on the road it shall be considered a public road.*"  Exhibit 4, p. 4 (emphasis

added).

---

[5] BLM Manuals, Handbooks, and Instruction Memoranda are official agency directives that contain internal BLM policy and program direction.  *See* https://www.blm.gov/policy/manuals.

21.     "When the history of a road is unknown or questionable, its existence in a condition suitable for public use is evidence that construction sufficient to cause a grant under RS 2477 has taken place."  Exhibit 4, p. 4.

22.     On January 22, 1997, Secretary of Interior Bruce Babbitt revoked DOI's prior policies.  *See* Interim Departmental Policy dated January 22, 1997 (Tr. Ex. 608), a copy of which is attached as Exhibit 5.[6]  Under the Babbitt Policy, the DOI would not address R.S. 2477 rights-of-way absent compelling circumstances.  Exhibit 5, p. 2.

## II.     THE R.S. 2477 RIGHT-OF-WAY FOR THE K6000 HOUSE ROCK VALLEY ROAD.

### A.     Description Of The K6000 House Rock Valley Road And The Unreserved Public Lands Crossed By Its R.S. 2477 Right-of-Way.

23.     The K6000 House Rock Valley Road crosses public land owned by the United States and managed by the BLM. Exhibit 1, p. 6. The centerline course of the road is depicted by map (*id*. at 3) and is described with particularity by course and location across 62 pages of detail. *Id*., pp. 14-75. The road commences on the north at its intersection with Highway 89 and proceeds south 9.78 miles, more or less, to the Arizona state line.[7] *Id*., p. 3.

24.     The House Rock Valley Road crosses Sections 25, 35 and 36 in Township 42 South, Range 2 West, S.L.M. Exhibit 1, p. 5.

---

[6] In 2006, Secretary of Interior Gale Norton adopted a new policy that revoked the Babbitt Policy.  Secretary Norton's policy has been withdrawn and is not relevant to the issues presented in this motion.

[7] The road continues south in the State of Arizona to its intersection with Highway 89A, which provides access to popular destinations such as Lee's Ferry, Jacob Lake and the North Rim of the Grand Canyon. This lawsuit, however, involves only the section of road within the State of Utah.

25.     The BLM's Historical Index[8] for the relevant sections in this township shows that the lands were available, and not reserved for public purposes, until October 21, 1976, when R.S. 2477 was repealed by the Federal Land Policy Management Act of 1976 ("FLPMA"), Pub.L. No. 94-579 § 706(a), 90 Stat. 2743. A copy of the BLM's Historical Index for Township 42 South, Range 2 West, S.L.M., is attached as Exhibit 6.

26.     The House Rock Valley Road crosses Sections 2, 11, 14, 15, 21, 22, 28, and 33 in Township 43 South, Range 2 West, S.L.M. Exhibit 1, p. 5.

27.     The BLM's Historical Index for the relevant sections in this township shows that the lands were available, and were not reserved for public purposes, until October 21, 1976, when R.S. 2477 was repealed by FLPMA. A copy of the BLM's Historical Index for Township 43 South, Range 2 West, S.L.M., is attached as Exhibit 7.

28.     The House Rock Valley Road further crosses Sections 4 and 9 in Township 44 South, Range 2 West, S.L.M. Exhibit 1, p. 5.

29.     The BLM's Historical Index for the relevant sections in this township shows that the lands were available, and were not reserved for public purposes, until October 21, 1976, when R.S. 2477 was repealed by FLPMA. A copy of the BLM's Historical Index for Township 44 South, Range 2 West, S.L.M., is attached as Exhibit 8.

---

[8] "Much like a county recorder's tract index records documented actions affecting private land, the BLM maintains a Historical Index for each township to document BLM actions affecting the public land." *Kane Cnty. (1) v. United States*, No. 2:08-cv-00315, 2013 U.S. Dist. LEXIS 40118, at *13 (D. Utah Mar. 20, 2013). "A Historical Index contains entries showing the specific section and division of the land affected, along with the type of BLM action, such as a land reservation, patent, lease or permit." *Id*.

