Kathy A.F. Davis (#4022)
K. Tess Davis (#15831)
ASSISTANT ATTORNEYS GENERAL
Sean D. Reyes (#7969)
UTAH ATTORNEY GENERAL
1594 W North Temple, 3rd Floor
Salt Lake City, Utah 84116
kathydavis@agutah.gov
kaitlindavis@agutah.gov
Telephone: (801) 537-9801

*Attorneys for Plaintiffs State of Utah and
Garfield County, Utah*

---

## IN THE UNITED STATES JUDICIAL DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KANE COUNTY, UTAH (2), (3) and (4), a Utah political subdivision; and STATE OF UTAH, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant, <br><br> and <br><br> SOUTHERN UTAH WILDERNESS ALLIANCE, ET AL., <br><br> Defendant-Intervenors. | **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT G9000 HOLE IN THE ROCK ROAD** <br><br> **Case No. 2:10-cv-01073** <br><br> (consolidated with 2:11-cv-1031, 2:12-cv-476) <br><br> Judge: Hon. Clark Waddoups |

# Table of Contents

TABLE OF AUTHORITIES ................................................................................. iv

STATEMENT OF RELIEF REQUESTED ............................................................1

INTRODUCTION ...................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS AND ISSUES ...................3

   I.   THE PARTIES, INTERESTS AND APPLICABLE LAW. ..............................3

      A. State of Utah Highway Law. ...............................................................4

      B. R.S. 2477 And Department Of The Interior Interpretive Regulations. ...........6

   II.  THE R.S. 2477 RIGHT-OF-WAY FOR THE G9000 HOLE IN THE ROCK
       ROAD. ..........................................................................................................8

      A. Description Of The G9000 Hole In The Rock Road And The Lands Crossed By
        Its R.S. 2477 Right-of-Way. ...............................................................8

      B. The State And Garfield County's Acceptance Of The R.S. 2477 Right-of-Way
        For The G9000 Hole In The Rock Road. .............................................9

      C. The State And County's Formal Acceptance Of The R.S. 2477 Right-of-Way
        For The Hole In The Rock Road. .........................................................12

      D. Lands Formerly Owned By The Utah School And Institutional Trust Lands
        Administration. ...................................................................................14

      E. Acceptance of the G9000 Hole in the Rock Road R.S. 2477 Right-of-Way By
        Public Use Prior to 1976. ....................................................................16

   III. THE STATE AND GARFIELD COUNTY FILED THIS ACTION WITHIN 12
       YEARS OF NOTICE OF AN ADVERSE CLAIM TO TITLE TO THE RIGHT-
       OF-WAY AT ISSUE. ..................................................................................17

SUMMARY OF ARGUMENT ..............................................................................18

LEGAL STANDARD ...........................................................................................19

   I.   CONGRESS ENACTED R.S. 2477 TO LIBERALLY GRANT PUBLIC
       HIGHWAY RIGHTS-OF-WAY. ..................................................................19

II. THE REQUIREMENTS OF THE QUIET TITLE ACT. ..................................................20

    A. The Quiet Title Act. ........................................................................................20

    B. The State and Garfield County Timely Filed this Action To Resolve A Disputed
       Title. ...............................................................................................................22

III. GARFIELD COUNTY AND THE PUBLIC ACCEPTED THE RIGHTS-OF-
     WAY AT ISSUE ON UNRESERVED PUBLIC LANDS PRIOR TO OCTOBER
     21, 1976. ..............................................................................................................22

    A. The Lands Crossed By The G9000 Hole in the Rock Road Were Unreserved
       Public Lands. ...................................................................................................23

    B. Garfield County Accepted The R.S. 2477 Right-of-Way For The G9000 Hole In
       The Rock Road. ...............................................................................................23

    C. The R.S. 2477 Right-Of-Way For The G9000 Hole in the Rock Road Was
       Accepted By Public Use. .................................................................................24

## Table of Authorities

**Cases**

*Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998)....................................................... 19

*Flint & Pere Marquett Ry. Co. v. Gordon*, 2 N.W. 648 (Mich. 1879) ......................................... 20

*Kane Cnty. I*, 2013 U.S. Dist. LEXIS 40118 ..............................................................8, 15-16

*Kane Cnty. I,* 2024 U.S. Dist. LEXIS 142312 ................................................................. 17, 22-23

*Kane Cnty. v. United States*, No. 2:10-cv-1073 ................................................................. 17

*Knopf v. Williams*, 884 F.3d 939 (10th Cir. 2018)............................................................. 19

*Leisnoi, Inc. v. United States*, 170 F.3d 1188 (9th Cir. 1999)....................................................... 21

*McFarland v. Norton*, 425 F.3d 724 (9th Cir. 2005) ................................................................. 22

*Michel v. United States*, 65 F.3d 130 (9th Cir. 1995) ................................................................. 22

*Richards v. Pines Ranch, Inc.*, 559 P.2d 948 (Utah 1977) ......................................................... 25

*Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988) ................................................................. 21

*Skranak v. Castenada*, 425 F.3d 1213 (9th Cir. 2005) ................................................................. 22

*Smith v. Mitchell*, 58 P. 667 (Wash. 1899) ........................................................................ 20

*Streeter v. Stalnaker*, 85 N.W. 47 (Neb. 1901)................................................................... 19

*SUWA v. BLM*, 425 F.3d 735 (10th Cir. 2005) ..............................................................20-21, 24

*United States v. Garfield County*, 122 F. Supp. 2d 1201 (D. Utah 2000) ................................... 21

*Wilkins v. United States*, 598 U.S. 152 (2023)................................................................... 21

**State Statutes**

Utah Code Ann. § 17............................................................................................ 4

Utah Code Ann. § 36 ............................................................................................ 5

Utah Code Ann. § 72 ............................................................................................... 5

Utah. Rev. Stat., Title 25, Ch. 1, § 1114 ........................................................... 5, 24