**B.     The State And Kane County Accepted An R.S. 2477 Right-of-Way For The K6000 House Rock Valley Road.**

30.     Historical documents prepared by the BLM confirm the historical existence of the K6000 House Rock Valley Road as a public thoroughfare. In 1876 and 1877, the BLM field-surveyed the lands crossed by the House Rock Valley Road in Sections 25, 35, and 36 of Township 42 South, Range 2 West, S.L.M., and the survey plat for the lands was accepted on June 20, 1877. A copy of the BLM's Cadastral Survey Plat for Township 42 South, Range 2 West, S.L.M., is attached as Exhibit 9.

31.     This 1877 Cadastral Survey Plat shows a road crossing Sections 25, 26, and 35, but it is shown exiting the township in Section 34, which is roughly one mile farther west than the course of the K6000 House Rock Valley Road at the southern township line. *Id.*

32.     In 1916, the BLM field-surveyed the lands crossed by the House Rock Valley Road in Sections 2, 11, 14, 15, 21, 22, 28, and 33 of Township 43 South, Range 2 West, S.L.M., and the survey plat for the lands was accepted on October 30, 1918. A copy of the BLM's Cadastral Survey Plat for Township 43 South, Range 2 West, S.L.M., is attached as Exhibit 10.

33.     The K6000 House Rock Valley Road is shown in substantially the same location as it remains today. *Id.* The road was designated as the road "Pahreah to Lee's Ferry." *Id.*

34.     In 1916 and 1917, the BLM field-surveyed the lands crossed by the House Rock Valley Road in Sections 4 and 9 of Township 44 South, Range 2 West, S.L.M., and the survey plat for the lands was accepted on October 30, 1918. A copy of the BLM's Cadastral Survey Plat for Township 44 South, Range 2 West, S.L.M., is attached as Exhibit 11.

35.     The K6000 House Rock Valley Road is shown in substantially the same location as it remains today and was designated as the road "Pahreah to Lee's Ferry." *Id.*

36.     Although not material to the instant motion, it appears that the 1877 cadastral surveyors missed a call and inaccurately plotted the course of the northernmost mile of K6000 House Rock Valley Road. The 1877 survey depicts the road as traveling straight up the face of what is a small mountain in Section 24 and leaving the House Rock Valley. *See* Exhibit 9. The 1918 survey accurately depicts the House Rock Valley Road as entering Township 43 South, Range 2 West, on the east side of Section 35, and it is located in the bottom of the House Rock Valley. *See* Exhibit 10.

37.     Prior to 1976 the United States Geological Survey ("USGS") prepared several topographic maps depicting the existence and location of the K6000 House Rock Valley Road. The USGS Buckskin Gulch, Utah-Ariz. 15 Minute topographic map dated 1954, and prepared from aerial imagery collected in 1953, shows the House Rock Valley Road in substantially the same location as its current location for the roughly six miles of road covered by the map. A copy of this map (Tr. Ex. 272) is attached as Exhibit 12.

38.     The USGS Paria Quadrangle 15 Minute topographic map dated 1954, and prepared from aerial imagery collected in 1953, shows the House Rock Valley Road in substantially the same location as its current location for the roughly four miles of road covered by the map. A copy of this map (Tr. Ex. 277) is attached as Exhibit 13.

39.     The BLM's 1969 Kanab District Recreation Map shows the House Rock Valley Road in substantially the same location as its current location. A copy of this map (Tr. Ex. 281) is attached as Exhibit 14.

**C.   The State And Kane County Formally Accepted The R.S. 2477 Right-of-Way For The House Rock Valley Road.**

40.   Kane County and the State, with the United States Department of Commerce, Bureau of Public Roads, designated the K6000 House Rock Valley Road as a Class B general highway in 1950. A copy of Kane County's General Highway Map 1950 (Tr. Ex 176) is attached as Exhibit 15. The Class B section of the road ends a little over one-mile from the Arizona border. *Id*. p. 3. *See Kane Cnty. v. United States*, No. 2:10-cv-1073, 2024 U.S. Dist. LEXIS 142312, at *16-19 (D. Utah Aug. 9, 2024) (describing Class B classification of the House Rock Valley Road).

41.   Similarly, Kane County, the State, and United States agencies designated the K6000 House Rock Valley Road as a Class B general highway in 1956. A copy of Kane County's General Highway Map 1956 (Tr. Ex 177) is attached as Exhibit 16. The Class B section of the road ends a little over one-mile from the Arizona border. *Id*. p. 3.