**Federal Statutes**

28 U.S.C. § 2409 ........................................................................................... passim

43 C.F.R. § 2822 .................................................................................................. 6

43 C.F.R. § 244 ..................................................................................................... 6

43 U.S.C. § 1701 ................................................................................................. 20

43 U.S.C. § 1769 ................................................................................................. 20

43 U.S.C. § 932 ............................................................................................... 1, 19

Federal Land Policy & Management Act ........................................................ 7-9, 19

R.S. 2477 ...................................................................................................... passim

Utah Enabling Act .............................................................................................. 4

## STATEMENT OF RELIEF REQUESTED

This consolidated lawsuit arises under the federal Quiet Title Act, 28 U.S.C. § 2409a ("QTA") and involves rights-of-way for several hundred roads in Kane and Garfield County, Utah. Plaintiffs Garfield County, Utah ("Garfield County" or "County") and the State of Utah ("State"), file this Motion For Partial Summary Judgment – G9000[1] Hole in the Rock Road to confirm their existing title to the right-of-way for the road.[2] The State and County claim ownership of the right-of-way for the Hole in the Rock Road pursuant to a federal statute known as R.S. 2477.[3] The undisputed material facts show that the grant of the right-of-way for the Hole in the Rock Road was accepted prior to 1976, and likely as early as 1879. Accordingly, for the reasons set forth below, the Court should grant partial summary judgment in favor of the State and Garfield County confirming their existing title to an R.S. 2477 right-of-way for the G9000 Hole in the Rock Road, while reserving the issue of scope for future proceedings.

## INTRODUCTION

Congress enacted R.S. 2477 to liberally grant highway rights-of-way on public land for the use and benefit of settlers, miners, explorers and the traveling public. This congressional land grant serves a vital role in Utah where nearly seventy percent of the land is federal land, land ownership is checkerboarded in many areas, and R.S. 2477 is the sole legal

---

[1] Formerly County Road 1002; SGID road identification number RD090108.

[2] Cause of Action No. 2, State of Utah and Garfield County Complaint (ECF 2), 2:11-cv-1045.

[3] Section 8 of the Mining Law of 1866, 14 Stat. 253, later codified as Revised Statute 2477, and later as 43 U.S.C. § 932 (repealed) (hereinafter "R.S. 2477"), provides: "And be it further enacted, That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

authority for the vast majority of the public highways linking communities, businesses, homes, ranches, and spectacular public lands. For 110 years R.S. 2477 implemented the congressional intent of promoting exploration, settlement, and development of the West.  It was a simple law that operated with ease:  state and local governments, or the public, could accept the grant of a right-of-way by building and using a road.

The G9000 Hole in the Rock Road is one of many historic public highways for which an R.S. 2477 right-of-way was accepted by both public use and government action. First, the public has traveled the Hole in the Rock Road for over 140 years. The road appears on a United States General Land Office cadastral survey plat as early as 1896, and by 1915 a cadastral survey plat designated the G9000 Hole in the Rock Road as the Main Desert Road "to Escalante". The general public continues to travel the Hole in the Rock Road as a public highway linking the town of Escalante and Lake Powell.

Second, the State and County accepted an R.S. 2477 right-of-way for the Hole in the Rock Road by designating the road as a Class B General Public Highway in the 1930s. Using state road funds, Garfield County has improved and regularly maintained the road for safe travel for nearly 90 years. The road provides access to heavily visited destinations within Garfield and Kane Counties such as Dance Hall Rock and the Hole-in-the-Rock historical marker at Lake Powell.

The creation of the Grand Staircase-Escalante National Monument ("Monument") in 1996, as well as expanded facilities at Dance Hall Rock in Kane County and improved facilities in Devils Rock Garden at the Garfield/Kane border, have resulted in a dramatic increase in travel on the Hole in the Rock Road.

2

Historically, the State and County and the broader public enjoyed quiet and peaceful use of their roads.  Garfield County and the BLM worked cooperatively to meet the need for a safe and efficient transportation system.  Commencing in the 1990s, the BLM changed course and decided that it would proceed to manage roads crossing federal land as if there were no R.S. 2477 rights-of-way.  In February of 2000, the BLM adopted its first Management Plan ("Plan") for the Monument.  The Plan stated that it will be administered subject to valid existing R.S. 2477 rights-of-way, but also admits that the BLM chose to ignore whether any State or County rights-of-way existed or would be affected by the Monument Plan.

Without considering its impact, the Plan imposed the BLM's unilateral decisions affecting public transportation in the Monument, including purporting to prohibit off-highway vehicles from traveling the G9000 Hole in the Rock Road and impeding the County's ability to keep the road in safe, passable condition.

The United States has taken wholly inconsistent positions regarding the State's and County's title to the right-of-way for the G9000 Hole in the Rock Road, including that it does not dispute the State and County's title *and* that it does dispute title. Accordingly, partial summary judgment confirming the State and County's existing title is in the public interest.

### STATEMENT OF UNDISPUTED MATERIAL FACTS AND ISSUES

**I.**       **THE PARTIES, INTERESTS AND APPLICABLE LAW.**

1.       The G9000 Hole in the Rock Road is 16.58 miles long on the Garfield County side and is located in south-central Garfield County, Utah. *See generally* G9000 Hole in the Rock Road State Recordation recorded on May 12, 2008 in Book 430, Page 614, a copy of which

is attached as Exhibit 1.[4] *See* Declaration of Michelle Baragona, a copy of which is attached as Exhibit 36.

2.     The United States is the owner of the lands crossed by the road and right-of-way. Exhibit 1 at 3 (map) and 6 (ownership).

3.     The State is one of the fifty sovereign states forming the United States of America, having been admitted to the Union on January 4, 1896. *See* Utah Enabling Act, chap. 138, 28 Stat. 107 (1894).