42.   Kane County, the State, and United States agencies designated the K6000 House Rock Valley Road as a Class B general highway in 1961. A copy of Kane County's General Highway Map 1961 (Tr. Ex 178) is attached as Exhibit 17. The Class B section of the road continues to the Arizona border. *Id*. p. 3.

43.   Kane County, the State, and United States agencies designated the K6000 House Rock Valley Road as a Class B general highway in 1965. A copy of Kane County's General Highway Map 1965 (Tr. Ex 180) is attached as Exhibit 18. The Class B section of the road continues to the Arizona border. *Id*. p. 3.

44.   Kane County, the State, and United States agencies designated the K6000 House Rock Valley Road as a Class B general highway in 1975. A copy of Kane County's General

Highway Map 1975 (Tr. Ex 181) is attached as Exhibit 19. The Class B section of the road continues to the Arizona border. *Id*. p. 3.

45.     Kane County, the State, and United States agencies designated the K6000 House Rock Valley Road as a Class B general highway in 1977. A copy of Kane County's General Highway Map 1977 (Tr. Ex 183) is attached as Exhibit 20. The Class B section of the road continues to the Arizona border. *Id*. p. 3.

46.     Kane County historically maintained the K6000 House Rock Valley Road as one of its Class B General Highways. Vane Campbell worked for Kane County's Road Department. "Except for a two-year absence from 1970 to 1972, Mr. Campbell worked for the Kane County Road Department from 1967 until 1992, first as an employee and later as the Road Department Supervisor." *Kane Cnty. v. United States I*, 2013 U.S. Dist. LEXIS 40118, at *15-16. "Based on Mr. Campbell's position [and] work records [Mr.] Campbell had significant knowledge about Kane County's road maintenance efforts." *Id*. at 16.

47.     Mr. Cambell testified that Kane County bladed the House Rock Valley Road from the time he first went there after he started and continuing until his retirement in 1992. Deposition of Vane Campbell, Vol IV, (transcript) pp. 691-693, an excerpted copy of which is attached as Exhibit 21.

**D.     The K6000 House Rock Valley Road Exists On Lands Formerly Owned By The Utah School And Institutional Trust Lands Administration.**

48.     As shown above, the K6000 House Rock Valley Road crosses land within Section 36 of Township 42 South, Range 2 West. Exhibit 9. The road also crosses land within Section 2 of Township 43 South, Range 2 West. Exhibit 10.

49.     Generally, title to sections 2, 16, 32, and 36 of each township was granted to the State of Utah as a territorial and statehood land grant and these sections are commonly referred to as Utah School and Institutional Trust Lands Administration ("SITLA") parcels. *See* Exhibit 6, p. 1 (Territorial and State grant). Title to the SITLA parcels would "fix on approval of survey; subj[ect] to prior rights." *Id*.

50.     As shown above, the Cadastral Survey Plat for Section 36, Township 42 South, Range 2 West was approved in 1877 (Exhibit 9) and the plat for Section 2, Township 43 South, Range 2 West was approved in 1918. Exhibit 10. Providing for the apparent cartographer error on the 1877 plat, *supra*, the K6000 House Rock Valley Road was shown and was in existence prior to the respective surveys.

51.     On September 18, 1996, the BLM lands crossed by the K6000 House Rock Valley Road were withdrawn and included within the boundaries of the Monument. *See* Exhibit 6, p. 9 (Monument Proclamation 6920); *see also Kane Cty. I v. United States*, No. 2:08-cv-00315, 2013 U.S. Dist. LEXIS 40118, at *114 (D. Utah Mar. 20, 2013).

52.     The Monument was established "subject to valid existing rights." Monument Management Plan of 2000 and Proclamation 6920 (Tr. Ex. 1795) ("Plan"), p. 2, a copy of which is attached as Exhibit 22.

53.     "On May 8, 1998, the United States and the State entered an Agreement to Exchange SITLA parcels (the 'Exchange Agreement')." *Kane Cnty. I*, 2013 U.S. Dist. LEXIS 40118, at *114. "It recognized that some SITLA parcels within the Monument had legal encumbrances on them. Consequently, the Exchange Agreement stated the conveyances to the

United States 'shall be subject to valid existing rights and interests outstanding in third parties.'" *Id*.; *see also* Exchange Agreement (Tr. Ex. 299), p. 4, a copy of which is attached as Exhibit 23.