4.     The State complied with the QTA's 180-day advance notice provision in 28 U.S.C. § 2409a(m) by notifying the Secretary of the Department of the Interior of its intent to file suit. *See* Notices of Intent to Sue dated June 14, 2000 (Tr. Ex. 613) and December 12, 2011, copies of which are attached as Exhibits 2 and 3.

5.     Garfield County is a local political subdivision of the State of Utah.  *See* Utah Code Ann. § 17-50-302(2).

6.     The State and County own title to, and have statutory duties regarding, county roads, public highways, and their rights-of-way within Garfield County, Utah. *See* Utah Code Ann. §§ 17-50-309, 72-3-103, 72-5-103–105, and 72-5-302.

**A. State of Utah Highway Law.**

7.     As enacted in 1898, Utah law provided:  "In all counties of this state, all roads, streets, alleys, lanes, courts, places, trails, and bridges laid out or erected as such by the public, or

---

[4] The exhibits referenced herein are contained in the State and County Appendix of Evidence submitted pursuant to DUCivR 56-1(e).

dedicated or abandoned to the public . . . are public highways."  Utah. Rev. Stat., Title 25, Ch. 1, § 1114 (1898).

8. Separately, a public highway would "be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."  Utah. Rev. Stat., Title 25, Ch. 1, § 1115 (1898).  The ten-year user statute remains in Utah law.  Utah Code Ann. § 72-5-104(2).

9. By 1938, Utah law designated a class of county roads as "Class B roads, and such roads shall be constructed and maintained by or under the authority of the county commissioners of respective counties from funds made available for that purpose . . . ."  Utah Code Ann. § 36-6-28 (1943).

10. By 1938, State motor vehicle funds were distributed through the State Road Commission to the counties to construct and maintain county Class B roads.  *Id*.; *see also* Utah Code Ann. § 36-2-17 (1943).  Class B roads continue to be roads that are constructed and regularly maintained by the counties using appropriated State and County funds. *See* Utah Code Ann. § 72-3-103.

11. "The state and county have joint undivided title to all rights-of-way for all county roads."  Utah Code Ann. §§ 72-3-103(3) and 72-3-105(3).

12. Once established, public highway rights-of-way cannot be abandoned or vacated except by formal action, notwithstanding the passage of time or whether the servient estate is transferred out of the public domain.  Utah Code Ann. §§ 72-5-305 and 72-3-108.

**B.  R.S. 2477 And Department Of The Interior Interpretive Regulations.**

13.    Across the years, the Department of the Interior ("DOI") adopted numerous

regulations and policies interpreting the congressional grant of R.S. 2477 rights-of-way.

14.    As of and following 1939, R.S. 2477 interpretive regulations found at 43 C.F.R.

§244.55 (1939) stated:

[R.S. 2477] becomes effective upon the construction or establishing of highways,
in accordance with the State laws, over public lands not reserved for public uses. No
application should be filed under said R.S. 2477 as no action on the part of the Federal
Government is necessary.

15.    As of and following 1963, R.S. 2477 interpretive regulations found at 43 C.F.R. §

244.58 (1963) stated:

Grants of [R.S. 2477 rights-of-way] become effective upon the construction or
establishment of highways, in accordance with the State laws, over public lands, not
reserved for public uses.  No application should be filed under R.S. 2477, as no action
on the part of the Government is necessary.

16.    As of and following 1974, R.S. 2477 interpretive regulations found at 43 C.F.R.

§§ 2822.1-2 & 2822.2-1 (1974) stated:

No application should be filed under R.S. 2477, as no action on the part of the
Government is necessary .… Grants of [R.S. 2477 rights-of-way] become effective
upon the construction or establishment of highways, in accordance with the State laws,
over public lands, not reserved for public uses.

17.    As of and following 1986, the BLM's R.S. 2477 interpretive policies stated that

the "grant became fixed when a highway was constructed and accepted as a public highway. * *

* State law specifying widths of public highways within the State shall be [used] . . . to

determine the width of the RS 2477 grant." BLM Manual 2801, Rel. 2-229[5] (Tr. Ex. 565), a copy

of which is attached as Exhibit 4.  The quoted text is found at Exhibit 4, p. 4.

18.      "Authorized officers shall presume that pre-FLPMA roads, that evidence

construction and open use by the public and not acknowledged by the Bureau, are authorized

under RS 2477.  The presumption shall be held until the road is found not to be authorized under

RS 2477." Exhibit 4, p. 4.

19.      "Road maintenance over several years may equal construction.  *When public funds*

*have been spent on the road it shall be considered a public road.*"  Exhibit 4, p. 4 (emphasis

added).

20.      "When the history of a road is unknown or questionable, its existence in a

condition suitable for public use is evidence that construction sufficient to cause a grant under RS

2477 has taken place."  Exhibit 4, p. 4.

21.      On January 22, 1997, Secretary of Interior Bruce Babbitt revoked DOI's prior

policies.  *See* Interim Departmental Policy dated January 22, 1997 (Tr. Ex. 608), a copy of which

is attached as Exhibit 5.[6]  Under the Babbitt Policy, the DOI would not address R.S. 2477 rights-

of-way absent compelling circumstances.  Exhibit 5, p. 2.

---

[5] BLM Manuals, Handbooks, and Instruction Memoranda are official agency
directives that contain internal BLM policy and program direction.  *See*
https://www.blm.gov/policy/manuals.

[6] In 2006, Secretary of Interior Gale Norton adopted a new policy that revoked the
Babbitt Policy.  Secretary Norton's policy has been withdrawn and is not relevant to the
issues presented in this motion.

**II.      THE R.S. 2477 RIGHT-OF-WAY FOR THE G9000 HOLE IN THE ROCK ROAD.**

   **A.  Description Of The G9000 Hole In The Rock Road And The Lands Crossed By Its R.S. 2477 Right-of-Way.**

22.      The G9000 Hole in the Rock Road crosses public land owned by the United States and managed by the BLM. Exhibit 1, p. 6. The centerline course of the road is depicted by map (*id.* at 3) and is described with particularity by course and location across 23 pages of detail. *Id.*, pp. 14-36. The road commences on the north at its intersection with Highway 12 and proceeds south 16.57 miles, more or less, to the Kane County border.[7] *Id.* at 3.