54.      "On December 11, 1998, the State executed the Exchange Patent No. 19232 (the 'Exchange Patent'). The Exchange Patent also stated the SITLA parcels shall be '[s]ubject to any valid, existing easement or right of way of any kind.'" *Kane Cnty. I*, 2013 U.S. Dist. LEXIS 40118, at *115 (citation omitted). "Moreover, it stated the exchange was subject to the terms of the Exchange Agreement, 'including, without limitation, Section 4(A) (Valid Existing Rights), Section 7 (Grazing Permits) and Section 9 (Surface Use and Rights of Way).'" *Id*.; *see also* Exchange Patent (Tr. Ex. 1454), p. 42, a copy of which is attached as Exhibit 24.

55.      The two SITLA parcels crossed by the K6000 House Rock Valley Road were conveyed to the United States, subject to valid existing rights, by Exchange Patent No. 19232. Exhibit 24, p. 24 (Parcel No. 2310) and p. 26 (Parcel 2326).

56.      As shown above, the State, Kane County and agencies of the United States had designated the K6000 House Rock Valley Road as a State and Kane County general public highway for the 48 years preceding the Exchange Patent in 1998 (*see* Exhibits 15 – 20) and the United States accepted title to the former SITLA parcels "subject to any valid, existing easement or right of way of any kind." *Kane Cnty. I*, 2013 U.S. Dist. LEXIS 40118, at *115 (citation omitted).

57.      Accordingly, because the K6000 House Rock Valley Road is shown to have predated the vesting of title to the former SITLA parcels in the State of Utah, an R.S. 2477 right-of-way exists in favor of the State and Kane County. In the alternative, title to a right-of-way or

easement for the House Rock Valley Road remains vested in the State of Utah and Kane County. *See Kane Cnty. I*, 2013 U.S. Dist. LEXIS 40118, at *151-158.

**E.     The Public Accepted An R.S. 2477 Right-of-Way For The K6000 House Rock Valley Road By Public Use Prior to 1976.**

58.     Witnesses with personal knowledge of the K6000 House Rock Valley Road further confirm public use of this road as a public highway on a continuous basis for more than ten years prior to October 21, 1976, and dating back to the early 1950's. Among other testimony not included herein, Calvin J. Johnson testified that he first traveled the K6000 House Rock Valley Road in 1952 and traveled the road "hundreds" of times before 1976. Deposition of Calvin J. Johnson, Vol. II, (transcript) p. 371, an excerpted copy of which is attached as Exhibit 25.

59.     Katheryn P. Chamberlain first traveled the K6000 House Rock Valley Road in the early 1950's and traveled the road four to six times to visit acquaintances in Arizona. Deposition of Katheryn P. Chamberlain, (transcript) pp. 121-123, an excerpted copy of which is attached as Exhibit 26. She saw others traveling the road prior to 1976. *Id*. at 125.

60.     Joe Hughes testified that he traveled the K6000 House Rock Valley Road in about 1962 while sightseeing with others. Deposition of Joe Hughes, (transcript) pp. 76-77, an excerpted copy of which is attached as Exhibit 27.

**III.     THE STATE AND KANE COUNTY FILED THIS ACTION WITHIN 12 YEARS OF NOTICE OF AN ADVERSE CLAIM TO TITLE TO THE RIGHT-OF-WAY AT ISSUE.**

61.     The United States did not interfere with or dispute the existence of the State's and Kane County's R.S. 2477 right-of-way for the K6000 House Rock Valley Road until after February of 2000 when the BLM implemented the Monument Plan.

16

62.     With the Monument Plan, the BLM adopted a transportation system for the roads

in the Monument. Map 2 of the Monument Plan reflects that the BLM purports to regulate the

K6000 House Rock Valley Road and prohibit even street legal off-highway vehicles from

traveling the road. Monument Plan, Map 2 (Tr. Ex. 1083), a copy of which is attached as Exhibit

28.

63.     Despite initially representing that the Monument Plan would be enforced "subject

to valid existing rights" (Exhibit 22, (plan) p. 46), the United States refuses to recognize any R.S.