23.      The Hole in the Rock Road crosses Section 36 in Township 35 South, Range 3 East, S.L.M. Exhibit 1, p. 5.

24.      The BLM's Historical Index[8] for the relevant sections in this township shows that the lands were available, and not reserved for public purposes, until October 21, 1976 when R.S. 2477 was repealed by the Federal Land Policy & Management Act of 1976 ("FLPMA"), Pub.L. No. 94-579 § 706(a), 90 Stat. 2743. A copy of the BLM's Historical Index for Township 35 South, Range 3 East, S.L.M., is attached as Exhibit 6.

_____

[7] The road continues south through Kane County until its terminus at the Colorado River/Lake Powell. This motion, however, involves only the section of road within Garfield County.

[8] "Much like a county recorder's tract index records documented actions affecting private land, the BLM maintains a Historical Index for each township to document BLM actions affecting the public land." *Kane Cnty. (1) v. United States*, No. 2:08-cv-00315, 2013 U.S. Dist. LEXIS 40118, at *13 (D. Utah Mar. 20, 2013). "A Historical Index contains entries showing the specific section and division of the land affected, along with the type of BLM action, such as a land reservation, patent, lease or permit." *Id.*

25.     The Hole in the Rock Road crosses Sections 6, 7, 8, 16, 17, 21, 22, 27, 34, and 35 in Township 36 South, Range 4 East, S.L.M. Exhibit 1, p. 5.

26.     The BLM's Historical Index for the relevant sections in this township shows that the lands were available, and were not reserved for public purposes, until October 21, 1976 when R.S. 2477 was repealed by FLPMA. A copy of the BLM's Historical Index for Township 36 South, Range 4 East, S.L.M., is attached as Exhibit 7.

27.     The Hole in the Rock Road further crosses Sections 2, 11, 12 and 13 in Township 37 South, Range 4 East, S.L.M. Exhibit 1, p. 5.

28.     The BLM's Historical Index for the relevant sections in this township shows that the lands were available, and were not reserved for public purposes, until October 21, 1976 when R.S. 2477 was repealed by FLPMA. A copy of the BLM's Historical Index for Township 37 South, Range 4 East, S.L.M., is attached as Exhibit 8.

29.     The Hole in the Rock Road further crosses Sections 18, 19, 29, 30, 32, and 33 in Township 37 South, Range 5 East, S.L.M. Exhibit 1, p. 5.

30.     The BLM's Historical Index for the relevant sections in this township shows that the lands were available, and were not reserved for public purposes, until October 21, 1976 when R.S. 2477 was repealed by FLPMA. A copy of the BLM's Historical Index for Township 37 South, Range 5 East, S.L.M., is attached as Exhibit 9.

**B.  The State And Garfield County's Acceptance Of The R.S. 2477 Right-of-Way For The G9000 Hole In The Rock Road.**

31.     Historical documents prepared by the BLM confirm the historical existence of the G9000 Hole in the Rock Road as a public thoroughfare. In 1893 and 1894, the U.S. Surveyor General's Office field-surveyed the lands crossed by Hole in the Rock Road in Section 36 of

Township 35 South, Range 3 East, S.L.M., and the survey plat for the lands was accepted on November 4, 1896. A copy of the BLM's Cadastral Survey Plat for Township 35 South, Range 3 East, S.L.M., is attached as Exhibit 10.

32.     The G9000 Hole in the Rock Road is shown in more or less the same location as it remains today. *Id.*

33.     In 1893 and 1913, the U.S. Surveyor General's Office field-surveyed the lands crossed by Hole in the Rock Road in Sections 6, 7, 8, 16, 17, 21, 22, 27, and 34 of Township 36 South, Range 4 East, S.L.M., and the survey plat for the lands was accepted on June 30, 1915. A copy of the BLM's Cadastral Survey Plat for Township 36 South, Range 4 East, S.L.M., is attached as Exhibit 11.

34.     The G9000 Hole in the Rock Road is shown in more or less the same location as it remains today. *Id.* The road was designated as the road to "Escalante" and "Fifty-Mile." *Id.*

35.     In 1913, the U.S. Surveyor General's Office field-surveyed the lands crossed by the Hole in the Rock Road in Sections 2, 3, 11, 12 and 13 of Township 37 South, Range 4 East, S.L.M., and the survey plat for the lands was accepted on June 30, 1915. A copy of the BLM's Cadastral Survey Plat for Township 37 South, Range 4 East, S.L.M., is attached as Exhibit 12.

36.     The G9000 Hole in the Rock Road is shown in substantially the same location as it remains today and was designated as the "Main Desert Road." *Id.*

37.     In 1923, the U.S. Surveyor General's Office field-surveyed the southern boundary of Township 37 South, Range 5 East, S.L.M., and the survey plat for the lands was accepted on May 20, 1924. A copy of the BLM's Cadastral Survey Plat for Township 37 South, Range 5 East, S.L.M., is attached as Exhibit 13.

10

38.   The G9000 Hole in the Rock Road is indicated in more or less the same location as it remains today. *Id*. The road was identified as "To Escalante" and "To Hole in the Rocks." *Id*.

39.   In 1954, the BLM conducted a dependent resurvey of portions of Township 37 South, Range 5 East, S.L.M., and the survey plat for the lands was accepted on June 6, 1955. A copy of the BLM's Cadastral Survey Plat for Township 37 South, Range 5 East, S.L.M., is attached as Exhibit 14.

40.   The G9000 Hole in the Rock Road is indicated in more or less the same location as it remains today. *Id*. The road was identified as "To Hole in the Rock." *Id*.