2477 rights-of-way until adjudicated and has created a dispute as title to the K6000 House Rock

Valley Road. *See generally Kane Cnty. v. United States*, No. 2:10-cv-1073, 2024 U.S. Dist.

LEXIS 142312 (D. Utah Aug. 9, 2024). The K6000 House Rock Valley Road is one of the

Jurisdictional Roads discussed therein. *Id*. at *15-16.

64.     The United States' express or implicit dispute as to title has been resolved by the

Court. *Id*.

## SUMMARY OF ARGUMENT

Adopted in 1866, R.S. 2477 remained in effect for 110 years without amendment or

limitation.  R.S. 2477 implemented the express congressional intent and public policy of

granting public highway rights-of-way wherever necessary and beneficial.  This preeminent

federal statute served the national interest in facilitating the settlement of countless cities,

private lands, businesses, and authorized the development of the West.  The public rights-of-

way granted by this statute compliment numerous public land laws, such as homestead,

grazing, and mining laws, and they provide for the public good.  The R.S. 2477 right-of-way

for the K6000 House Rock Valley Road provides access to public land and recreational sites, access to other roads, and access to private land.

As the movants, the State and Kane County bear the burden of proving acceptance of the grant of a right-of-way for the K6000 House Rock Valley Road. Moreover, state law determines whether the State and Kane County or the public accepted the grant of an R.S. 2477 right-of-way for the road.

Here, the State and Kane County formally accepted the R.S. 2477 right-of-way for the K6000 House Rock Valley Road on or before 1950 by designating the road as a Class B General Highway. As a Class B road, Kane County operated, improved and regularly maintained the K6000 House Rock Valley Road using State and Kane County funds.

Additionally, more than ten years of continuous public use prior to 1976 confirms the public's acceptance of the grant of an R.S. 2477 right-of-way. Public use of the K6000 House Rock Valley Road since at least the early 1950's further confirms acceptance of an R.S. 2477 right-of-way for the House Rock Valley Road.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the Court is to "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Knopf v. Williams*, 884 F.3d 939, 946 (10th Cir. 2018). "If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth

specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

## ARGUMENT

### I.       CONGRESS ENACTED R.S. 2477 TO LIBERALLY GRANT PUBLIC HIGHWAY RIGHTS-OF-WAY.

Congress enacted R.S. 2477 in section 8 of the Mining Law of 1866.  "And be it further enacted, That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."  Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, later codified as Revised Statute 2477.

Congress freely granted R.S. 2477 rights-of-way for 110 years until the statute was repealed on October 21, 1976, by FLPMA.  *See* 43 U.S.C. § 932.  R.S. 2477 "was a standing offer of a free right-of-way over the public domain, and as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, a highway was established." *Streeter v. Stalnaker*, 85 N.W. 47, 48 (Neb. 1901).  As expressed in one of the first reported R.S. 2477 cases, such "roads facilitate the settlement of the country, and benefit the neighborhood, and in both particulars they further a general policy of the federal government. But they also tend to increase the value of the public lands, and for this reason are favored." *Smith v. Mitchell*, 58 P. 667, 668 (Wash. 1899), citing *Flint & Pere Marquett Ry. Co. v. Gordon*, 2 N.W. 648, 653 (Mich. 1879).  R.S. 2477 "is an unequivocal grant of right of way for highways over public lands, without any limitation as to the method for their establishment." *Smith*, 58 P. at 668.  "They are usually along the most accessible routes of travel and conform to the physical conditions of the country, and, when generally traveled by the public without interruption or hindrance for a period of ten years, they must be regarded as firmly established

in law." *Id.* (applying Washington law). "It was the consistent policy of the BLM, as well as the courts, to look to common law and state law as setting the terms of acceptance of R.S. 2477 grants." *SUWA v. BLM*, 425 F.3d 735, 765 (10th Cir. 2005); *see also Id*. at 768 n.19 (applying Utah ten-year public use statute).

Despite repealing R.S. 2477, Congress preserved all valid existing rights. *See* 43 U.S.C. § 1701, note; 43 U.S.C. § 1769(a) ("Nothing in this subchapter shall have the effect of terminating any right-of-way or right-of-use heretofore issued, granted, or permitted."). Accordingly, R.S. 2477 rights-of-way established prior to October 21, 1976, still exist today, and the BLM is under a legal duty to manage public lands subject to these valid-existing rights.