41.   Prior to 1976 the United States prepared several topographic maps depicting the existence and location of the G9000 Hole in the Rock Road. The United States Army Corps of Engineers, Army Map Service, Escalante, Utah topographic map dated 1956, and prepared from United States Geological Survey ("USGS") maps and surveys in 1951-53, shows the Hole in the Rock Road in substantially the same location as its current location for the entirety of the road. A copy of this map is attached as Exhibit 15.

42.   The USGS Dave Canyon, Utah Quadrangle 7.5 Minute topographic map dated 1964, and prepared from aerial imagery collected in 1958, shows the Hole in the Rock Road in substantially the same location as its current location for the roughly three miles of road covered by the map. A copy of this map is attached as Exhibit 16.

43.   The USGS Tenmile Flat, Utah Quadrangle 7.5 Minute topographic map dated 1964, and prepared from aerial imagery collected in 1958, shows the Hole in the Rock Road in

substantially the same location as its current location for the roughly six miles of road covered by the map. A copy of this map is attached as Exhibit 17.

44.     The USGS Sheep Flat, Utah Quadrangle 7.5 Minute topographic map dated 1964, and prepared from aerial imagery collected in 1958, shows the Hole in the Rock Road in substantially the same location as its current location for the roughly six miles of road covered by the map. A copy of this map is attached as Exhibit 18.

45.     The USGS Sunset Flat, Utah Quadrangle 7.5 Minute topographic map dated 1964, and prepared from aerial imagery collected in 1958, shows the Hole in the Rock Road in substantially the same location as its current location for the roughly one mile of road covered by the map. A copy of this map is attached as Exhibit 19.

46.     The BLM's 1969 Kanab District Recreation Map shows the Hole in the Rock Road in substantially the same location as its current location. A copy of this map (Tr. Ex. 281) is attached as Exhibit 20.

**C. The State And County's Formal Acceptance Of The R.S. 2477 Right-of-Way For The Hole In The Rock Road.**

47.     Garfield County and the State, with the United States Department of Commerce, Bureau of Public Roads, designated the G9000 Hole in the Rock Road as a Class B general highway in 1937. A copy of Garfield County's General Highway Map 1937 is attached as Exhibit 21.

48.     Similarly, Garfield County, the State, and United States agencies designated the G9000 Hole in the Rock Road as a Class B general highway in 1951. A copy of Garfield County's General Highway Map 1951 is attached as Exhibit 22.

49.     Garfield County, the State, and United States agencies designated the G9000 Hole in the Rock Road as a Class B general highway in 1970. A copy of Garfield County's General Highway Map 1970 is attached as Exhibit 23.

50.     Garfield County, the State, and United States agencies designated the G9000 Hole in the Rock Road as a Class B general highway in 1974. A copy of Garfield County's General Highway Map 1974 is attached as Exhibit 24.

51.     Garfield County historically maintained the G9000 Hole in the Rock Road as one of its Class B General Highways. *See* Meeting Minutes of Garfield County Commission (Apr. 16, 1962) (allocating funding to grade and gravel the "Escalante Desert Road"), a copy of which is attached as Exhibit 25.

52.     Norman Christensen worked for Garfield County's Road Department in the late 1950s and early 1960s. Deposition of Norman Spencer Christensen, (transcript) pp. 47-49, an excerpted copy of which is attached as Exhibit 26.

53.     Mr. Christensen testified that he bladed and did other road work on the entire length of the G9000 Hole in the Rock Road during his employment with Garfield County Roads. *Id*.

54.     Mr. Mac Barney, who was a seasonal employee of the Garfield County Road Department in 1965, stated that he performed maintenance work on the entire length of the G9000 Hole in the Rock Road during his tenure with the county road crew. *See* Declaration of Mac C. Barney, a copy of which is attached as Exhibit 27.

55.     Mr. Blaine Porter, who was a seasonal employee of the Garfield County Road Department in 1975, stated that he performed maintenance work on the entire length of the

G9000 Hole in the Rock Road during his tenure with the county road crew. *See* Declaration of

Blaine Porter, a copy of which is attached as Exhibit 28.

### D.  Lands Formerly Owned By The Utah School And Institutional Trust Lands Administration.

56.     As shown above, the G9000 Hole in the Rock Road crosses land within Section

36 of Township 35 South, Range 3 East. Exhibit 10. The road also crosses land within Section 16

of Township 36 South, Range 4 East. Exhibit 11. The G9000 Hole in the Rock Road crosses land

within Section 2 of Township 37 South, Range 4 East. Exhibit 12. The road also crosses land

within Section 32 of Township 37 South, Range 5 East. Exhibit 14.

57.     Generally, title to sections 2, 16, 32, and 36 of each township was granted to the

State of Utah as a territorial and statehood land grant and these sections are commonly referred

to as Utah School and Institutional Trust Lands Administration ("SITLA") parcels. *See* Exhibit

6, p. 1 (Territorial and State grant). Title to the SITLA parcels would "fix on approval of survey;

subj[ect] to prior rights." *Id*.

58.     As shown above, the Cadastral Survey Plat for Section 36, Township 35 South,

Range 3 East was approved in 1896. Exhibit 10. The plat for Section 16, Township 36 South,

Range 4 East was approved in 1915. Exhibit 11. The Cadastral Survey Plat for Section 2,

Township 37 South, Range 4 East was approved in 1915. Exhibit 12. The plat for Section 32,

Township 37 South, Range 5 East was approved in 1955. Exhibit 14.

59.     On September 18, 1996, the BLM lands crossed by the G9000 Hole in the Rock

Road were withdrawn and included within the boundaries of the Monument. *See* Exhibit 6, p. 9

(Monument Proclamation 6920).

14

60.     The Monument was established "subject to valid existing rights." Monument

Management Plan of 2000 and Proclamation 6920 (Tr. Ex. 1795) ("Plan"), p. 2, a copy of which

is attached as Exhibit 29.