## II.     THE REQUIREMENTS OF THE QUIET TITLE ACT.

### A.     The Quiet Title Act.

Kane County brings this action under the Quiet Title Act, 28 U.S.C. § 2409a. In the QTA, Congress waived the sovereign immunity of the United States to allow claimants to confirm their existing title to property in which the United States claims an interest. "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a).

The majority of the reported case law under the QTA involves fee title claims against the United States.  This lawsuit, however, involves the specific case law addressing claims to rights-of-way, which are non-possessory interests in the use of land. "A right of way is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." *SUWA*, 425 F.3d at 747. "By its express terms, R.S. §

2477 grants a right-of-way, a species of easement across the public lands of the United States."
*United States v. Garfield County*, 122 F. Supp. 2d 1201, 1242 (D. Utah 2000), citing *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988). The QTA allows the Court to quiet title to non-possessory interests in the lands of the United States, including easements and rights-of-way. "The quieting of title where the plaintiff claims an estate less than a fee simple, an easement or the title to minerals, is likewise included in the terms of the proposed statute." H.R. Rep. No. 1559, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 4552.

Initially, two conditions must be met for an action under the QTA. First, the United States must claim an interest in the property, and second, there must be a dispute as to the interest. *See Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999). Additionally, the QTA's statute of limitations is 12 years for Kane County and indeterminate for the State. *See* 28 U.S.C. § 2409a(g), (j) and (k).

The QTA's statute of limitations is no longer considered to be a jurisdictional requirement. *See Wilkins v. United States*, 598 U.S. 152, 155 (2023). Moreover, the statute of limitations analysis is unique for non-possessory interests such as a right-of-way. "An easement, of course, is different. The government's claim to ownership and control of the servient tenement can be entirely consistent with private ownership of an easement." *McFarland v. Norton*, 425 F.3d 724, 726-27 (9th Cir. 2005). "To avoid forcing landowners and the government into 'premature, and often unnecessary, suits,' [] we should not lightly assume that regulatory or supervisory actions, as opposed to those that deny the easement's existence, will trigger the statute of limitations." *Id*. at 727, quoting *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995). *See also Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005) (mild

interference with the use of an easement pursuant to the government's own property interests

will not start the statute of limitations running.).

**B.      The State And Kane County Timely Filed this Action To Resolve A Disputed Title.**

The parties have already briefed, and the Court has already resolved, the motions to

dismiss for lack of a dispute as to title and any issue implicating the QTA statute of limitation

for the K6000 House Rock Valley Road. *See, e.g., Kane Cnty. I,* 2024 U.S. Dist. LEXIS

142312, at * 60-95, 115-116. As shown in the undisputed facts and the Court's decision, the

State and Kane County timely filed suit to resolve the existing title dispute over the R.S. 2477

right-of-way for the K6000 House Rock Valley Road.

**III.      THE STATE, KANE COUNTY AND THE PUBLIC ACCEPTED THE RIGHT-OF-WAY FOR THE K6000 HOUSE ROCK VALLEY ROAD ON UNRESERVED PUBLIC LANDS PRIOR TO OCTOBER 21, 1976.**

The K6000 House Rock Valley Road has existed as a public highway since at least 1877

and was designated as the road from Paria Townsite to Lee's Ferry, AZ, in 1917. The long

history of this road makes application of R.S. 2477 very direct: a) were the public lands

unreserved public lands, b) did the State and Kane County accept the right-of-way, and c) did the

public accept the grant.

**A.      The Lands Crossed By The K6000 House Rock Valley Road Were Unreserved Public Lands.**

The K6000 House Rock Valley Road crosses lands in Townships 42, 43, and 44 South,

Range 2 West. The BLM's Historical Indices for the sections crossed by the House Rock Valley

Road confirm that the lands remained as unreserved public lands until after R.S. 2477 was

repealed in 1976. *See* Statement of Facts ("SOF"), ¶¶ 23-28; *see also* Exhibits 6, 7, and 8.