61.     "On May 8, 1998, the United States and the State entered an Agreement to

Exchange SITLA parcels (the 'Exchange Agreement')." *Kane Cnty. I*, 2013 U.S. Dist. LEXIS

40118, at *114. "It recognized that some SITLA parcels within the Monument had legal

encumbrances on them. Consequently, the Exchange Agreement stated the conveyances to the

United States 'shall be subject to valid existing rights and interests outstanding in third parties.'"

*Id.*; *see also* Exchange Agreement (Tr. Ex. 299), p. 4, a copy of which is attached as Exhibit 30.

62.     "On December 11, 1998, the State executed the Exchange Patent No. 19231 (the

'Exchange Patent'). The Exchange Patent also stated the SITLA parcels shall be '[s]ubject to any

valid, existing easement or right of way of any kind.'" *Kane Cnty. I*, 2013 U.S. Dist. LEXIS

40118, at *115 (citation omitted). "Moreover, it stated the exchange was subject to the terms of

the Exchange Agreement, 'including, without limitation, Section 4(A) (Valid Existing Rights),

Section 7 (Grazing Permits) and Section 9 (Surface Use and Rights of Way).'" *Id.*; *see also*

Exchange Patent, p. 23, a copy of which is attached as Exhibit 31.

63.     The four SITLA parcels crossed by the G9000 Hole in the Rock Road were

conveyed to the United States, subject to valid existing rights, by Exchange Patent No. 19231.

Exhibit 31, p. 5 (Parcel No. 2034), p. 8 (Parcel No. 2060), p. 10 (Parcel No. 2083), and p. 11

(Parcel No. 2089).

64.     As shown above, the State, Garfield County and agencies of the United States had

designated the G9000 Hole in the Rock Road as a State and Garfield County general public

highway for the 60 years preceding the Exchange Patent in 1998 (*see* Exhibits 21-24) and the United States accepted title to the former SITLA parcels "subject to any valid, existing easement or right of way of any kind." *Kane Cnty. I*, 2013 U.S. Dist. LEXIS 40118, at *115 (citation omitted).

65.     Accordingly, because the G9000 Hole in the Rock Road is shown to have pre-dated the vesting of title to the former SITLA parcels in the State of Utah, an R.S. 2477 right-of-way exists in favor of the State and Garfield County. In the alternative, title to a right-of-way or easement for the Hole in the Rock Road remains vested in the State of Utah and Garfield County. *See Kane Cnty. I*, 2013 U.S. Dist. LEXIS 40118, at *151-158.

### E. Acceptance of the G9000 Hole in the Rock Road R.S. 2477 Right-of-Way By Public Use Prior to 1976.

66.     Witnesses with personal knowledge of the G9000 Hole in the Rock Road further confirm public use of this road as a public highway on a continuous basis for more than ten years prior to October 21, 1976 and dating back to the 1940s. Among other testimony not included herein, Arnold Alvey testified that he began traveling the G9000 Hole in the Rock Road on a seasonal basis in the 1940s, including daily for about 80 days during 1947-1948 in conjunction with the making of a film. Deposition of Arnold Merrill Alvey, (transcript) pp. 82-92, an excerpted copy of which is attached as Exhibit 32.

67.     Dell LeFevre first traveled the G9000 Hole in the Rock Road in 1956 or 1957. Deposition of Dell LeFevre, (transcript) pp. 155-161, an excerpted copy of which is attached as Exhibit 33. Mr. LeFevre testified that he traveled the entire length of the road in a pickup truck with his father, and he also testified that he traveled the road with a friend to go fishing in 1957 or 1958. *Id*. Mr. LeFevre further testified that he traveled the G9000 every day during the

16

summer of 1959, from approximately May to September, in connection with his work on a seismograph crew; he also used it in the 1970s to check cows. *Id.*

68.     Sam Spencer first traveled the G9000 Hole in the Rock Road in 1957. Deposition of Thurman Samuel Spencer, (transcript) pp. 52-54, an excerpted copy of which is attached as Exhibit 34. Mr. Spencer testified that he had traveled the G9000 Hole in the Rock Road for two weeks every spring, and periodically in the winter, from the age of five until the date of his deposition in 2017. *Id.* He saw others traveling the road prior to 1976. *Id.*

## III.     THE STATE AND GARFIELD COUNTY FILED THIS ACTION WITHIN 12 YEARS OF NOTICE OF AN ADVERSE CLAIM TO TITLE TO THE RIGHT-OF-WAY AT ISSUE.

69.     The United States did not interfere with or dispute the existence of the State's and Garfield County's R.S. 2477 right-of-way for the G9000 Hole in the Rock Road until after February of 2000, when the BLM implemented the Monument Plan.

70.     With the Monument Plan, the BLM adopted a transportation system for the roads in the Monument. Map 2 of the Monument Plan reflects that the BLM purports to regulate the G9000 Hole in the Rock Road and prohibit even street legal off-highway vehicles from traveling the road. Monument Plan, Map 2 (Tr. Ex. 1083), a copy of which is attached as Exhibit 35.

71.     Despite initially representing that the Monument Plan would be enforced "subject to valid existing rights" (Exhibit 29, (plan) p. 46), the United States refuses to recognize any R.S. 2477 rights-of-way until adjudicated and has created a dispute as to title to the G9000 Hole in the Rock Road. *See generally Kane Cnty. v. United States*, No. 2:10-cv-1073, 2024 U.S. Dist. LEXIS 142312 (D. Utah Aug. 9, 2024).

72.     The United States' express or implicit dispute as to title has been resolved by the Court. *Id*.

## SUMMARY OF ARGUMENT

Adopted in 1866, R.S. 2477 remained in effect for 110 years without amendment or limitation.  R.S. 2477 implemented the express congressional intent and public policy of granting public highway rights-of-way wherever necessary and beneficial.  This preeminent federal statute served the national interest in facilitating the settlement of countless cities, private lands, and businesses, and authorized the development of the West.  The public rights-of-way granted by this statute complement numerous public land laws, such as homestead, grazing, and mining laws, and they provide for the public good.  The R.S. 2477 right-of-way for the G9000 Hole in the Rock Road provides access to public land and recreational sites, access to other roads, and access to private land.