As for the short segment of road crossing the former SITLA parcels, the sections were subject to an R.S. 2477 right-of-way prior to the time that title vested in the State, or were exchanged to the United States, subject to a right-of-way or easement for the K6000 House Rock Valley Road. SOF, ¶¶ 51-56.

**B.      The State And Kane County Accepted The R.S. 2477 Right-of-Way For The K6000 House Rock Valley Road.**

The majority of the K6000 House Rock Valley Road has been a State and Kane County Class B General Highway since 1950, with the entirety of the road being so designated by 1961. SOF ¶¶ 37-46; *see also* Exhibits 15-20. As a practical matter, Kane County's Class B roads began as horse or wagon roads, but were used, upgraded, constructed and improved over time to meet Class B standards. "Class B roads [are] maintained to the level that a two-wheel drive passenger vehicle may navigate them." *Kane Cnty. I*, 2024 U.S. Dist. LEXIS 142312, at *17. Vane Campbell's testimony confirms that Kane County maintained the K6000 House Rock Valley Road as a Class B road since 1967. SOF ¶ 46.

The designation of the K6000 House Rock Valley Road as a Class B General Highway by the State, Kane County, and agencies of the United States is an express or formal acceptance of an R.S. 2477 right-of-way for the road. As it stands, the Court has held that title to the K6000 is vested in the State and Kane County. *Id.* at 9-19, 48-49; *see also* Memorandum Decision and Order Supplementing August 9, 2024, Decision (ECF 816), p. 3 (State and Kane County hold vested title to K6000 House Rock Valley Road.).

The R.S. 2477 right-of-way for the K6000 House Rock Valley Road was accepted by the State and Kane County by its pre-1976 designation and operation as a Class B General Highway.

**C.     The R.S. 2477 Right-Of-Way For The K6000 House Rock Valley Road Was Accepted By Public Use.**

In the absence of a governmental authority's acceptance, continuous public use can establish the public's acceptance of an R.S. 2477 grant.

> It has been held by numerous courts that the grant may be accepted by public use without formal action by public authorities, and that continued use of the road by the public for such length of time and under such circumstances as to clearly indicate an intention on the part of the public to accept the grant is sufficient.

*SUWA*, 425 F.3d at 771.

Pursuant to Utah law, an R.S. 2477 right-of-way may be accepted by ten years of continuous public use as a public thoroughfare. *Id*. at 769; *see also* Utah. Rev. Stat., Title 25, Ch. 1, § 1115 (1898) (a public highway would "be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years.").

The concept of "continuous" use is not a measure of frequency.  Even in the absence of direct evidence of "actual use each year," use may be continuous though not constant. *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977), citing *1 Thompson on Real Property, Specific Easement,* § 464, p. 575 (1924).  The frequency of use is "immaterial, provided it occurred as often as the claimant had occasion or chose to pass. Mere intermission is not interruption." *Id*.

Members of the public traveled the K6000 House Rock Valley Road in motor vehicles since at least the early 1950's and continue to travel the road today. Calvin Johnson testified that he traveled the road "hundreds of times" prior to 1976. SOF ¶ 57. Katheryn Chamberlin testified that she and her family traveled the road about six times prior to 1976 to visit friends

in Arizona. SOF ¶ 58. And Joe Hughes testified that he traveled the road to go sightseeing in 1962. SOF ¶ 59.

This testimonial evidence, added to the fact that the K6000 House Rock Valley Road has consistently appeared as a road on maps from 1877 through the present, confirms the public accepted an R.S. 2477 right-of-way for the House Rock Valley Road.

WHEREFORE, the State and Kane County respectfully request the Court to grant this Motion for Partial Summary Judgment quieting title to the right-of-way for the K6000 House Rock Valley Road, reserving the issue of scope for future proceedings.

DATED this 2nd day of October, 2024.

HOLLAND & HART LLP

*/s/ Shawn T. Welch*
Shawn T. Welch
Richard D. Flint
Sydney J. Sell
*Attorneys for Plaintiff Kane County, Utah*

UTAH ATTORNEY GENERAL'S OFFICE

*/s/ Kathy A.F. Davis\**
Kathy A.F. Davis
Kaitlin Tess Davis
Assistant Attorneys General
*Attorneys for Plaintiff State of Utah*

*\* Signed with permission given to filing counsel*

21670024_v2

25