As the movants, the State and Garfield County bear the burden of proving acceptance of the grant of a right-of-way for the G9000 Hole in the Rock Road. Moreover, state law determines whether the State and Garfield County or the public accepted the grant of an R.S. 2477 right-of-way for the road.

Here, the State and Garfield County formally accepted the R.S. 2477 right-of-way for the G9000 Hole in the Rock Road on or before 1937 by designating the road as a Class B General Highway. As a Class B road, Garfield County operated, improved and regularly maintained the G9000 Hole in the Rock Road using State and Garfield County funds.

Additionally, more than ten years of continuous public use prior to 1976 confirms the public's acceptance of the grant of an R.S. 2477 right-of-way. Public use of the G9000 Hole in

18

the Rock Road since at least the 1940s further confirms acceptance of an R.S. 2477 right-of-way for the Hole in the Rock Road.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the Court is to "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Knopf v. Williams*, 884 F.3d 939, 946 (10th Cir. 2018). "If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

## I.    CONGRESS ENACTED R.S. 2477 TO LIBERALLY GRANT PUBLIC HIGHWAY RIGHTS-OF-WAY.

Congress enacted R.S. 2477 in section 8 of the Mining Law of 1866.  "And be it further enacted, That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."  Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, later codified as Revised Statute 2477.

Congress freely granted R.S. 2477 rights-of-way for 110 years until the statute was repealed on October 21, 1976 by FLPMA. *See* 43 U.S.C. § 932.  R.S. 2477 "was a standing offer of a free right-of-way over the public domain, and as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, a highway was established." *Streeter v. Stalnaker*, 85 N.W. 47, 48 (Neb. 1901).  As expressed in one of the first reported R.S. 2477 cases, such "roads facilitate the settlement of the country, and benefit the

neighborhood, and in both particulars they further a general policy of the federal government. But they also tend to increase the value of the public lands, and for this reason are favored." *Smith v. Mitchell*, 58 P. 667, 668 (Wash. 1899), citing *Flint & Pere Marquett Ry. Co. v. Gordon*, 2 N.W. 648, 653 (Mich. 1879).  R.S. 2477 "is an unequivocal grant of right of way for highways over public lands, without any limitation as to the method for their establishment." *Smith*, 58 P. at 668.  "They are usually along the most accessible routes of travel and conform to the physical conditions of the country, and, when generally traveled by the public without interruption or hindrance for a period of ten years, they must be regarded as firmly established in law."  *Id.* (applying Washington law). "It was the consistent policy of the BLM, as well as the courts, to look to common law and state law as setting the terms of acceptance of R.S. 2477 grants." *SUWA v. BLM*, 425 F.3d 735, 765 (10th Cir. 2005); *see also id.* at 768 n.19 (applying Utah ten-year public use statute).

Despite repealing R.S. 2477, Congress preserved all valid existing rights. *See* 43 U.S.C. § 1701, note; 43 U.S.C. § 1769(a) ("Nothing in this subchapter shall have the effect of terminating any right-of-way or right-of-use heretofore issued, granted, or permitted."). Accordingly, R.S. 2477 rights-of-way established prior to October 21, 1976, still exist today, and the BLM is under a legal duty to manage public lands subject to these valid-existing rights.

## II.   THE REQUIREMENTS OF THE QUIET TITLE ACT.

### A.  The Quiet Title Act.

Garfield County brings this action under the Quiet Title Act, 28 U.S.C. § 2409a. In the QTA, Congress waived the sovereign immunity of the United States to allow claimants to confirm their existing title to property in which the United States claims an interest. "The

United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a).

The majority of the reported case law under the QTA involves fee title claims against the United States. This lawsuit, however, involves the specific case law addressing claims to rights-of-way, which are non-possessory interests in the use of land. "A right of way is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." *SUWA*, 425 F.3d at 747. "By its express terms, R.S. § 2477 grants a right-of-way, a species of easement across the public lands of the United States." *United States v. Garfield County*, 122 F. Supp. 2d 1201, 1242 (D. Utah 2000), citing *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988). The QTA allows the Court to quiet title to non-possessory interests in the lands of the United States, including easements and rights-of-way. "The quieting of title where the plaintiff claims an estate less than a fee simple, an easement or the title to minerals, is likewise included in the terms of the proposed statute." H.R. Rep. No. 1559, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 4552.

Initially, two conditions must be met for an action under the QTA. First, the United States must claim an interest in the property, and second, there must be a dispute as to the interest. *See Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999). Additionally, the QTA's statute of limitations is 12 years for Garfield County and indeterminate for the State. *See* 28 U.S.C. § 2409a(g), (j) and (k).

The QTA's statute of limitations is no longer considered to be a jurisdictional requirement. *See Wilkins v. United States*, 598 U.S. 152, 155 (2023). Moreover, the statute of

21

limitations analysis is unique for non-possessory interests such as a right-of-way. "An easement, of course, is different. The government's claim to ownership and control of the servient tenement can be entirely consistent with private ownership of an easement." *McFarland v. Norton*, 425 F.3d 724, 726-27 (9th Cir. 2005). "To avoid forcing landowners and the government into 'premature, and often unnecessary, suits,' [] we should not lightly assume that regulatory or supervisory actions, as opposed to those that deny the easement's existence, will trigger the statute of limitations." *Id*. at 727, quoting *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995). *See also Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005) (mild interference with the use of an easement pursuant to the government's own property interests will not start the statute of limitations running.).

### B. The State and Garfield County Timely Filed this Action To Resolve A Disputed Title.

The parties have already briefed, and the Court has already resolved, the motions to dismiss for lack of a dispute as to title and any issue implicating the QTA statute of limitation for the G9000 Hole in the Rock Road. *See, e.g., Kane Cnty. I,* 2024 U.S. Dist. LEXIS 142312, at * 60-95, 115-116. As shown in the undisputed facts and the Court's decision, the State and Garfield County timely filed suit to resolve the existing title dispute over the R.S. 2477 right-of-way for the G9000 Hole in the Rock Road.

## III.   GARFIELD COUNTY AND THE PUBLIC ACCEPTED THE RIGHTS-OF-WAY AT ISSUE ON UNRESERVED PUBLIC LANDS PRIOR TO OCTOBER 21, 1976.

The G9000 Hole in the Rock Road has existed as a public highway since its original construction began in 1879. *See*, *e.g.*, NETHELLA GRIFFIN WOOLSEY, THE ESCALANTE STORY 367-380 (Art City Publishing Company 1964). The long history of this road makes application of

R.S. 2477 very direct: a) whether the public lands were unreserved public lands; b) whether the State and Garfield County accepted the right-of-way; and c) whether the public accepted the grant.

### A. The Lands Crossed By The G9000 Hole in the Rock Road Were Unreserved Public Lands.

The G9000 Hole in the Rock Road crosses lands in Township 35 South, Range 3 East and Township 36 South, Range 4 East. The road also crosses lands in Township 37 South, Ranges 4 and 5 East. The BLM's Historical Indices for the sections crossed by the G9000 Hole in the Rock Road confirm that the lands remained as unreserved public lands until after R.S. 2477 was repealed in 1976. *See* Statement of Facts ("SOF"), ¶¶ 22-30; *see also* Exhibits 6-9.

As for the short segment of road crossing the former SITLA parcels, the sections were subject to an R.S. 2477 right-of-way prior to the time that title vested in the State, or were exchanged to the United States subject to a right-of-way or easement for the G9000 Hole in the Rock Road. SOF, ¶¶ 56-65.

### B. Garfield County Accepted The R.S. 2477 Right-of-Way For The G9000 Hole In The Rock Road.

The entirety of the G9000 Hole in the Rock Road has been a State and Garfield County Class B General Highway since 1937. SOF ¶¶ 47-51; *see also* Exhibits 21-25. As a practical matter, Garfield County's Class B roads began as horse or wagon roads, but were used, upgraded, constructed and improved over time to meet Class B standards. "Class B roads [are] maintained to the level that a two-wheel drive passenger vehicle may navigate them." *Kane Cnty. I*, 2024 U.S. Dist. LEXIS 142312, at *17. The testimony of Norman Christensen, along with the declarations of Mac Barney and Blaine Porter, confirm that

Garfield County has maintained the G9000 Hole in the Rock Road as a Class B road since at least the 1950s. SOF ¶¶ 52-55; *see also* Exhibits 26-28.

The designation of the G9000 Hole in the Rock Road as a Class B General Highway by the State, Garfield County, and agencies of the United States is an express or formal acceptance of an R.S. 2477 right-of-way for the road. As it stands, the Court has held that title to the G9000 is vested in the State and Garfield County. *See* Memorandum Decision and Order Supplementing August 9, 2024 Decision (ECF 816), p. 3 (State and Garfield County hold vested title to G9000 Hole in the Rock Road.).

The R.S. 2477 right-of-way for the G9000 Hole in the Rock Road was accepted by the State and Garfield County by its pre-1976 designation and operation as a Class B General Highway.

## C. The R.S. 2477 Right-Of-Way For The G9000 Hole in the Rock Road Was Accepted By Public Use.

In the absence of a governmental authority's acceptance, continuous public use can establish the public's acceptance of an R.S. 2477 grant.

> It has been held by numerous courts that the grant may be accepted by public use without formal action by public authorities, and that continued use of the road by the public for such length of time and under such circumstances as to clearly indicate an intention on the part of the public to accept the grant is sufficient.

*SUWA*, 425 F.3d at 771.

Pursuant to Utah law, an R.S. 2477 right-of-way may be accepted by ten years of continuous public use as a public thoroughfare. *Id.* at 769; *see also* Utah. Rev. Stat., Title 25, Ch. 1, § 1115 (1898) (a public highway would "be deemed to have been dedicated and

24

abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years.").

The concept of "continuous" use is not a measure of frequency. Even in the absence of direct evidence of "actual use each year," use may be continuous though not constant. *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977), citing 1 Thompson on Real Property, Specific Easement, § 464, p. 575 (1924). The frequency of use is "immaterial, provided it occurred as often as the claimant had occasion or chose to pass. Mere intermission is not interruption." *Id.*

Members of the public traveled the G9000 Hole in the Rock Road in motor vehicles since at least the 1940s and continue to travel the road today. Arnold Alvey testified that he began traveling the G9000 Hole in the Rock Road on a seasonal basis in the 1940s. SOF ¶ 66. Dell LeFevre testified that he used the G9000 for various purposes from approximately 1956 through at least the 1970s. SOF ¶ 67. And Sam Spencer testified that he traveled the G9000 from 1957 up through the date of his deposition in 2017. SOF ¶ 68.

This testimonial evidence, added to the fact that the G9000 Hole in the Rock Road has consistently appeared as a road on maps from 1896 through the present, confirms the public accepted an R.S. 2477 right-of-way for the Hole in the Rock Road.

WHEREFORE, Garfield County and the State of Utah respectfully request the Court to grant the Motion for Partial Summary Judgment quieting title to the right-of-way for the G9000 Hole in the Rock Road, reserving the issue of scope for future proceedings.

DATED this 6th day of December, 2024.

UTAH ATTORNEY GENERAL'S OFFICE

*/s/ K. Tess Davis*
Kathy A.F. Davis
K. Tess Davis
Assistant Attorneys General

*Attorneys for Plaintiffs State of Utah and Garfield County, Utah*