AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Utah

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| GARFIELD COUNTY, a political subdivision, the STATE OF UTAH, the UNITED STATES BUREAU OF LAND MANAGEMENT, and the UNITED STATES DEPARTMENT OF THE INTERIOR | ) |
| | ) |
| *Defendant(s)* | ) |



Civil Action No.  2:26-cv-00096

SERVED
DATE: [handwritten]  TIME: 1540
BY: [handwritten]  ID: A139621
BEEHIVE ATTORNEY SERVICE
800-779-0379

ATTORNEY GENERAL

FEB 06 2026

EXECUTIVE

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   State of Utah
Utah Attorney General's Office
350 N State Street, Suite #230
Salt Lake City, UT 84114

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

        Hanna Larsen
        Southern Utah Wilderness Alliance
        425 E 100 S
        Salt Lake City, UT 84111

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



Gary P Serdar
**CLERK OF COURT**

Date:     02/05/2026             *Stephanie Garcia*

                           *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  2:26-cv-00096

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____    _____

                                              *Server's signature*

                              _____

                                              *Printed name and title*

                              _____

                                              *Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 10/20)                                    CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Southern Utah Wilderness Alliance | Garfield County, Utah, the State of Utah, U.S. Bureau of Land Management, U.S. Department of the Interior |

**(b)** County of Residence of First Listed Plaintiff **Salt Lake County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

SOUTHERN UTAH WILDERNESS ALLIANCE
425 E 100 S, Salt Lake City, Utah 84111

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☒ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
43 U.S.C. 1701 et seq.; 5 U.S.C. 706
Brief description of cause:
Unauthorized road improvements in Grand Staircase-Escalante National Monument (Garfield County)

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☒ No |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*    JUDGE  Waddoups    DOCKET NUMBER  2:11-cv-1045

DATE    02/05/2026                        SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 E 200 S, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE,**<br><br>    Plaintiff,<br><br>v.<br><br>**GARFIELD COUNTY, UTAH, a political subdivision, the STATE OF UTAH, the UNITED STATES BUREAU OF LAND MANAGEMENT, and the UNITED STATES DEPARTMENT OF THE INTERIOR,**<br><br>    Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No. 2:26-cv-00096<br><br>Judge |

## INTRODUCTION

1.    This lawsuit challenges Garfield County, Utah's and the State of Utah's

(collectively, "Garfield County" or "the County") willful disregard for and failure to follow

binding Tenth Circuit precedent that required them to consult with the United States Bureau of

Land Management ("BLM") before engaging in road improvement activities on the Hole-in-the-Rock Road. It also challenges BLM's decision not to comply with its obligations under the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701 *et seq.* ("FLPMA") to, at the bare minimum, prevent unnecessary or undue degradation of the public lands.

2.    The Hole-in-the-Rock Road is a 62-mile rugged, scenic dirt/gravel road that traverses through the heart of Grand Staircase-Escalante National Monument. The last five miles of the road are within the Glen Canyon National Recreation Area ("NRA"). For nearly its entire length, the road is bounded on each side by BLM Wilderness Study Areas ("WSA") and/or BLM-identified lands with wilderness characteristics ("LWC").

3.    The County's R.S. 2477 right-of-way ("ROW") claim for the Hole-in-the-Rock Road has been partially adjudicated. *Kane Cnty., Utah v. United States*, 2025 U.S. Dist. LEXIS 141248, *9 (D. Utah 2025). The ROW is only partially adjudicated because the *Kane County* court resolved the title portion of the claim, but "reserved for future proceedings" any decision "pertaining to scope" for the road. *Id.* at *8. That issue remains unresolved.

4.    The County's partially adjudicated ROW came with many strings attached, including limitations on how, when, and where it can engage in road improvements on the Hole-in-the-Rock Road. Controlling here, in *Southern Utah Wilderness Alliance v. Bureau of Land Management* ("*SUWA*"), the Tenth Circuit held that a R.S. 2477 ROW—even one fully adjudicated in the County's favor—"is not tantamount to fee simple ownership of a defined parcel of territory. Rather, it is an entitlement to use certain land in a particular way." 425 F.3d 735, 747 (10th Cir. 2005) (emphasis added). Specifically, the ROW holder "may sometimes be entitled to change the character of the roadway when needed to accommodate traditional uses,

2

but even legitimate changes in the character of the roadway require consultation when those

changes go beyond routine maintenance." *Id.* at 748 (emphasis added). Thus,

> when the holder of an R.S. 2477 [ROW] across federal land proposes to undertake any improvements in the road along its [ROW], beyond mere maintenance, it must advise the federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands. The initial determination of whether the construction work falls within the scope of an established [ROW] is to be made by the federal land management agency, which has an obligation to render its decision in a timely and expeditious manner.

*Id.* (emphases added).

5.    Road "improvements" that require pre-work consultation with BLM—that is,

activities that go beyond routine maintenance—include

> the widening of the road, the horizontal or vertical realignment of the road, the installation . . . of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any "improvement," "betterment," or any change in the nature of the road that may significantly impact [public] lands, resources, or values.

*Id.* at 749 (citation omitted).

6.    The requirement that the ROW holder first consult with BLM before engaging in

road improvements is mandatory "and the failure to do so will provide a basis for prompt

injunctive relief." *Id.*

7.    The County—like any ROW holder—is bound by Tenth Circuit precedent.

Nonetheless, as discussed below, the County admits that it is, among other things, actively and

intends to continue until completed:

- "Grading and reshaping the existing roadway";

3

- "Install[ing] . . . drainage features including culverts";

- "Plac[ing] . . . gravel where needed to stabilize the road surface"; and

- "Surfacing [the dirt road] with a double chip seal treatment . . . [for] approximately ten miles of the roadway."

*See generally* Letter from David Dodds, Garfield Cnty., Utah to Adé Nelson, Bureau of Land Mgmt., *Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)* (Jan. 27, 2026) ("Notice") (attached as Ex. 1).

8.    Pursuant to Tenth Circuit law, these actions are road improvements, not routine maintenance, and therefore even if the County had a fully adjudicated ROW, which it does not, the County was required to consult with BLM before starting work. However, the County did not consult with BLM. Likewise, BLM has not demanded or required that the County immediately halt all road improvement activities until the consultation process is initiated and completed. Instead, BLM is idly standing by while the County engages in activities that BLM acknowledges are improvements, but without determining whether the County's improvements are reasonable and necessary, whether there are alternatives to the County's proposed improvements, and whether the BLM is meeting its obligation to ensure that the County's actions do not lead to unnecessary or undue degradation.

9.    The County's "bulldoze first, talk later" road improvements are in direct violation of Tenth Circuit precedent, and BLM's failure to order the County to halt all road improvements and initiate pre-work consultation regarding those improvements violates its duties under FLPMA.

## JURISDICTION AND VENUE

4

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), and 5 U.S.C. §§ 501-706 (Administrative Procedure Act, or "APA").

11.     Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(e)(1) because the statutory violations alleged herein all occurred within the state of Utah.

## PARTIES

12.     Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE ("SUWA") is a nonprofit environmental membership organization dedicated to the preservation of outstanding wilderness found throughout Utah, including in Grand Staircase-Escalante National Monument, the Glen Canyon NRA and the Hole-in-the-Rock Road and surrounding wilderness-caliber lands, and the management of wilderness-quality lands in their natural state for the benefit of all Americans. SUWA is headquartered in Salt Lake City, Utah with offices in Moab, Utah and Washington, D.C. SUWA's members use and enjoy public lands throughout Utah for a variety of purposes, including scientific study, recreation, wildlife viewing, aesthetic appreciation, viewing cultural and historic artifacts, and financial livelihood. This is particularly true in the Grand Staircase-Escalante National Monument where SUWA members enjoy and undertake all of these activities and often visit the public lands comprising the Monument. SUWA promotes local and national recognition of the region's unique character through research and public education and supports administrative and legislative initiatives to permanently protect Utah's wild places. SUWA brings this action on its own behalf and on behalf of its members.

5

13.     Defendant GARFIELD COUNTY, UTAH is a county in south central Utah. The county encompasses large segments of federal public lands in the Grand Staircase-Escalante National Monument, the Glen Canyon NRA, and the Hole-in-the-Rock Road. The Garfield County Public Works Department (a county-entity) and/or its contractors are actively undertaking road improvements on the Hole-in-the-Rock Road.

14.     Defendant STATE OF UTAH is one of fifty sovereign states forming the United States of America, having been admitted to the Union on January 4, 1896. Under state law, Utah is a co-owner of all R.S. 2477 rights-of-way, including for the Hole-in-the-Rock Road. Utah is aware and supportive of Garfield County's road improvements on the Hole-in-the-Rock Road.

15.     Defendant UNITED STATES DEPARTMENT OF THE INTERIOR ("Interior Department") is the federal agency responsible for managing approximately five hundred million acres of federal public land across the United States for a variety of competing resources, including the protection of the natural and human environment.

16.     Defendant UNITED STATES BUREAU OF LAND MANAGEMENT is an agency within the Interior Department that is responsible for the management of approximately twenty-three million acres of federal public land in Utah, including the lands at issue in this litigation. All BLM authorizations and actions must be in accordance with FLPMA.

17.     Garfield County, Utah, the Interior Department, and BLM are referred to herein collectively as, "Defendants."

## FACTS GIVING RISE TO SUWA'S CAUSES OF ACTION

6

18.    On January 27, 2026, Garfield County Public Works Director David Dodds sent a letter to Adé Nelson, the Grand Staircase-Escalante National Monument manager, notifying her that the County intended to imminently begin road improvement and maintenance activities on the Hole-in-the-Rock Road. *See generally* Notice.

19.    On February 2, 2026, SUWA received a copy of the County's letter and over the course of the next two days – February 3-4 – SUWA confirmed that in fact the County was actively engaged in road improvement activities on the Hole-in-the-Rock Road, including road widening, changing the vertical and horizontal alignment of the road, and installing culverts where none previously existed.

20.    In its January 27 letter, the County wrongly claimed that all of its road-related activities were "maintenance" but then described the nature and scope of the work to include:

- Grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage, including removal and reshaping of accumulated edge berms and restoration of proper cross slope[;]

- Placement and cleaning of bar ditches[;]

- Installation, replacement, and maintenance of drainage features including culverts[;]

- Maintenance of lead off ditches . . . to direct runoff away from the road prism[; and]

- Placement of gravel where needed to stabilize the road surface[.]

*Id.* at *1-2.

21.    Additionally, the County explained that the "roadway grading and road prism improvements described above will extend to the Garfield County and Kane County line. Surfacing with a double chip seal treatment will be applied to approximately ten miles of the roadway." *Id.* at *2.

7

22.    Many of these road construction activities—specifically chip sealing, installation
of culverts where none previously existed, and changing the road's alignment—are textbook
examples of improvements, not maintenance. *See SUWA*, 425 F.3d at 749 (improvements
include, *inter alia*, "widening of the road, . . . installation [of] culverts and other drainage
structures, [and] . . . change in the surface composition of the road (*e.g.*, going from dirt to
gravel, from gravel to chipseal. . .)").

23.    When the County proposes to undertake "any improvements in the road along its
right of way, beyond mere maintenance" it must advise the BLM and provide BLM the
opportunity to "carry out its own duties" and determine whether the improvement is reasonable
and necessary." *SUWA*, 425 F.3d at 748; *see also Kane Cnty., Utah v. United States*, 772 F.3d
1205, 1224-25 (10th Cir. 2014) (the holder of a R.S. 2477 ROW must consult with BLM before
it undertakes improvements to the ROW).

24.    On February 3, 2026, SUWA sent a cease-and-desist letter to the County. *See
generally* Letter from Hanna Larsen, *et al.*, S. Utah Wilderness All. to David Dodds, *et al.*,
Garfield County, *Re: Garfield County's January 27, 2026 "Notice of Maintenance Activities on
G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)"* (Feb. 3, 2026) (attached as Ex. 2).
Among other things, SUWA explained that (1) the road construction activities were
"improvements," not "maintenance," and (2) the County held only a partially adjudicated ROW
because the *Kane County* court had deferred a decision as to scope of the ROW, and therefore the
improvements were unauthorized and unlawful. *See id.* On February 4, Ms. Tess Davis, an
assistant Attorney General with the state of Utah, responded with a single sentence email to
SUWA's letter: "The work presently being undertaken by Garfield County on the G9000 Hole-in-

the-Rock Road does not differ from its historic maintenance and operation of the road." Email from K. Tess Davis, State of Utah, to Hanna Larsen *et al.*, S. Utah Wilderness All., *Re: G9000 Hole-in-the-Rock Road Maintenance & Improvements* (Feb. 4, 2026) (attached as Ex. 3). Ms. Davis's statement is incorrect at least insofar as the fact that Garfield County has <u>never</u> chip sealed the Hole-in-the-Rock Road, whose surface is dirt and gravel.

25. On February 4, SUWA sent an email to the acting BLM State Director, Mr. Tom Heinlein, which forwarded SUWA's February 3 letter to Garfield County, summarized the points raised therein, and identified that by not directing the County to immediately cease its work BLM had, among other things, failed to fulfill its statutory duties and acted contrary to law. Email from Stephen Bloch, S. Utah Wilderness All., to Thomas Heinlein *et al.*, Bureau of Land Mgmt., *Re: Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road* (Feb. 4, 2026) (attached as Ex. 4). Mr. Bloch explained that "BLM must direct the county to cease its work immediately and consult with BLM before taking any further action." *Id.*

26. Later in the day on February 4, Mr. Heinlein instructed Mr. Joseph Kim, an attorney with the United States Department of Justice, to forward a copy of a February 4 letter from Ms. Nelson—which responded to the County's January 27 letter—to Mr. Bloch. *See generally* Email from Joseph Kim, U.S. Dep't of Justice, to Stephen Bloch *et al.*, S. Utah Wilderness All., *Re: Hole in the Rock Road* (Feb. 4, 2026) ("Kim Email") (attached as Ex. 5); Letter from Adé Nelson, Bureau of Land Mgmt., to David Dodds, Garfield Cnty. (Feb. 4, 2026) ("BLM Letter") (attached as Ex. 6). Mr. Kim's email conveyed BLM's decision rejecting SUWA's request that BLM comply with FLPMA and other federal laws and obligations. It states in full: "BLM has received your email about the Hole in the Rock Road, and asked me to

9

forward you their attached response to the County's January 27 letter. Please let us know if you have any questions." *See* Kim Email.

27.     For its part, Ms. Nelson's February 4 letter correctly notes that the County's proposed actions "seem to propose both maintenance and improvements," and stated that the County had not consulted with the BLM prior to beginning this work. *See* BLM Letter at 2. However, BLM took no action to stop the County's improvement activities on federal lands. On information and belief, the County has not responded to BLM's letter. BLM has not satisfied its duty "to determine whether the proposed improvement [was] reasonable and necessary in light of the traditional uses of the [ROW], to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *SUWA*, 425 F.3d at 748.

28.     The County continues to brazenly ignore these warnings and objections and to actively engage in road improvements on the Hole-in-the-Rock Road. The County's activities constitute trespass on public lands. *See SUWA*, 425 F.3d at 747-48 (explaining that unilaterally making improvements to an R.S. 2477 ROW constitutes trespass). Based on information and belief, these activities are ongoing today, February 5, 2026, and are causing immediate and irreparable harm to SUWA and its members.

29.     BLM's failure to satisfy these duties violates FLPMA. FLPMA requires BLM to "take any action necessary to prevent unnecessary or undue degradation of the [public] lands." 43 U.S.C. § 1732(b). Here, BLM has not taken any action at all, aside from sending a softly worded letter to the County expressing the agency's disappointment with the lack of pre-work consultation.

30.    Because BLM decided not to require the County to halt all road improvements until the parties have consulted, BLM has effectively authorized and endorsed the County's trespass on public lands and the accompanying road improvements' significant environmental impact to Grand Staircase-Escalante National Monument and its outstandingly remarkable objects and values, as well as BLM-identified LWC areas, among other resource values. And BLM has done so without first determining whether the improvements are reasonable and necessary or analyzing the impacts of those improvements and any alternatives thereto that would reduce the impacts to public lands and resources.

31.    The County's ongoing Hole-in-the-Rock Road improvements have destroyed—and continue to destroy—these public lands and public resource values.

## FIRST CAUSE OF ACTION
### *Violation of Federal Common Law Against All Defendants*

32.    SUWA incorporates by reference all the preceding paragraphs.

33.    Pursuant to principles of federal common law, Defendants are not free to ignore binding Tenth Circuit precedent. *See Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 641 (1981) ("federal common law exists . . . [in] areas as those concerned with the rights and obligations of the United States").

34.    The County holds a partially adjudicated R.S. 2477 ROW in the Hole-in-the-Rock Road and does not have any right to make improvements to the road. Moreover, even if the County's ROW was fully adjudicated in the County's favor, "the holder of an R.S. 2477 [ROW] across federal land must consult with [BLM] before it undertakes any improvements to an R.S. 2477 [ROW] beyond routine maintenance. *SUWA*, 425 F.3d at 746. In other words, "[j]ust

11

because a proposed change falls within the scope of a [ROW] does not mean that [road construction activities] can be undertaken unilaterally." *Id.* at 748.

35.    Despite its legal obligation to do so, the County did not consult with BLM and, by its own statements and facts, is actively engaged in road construction activities that, pursuant to the Tenth Circuit's holding in *SUWA*, qualify as "improvements." These activities include:

- Reshaping the roadway (*e.g.*, widening the road or horizontally/vertically realigning the road);

- Placement of bar ditches (*e.g.*, change in the nature of the road);

- Installation of drainage features including culverts;

- Surfacing with a double chipseal treatment for 10 miles of the roadway (*e.g.*, upgrading the road surface from dirt or gravel to chipseal).

Notice at *1-2.

36.    Contrary to binding law, the County asserted that all of its proposed construction activities were maintenance when in fact many of them constitute improvements. *See SUWA*, 425 F.3d at 747-48. As such, the County was required to consult with BLM <u>before</u> beginning any improvements; it did not do so.

37.    For its part, "BLM has obligations to protect the land over which the [R.S. 2477 ROW] here pass[es]." *Id.* at 747. Specifically, "[u]nless it knows in advance when [ROW] holders propose to change the width, alignment, configuration, surfacing, or type of roads across federal land, the BLM cannot effectively discharge its responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed." *Id.*

38.     BLM has decided not to comply with these duties and responsibilities and instead
has stood by and spectated while the County conducts these unauthorized improvements. As a
result, BLM has effectively endorsed the County's illegal conduct on federal public lands. This is
unlawful. The Tenth Circuit could not have been clearer: "[I]f changes [to the R.S. 2477 ROW]
are contemplated, it is necessary to consult, and the failure to do so will provide a basis for
prompt injunctive relief." *Id.* at 749.

### SECOND CAUSE OF ACTION
*Violation of FLPMA and the APA Against Federal Defendants*

39.     SUWA incorporates by reference all the preceding paragraphs.

40.     Pursuant to FLPMA, "[i]n managing the public lands [BLM] shall, by regulation
or otherwise, take any action necessary to prevent unnecessary or undue degradation of the
lands." 43 U.S.C. § 1732(b).

41.     Here, BLM took no affirmative action to prevent unnecessary or undue
degradation. At a minimum, the agency was required to "determine whether the proposed
improvement [was] reasonable and necessary in light of the traditional uses of the [ROW], to
study potential effects, and if appropriate, to formulate alternatives that serve to protect the
lands." *SUWA*, 425 F.3d at 748.

42.     However, the agency failed to do so. Without taking these actions, BLM had no
way of complying with FLPMA. As the Tenth Circuit has held:

> Unless [the agency] knows in advance when [ROW] holders propose to change the
> width, alignment, configuration, surfacing, or type of roads across federal land, the
> BLM cannot effectively discharge its responsibilities to determine whether the
> proposed changes are reasonable and necessary, whether they would impair or
> degrade the surrounding lands, and whether modifications in the plans should be
> proposed.

13

*Id.* at 747 (emphasis added).

43.     BLM's decision not to act means it has not properly discharged its responsibilities under FLPMA. Because it has not properly discharged its responsibilities, BLM has failed "to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *Id.* at 748. Because BLM failed to understand the environmental impacts of the County's road improvements or to formulate alternatives thereto that would reduce those impacts, it has sanctioned environmental degradation and destruction that otherwise would not have occurred and thus the agency failed to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

### PRAYER FOR RELIEF

WHEREFORE, SUWA respectfully requests that the Court enters judgment in SUWA's favor and against Defendants, and that the Court:

(1)     Declare that Defendant Garfield County violated federal common law when it undertook road improvement activities on the Hole-in-the-Rock Road without first consulting with the BLM;

(2)     Declare that Defendants BLM and Interior Department violated federal common law when it decided not to require consultation before permitting the County to engage in road improvement activities on the Hole-in-the-Rock Road;

(3)     Declare that Defendants BLM and Interior Department violated FLPMA when it failed to take any action necessary to prevent unnecessary or undue degradation of the public lands;

(4)    Award injunctive relief prohibiting the County from continuing any additional road improvements on the Hole-in-the-Rock Road until it has consulted with BLM and BLM has (a) determined whether the improvements are reasonable and necessary in light of the traditional uses of the partially adjudicated R.S. 2477 ROW, (b) studied the potential effects of the road improvements, and (c) if necessary, formulated alternatives that serve to protect the public lands.

(5)    Award injunctive relief instructing the County to remove any unauthorized improvements including, but not limited to, any newly installed culverts and chip seal installed on the 10-mile segment of the Hole-in-the-Rock Road or other such equitable relief as the Court deems proper;

(6)    Enjoin the County from proceeding with further road improvements on the Hole-in-the-Rock Road pursuant to the Court's authority under the All Writs Act, 28 U.S.C. § 1651.

(7)    Retain jurisdiction of this action to ensure compliance with its decree;

(8)    Award SUWA costs incurred in pursuing this action, including attorney's fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable provisions; and

(9) Grant such other and further relief as is proper.


DATED:        February 5, 2026        Respectfully,

_/s/ Hanna Larsen_____
Stephen H.M. Bloch
Hanna Larsen
SOUTHERN UTAH WILDERNESS ALLIANCE

Trevor J. Lee
HOGGAN LEE HUTCHINSON

Mitch M. Longson
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

*Attorneys for Plaintiff Southern Utah
Wilderness Alliance*

16

# EXHIBIT 1



55 South Main Street | PO Box 77 | Panguitch, Utah 84759

Phone: (435) 676-8826 | Fax: (435) 676-8239

Garfield County Public Works Department
P.O. Box 77
Panguitch, UT 84759

January 27, 2026

Adé Nelson
Monument Manager
Grand Staircase-Escalante National Monument
Bureau of Land Management
669 S. Highway 89A
Kanab, UT 84741

Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)

Dear Ms. Nelson,

Garfield County provides this notice to inform the Bureau of Land Management of planned maintenance, upgrades, and restoration activities on the G9000 Hole-in-the-Rock Road within Garfield County.

On July 23, 2025, the United States District Court for the District of Utah issued a Memorandum Decision and Order, Case No. 2:11-cv-01045, quieting title to the G9000 Hole-in-the-Rock Road in favor of Garfield County, Utah, and the State of Utah as a valid RS 2477 right of way. The court granted summary judgment to Garfield County and the State of Utah pursuant to the Quiet Title Act, 28 U.S.C. § 2409a. That decision confirms Garfield County's ownership interest in and responsibility for the road corridor.

Consistent with that ruling and with Garfield County's responsibility to provide safe and functional transportation infrastructure, the County intends to conduct maintenance, upgrades, and restoration activities on this road to address the significant volume of public and recreational traffic.

Planned work includes the following activities:

• Grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage, including removal and reshaping of accumulated edge berms and restoration of proper cross slope.

• Placement and cleaning of bar ditches

• Installation, replacement, and maintenance of drainage features including culverts

• Maintenance of lead off ditches, sometimes referred to as relief ditches, to direct runoff away from the road prism

• Placement of gravel where needed to stabilize the road surface

The roadway grading and road prism improvements described above will extend to the Garfield County and Kane County line. Surfacing with a double chip seal treatment will be applied to approximately ten miles of the roadway.

The overall purpose of this work is to improve safety, durability, and drainage performance of the road, reduce long term maintenance costs, and address sustained and increasing traffic volumes, while maintaining the road within its established alignment and use as a transportation corridor. This work is also intended to reduce environmental impacts through improved dust abatement and reduced erosion of the road and surrounding landscape.

Garfield County is providing this notice as a consolation and in the interest of interagency coordination. Please contact me if you have questions or would like additional information regarding the planned work.

Sincerely,


Public Works Director
Garfield County

*County Commissioners*
Leland F. Pollock
Jerry A. Taylor
David B. Tebbs

Camille A. Moore, *Auditor/Clerk*
Brayton Talbot, *Recorder/Surveyor*
Joseph Thompson, *Assessor*
Gina Peterson, *Treasurer*

Gary D. Owens, *Justice Court Judge*
Barry L. Huntington, *Attorney*
James D. Perkins, *Sheriff*

# EXHIBIT 2



SOUTHERN UTAH WILDERNESS ALLIANCE

February 3, 2026

**SENT VIA ELECTRONIC MAIL**

David Dodds, Public Works Director
(dave.dodds@garfield.utah.gov)
Barry Huntington, County Attorney
(barry.huntington@garfield.utah.gov)
Garfield County
55 S Main Street
P.O. Box 77
Panguitch, UT 84759

Kathy Davis (kathydavis@agutah.gov)
K. Tess Davis (kaitlindavis@agutah.gov)
Roger Fairbanks (rfairbanks@agutah.gov)
Utah Attorney General's Office
1594 W North Temple, Ste 320
Salt Lake City, UT 84116

Mark Boshell (mboshell@utah.gov)
Utah's Public Lands Policy Coordinating
Office
1594 W North Temple, Ste 320
Salt Lake City, UT 84116

RE:    *Garfield County's January 27, 2026 "Notice of Maintenance Activities on G9000
Hole-in-the-Rock Road (RS 2477 Right of Way)"*

Dear Mr. Dodds and counsel:

The Southern Utah Wilderness Alliance ("SUWA") has become aware of Garfield County's
January 27, 2026 notice informing the Bureau of Land Management ("BLM") of "planned
maintenance, upgrades, and restoration activities on the G9000 Hole-in-the-Rock Road." Letter
from David Dodds, Garfield Cnty., Utah to Adé Nelson, Bureau of Land Mgmt., *Re: Notice of
Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)*, 1 (Jan. 27,
2026) ("Notice") (attached as Ex. 1).

Although the Notice purports to describe its anticipated activities as "maintenance," many of the
activities described are, in fact, "improvements" under Tenth Circuit law,[1] including but not
limited to "reshaping the existing roadway and road prism," "[i]nstallation…of drainage features
including culverts," and "[s]urfacing with a double chip seal treatment." *Id.* at 1-2. Consequently,
for the reasons explained below, the activities described in the Notice are unauthorized and
violate federal law.

---

[1] "Improvements" are defined to include

> the widening of the road, the horizontal or vertical realignment of the road, the installation (as
> distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage
> structures, as well as any significant change in the surface composition of the road (*e.g.*, going from
> dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.)

*S. Utah Wilderness All. v. U.S. Bureau of Land Mgmt.*, 725 F.3d 735, 749 (10th Cir. 2005) ("*SUWA v. BLM*").

*Letter from SUWA to Garfield County & the State of Utah*
*Proposed Maintenance & Improvements on the G9000 Hole-in-the-Rock Road*
*February 3, 2026*

*First*, title has not been <u>fully</u> quieted in favor of Garfield County and the State of Utah and therefore the work is not authorized. As the Tenth Circuit has made clear, quieting title to an R.S. 2477 right-of-way under the Quiet Title Act, 28 U.S.C. § 2409a, requires both a title determination in favor of the claimant and <u>a scope determination</u> before the right-of-way is deemed adjudicated. *Kane Cnty. v. United States*, 928 F.3d 877, 894 (10th Cir. 2019) (explaining that "scope is inherent in the quiet title process… [b]ut the district court must determine title and scope in separate steps."); *see also Kane Cnty. v. United States*, 772 F.3d 1205, 1225 (10th Cir. 2014) (remanding for the district court to reexamine the scope of three rights-of-way while leaving the title determinations of those rights-of-way undisturbed). Without the necessary scope determination, there is no way to know what the extent of the title determination is. Here, the district court's July 23, 2025 decision in *Kane County, Utah v. United States*, 2025 U.S. Dist. LEXIS 141248 (D. Utah 2025)[2] ("*HITR Decision*") only addressed title to the Hole-in-the-Rock Road while reserving a scope determination for an unspecified later date. *See HITR Decision*, 2025 U.S. Dist. LEXIS at *8 ("Issues pertaining to scope are reserved for later proceedings."). Thus, the G9000 Hole-in-the-Rock Road has not yet been fully adjudicated under the Quiet Title Act in Garfield County and the State of Utah's favor. Until then, Garfield County is not authorized to conduct the activities described in the Notice. *See* 28 U.S.C. § 2409a(b) ("[t]he United States shall not be disturbed in possession or control of any real property involved in any action . . . pending a final judgment or decree, the conclusion of any appeal therefrom, and [for] sixty days [thereafter]…").

*Second*, even if there had been a scope determination for the G9000 Hole-in-the-Rock Road, Garfield County and the State of Utah still do not have unilateral authority to make road improvements. Tenth Circuit precedent requires that the State and County consult with the United States over any desired improvements to the road and allow the United States to evaluate whether the proposed improvement(s) are "reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *SUWA v. BLM*, 725 F.3d at 748.

Many of the activities proposed in the Notice constitute improvements under Tenth Circuit law, not mere maintenance as Garfield County purports to describe them. The following table clearly identifies, in accordance with *SUWA v. BLM*, which activities listed by Garfield County are considered maintenance and which fall under the definition of improvements.

---

[2] *Kane County v. United States* is the caption for the lead case. However, the court's decision was also filed in *Garfield County v. United States*, 2:11-cv-1045.

*Letter from SUWA to Garfield County & the State of Utah*
*Proposed Maintenance & Improvements on the G9000 Hole-in-the-Rock Road*
*February 3, 2026*

| Proposed Activity | Activity Classification |
|---|---|
| Grading the roadway | Maintenance |
| Reshaping the roadway | Improvement (*e.g.*, widening the road or horizontally/vertically realigning the road) |
| Placement of bar ditches | Improvement (change in the nature of the road) |
| Cleaning of existing bar ditches | Maintenance |
| Installation of drainage features including culverts | Improvement |
| Replacement and maintenance of existing drainage features including culverts | Maintenance |
| Maintenance of lead off ditches | Maintenance |
| Placement of gravel to stabilize the road surface | Maintenance |
| Surfacing with a double chip seal treatment for 10 miles of the roadway | Improvement (upgrading the road surface from gravel to chip seal) |

*See* Notice at 1-2; *SUWA v. BLM*, 425 F.3d at 749. This means Garfield County must consult with BLM and cannot proceed with any proposed improvements listed above until:

1. BLM determines that the improvements are reasonable and necessary in light of the traditional uses of the Hole-in-the-Rock Road as of Oct. 21, 1976, and

2. BLM complies with all environmental review requirements mandated by the National Environmental Policy Act ("NEPA"), 42 U.S.C. 4331, *et seq*, and other applicable federal laws and regulations.

*SUWA v. BLM*, 425 F.3d at 748; *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 44 F.4th 1264, 1269 (10th Cir. 2022).

To be best of SUWA's knowledge, no such consultation has occurred, yet Garfield County has already unlawfully begun construction on improvements to the Hole-in-the-Rock Road and is therefore trespassing on federally managed public lands. *See SUWA v. BLM*, 425 F.3d at 747-48 (explaining that unilaterally making improvements to an R.S. 2477 right-of-way constitutes trespass). **Garfield County must immediately cease all road work and refrain from undertaking any of the aforementioned improvements on the G9000 Hole-in-the-Rock Road until consultation is complete.** If BLM ultimately determines the proposed improvements are not reasonable and necessary in light of the traditional uses of the Hole-in-the-Rock Road, then Garfield County will not be authorized to proceed with those improvements. *See SUWA v. BLM*, 425 F.3d at 748 ("[i]n the event of disagreement, the parties may resort to the courts.").

*Letter from SUWA to Garfield County & the State of Utah*
*Proposed Maintenance & Improvements on the G9000 Hole-in-the-Rock Road*
*February 3, 2026*

Please provide written confirmation by close of business on February 4, 2026 of Garfield County's and the State of Utah's assurances that it will abide by binding federal law and the demands in this letter. If Garfield County and the State are unwilling to provide such assurances, SUWA intends to pursue all available legal remedies that may be available to it. This letter is not intended to be a complete statement of SUWA's rights or remedies, all of which are expressly reserved.

SUWA appreciates your prompt attention to this matter.

Sincerely,

*Hanna Larsen*

Hanna Larsen
Steve Bloch
Southern Utah Wilderness Alliance
425 E 100 S
Salt Lake City, UT 84111
hanna@suwa.org
steve@suwa.org

Mitch Longson
Manning Curtis Bradshaw & Bednar PLLC
201 South Main Street, Ste. 750
Salt Lake City, UT 84111
mlongson@mc2b.com

Trevor Lee
Hoggan Lee Hutchinson
257 E 200 S, #1050
Salt Lake City, UT 84111
trevor@hlh.law

*Attorneys for the Southern Utah Wilderness Alliance*

Cc:
Joseph Kim, Trial Attorney
Environmental and Natural Resources Division
United States Department of Justice

Adé Nelson, Monument Manager
Grand Staircase-Escalante National Monument
United States Bureau of Land Management

# EXHIBIT 1



55 South Main Street | ·PO Box 77 | ·Panguitch, Utah 84759
Phone: (435) 676-8826 · | Fax: (435) 676-8239

Garfield County Public Works Department
P.O. Box 77
Panguitch, UT 84759

January 27, 2026

Adé Nelson
Monument Manager
Grand Staircase-Escalante National Monument
Bureau of Land Management
669 S. Highway 89A
Kanab, UT 84741

Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)

Dear Ms. Nelson,

Garfield County provides this notice to inform the Bureau of Land Management of planned maintenance, upgrades, and restoration activities on the G9000 Hole-in-the-Rock Road within Garfield County.

On July 23, 2025, the United States District Court for the District of Utah issued a Memorandum Decision and Order, Case No. 2:11-cv-01045, quieting title to the G9000 Hole-in-the-Rock Road in favor of Garfield County, Utah, and the State of Utah as a valid RS 2477 right of way. The court granted summary judgment to Garfield County and the State of Utah pursuant to the Quiet Title Act, 28 U.S.C. § 2409a. That decision confirms Garfield County's ownership interest in and responsibility for the road corridor.

Consistent with that ruling and with Garfield County's responsibility to provide safe and functional transportation infrastructure, the County intends to conduct maintenance, upgrades, and restoration activities on this road to address the significant volume of public and recreational traffic.

Planned work includes the following activities:

• Grading and reshaping the existing roadway and road prism to restore and maintain a proper running surface and drainage, including removal and reshaping of accumulated edge berms and restoration of proper cross slope.

• Placement and cleaning of bar ditches

• Installation, replacement, and maintenance of drainage features including culverts

• Maintenance of lead off ditches, sometimes referred to as relief ditches, to direct runoff away from the road prism

• Placement of gravel where needed to stabilize the road surface

The roadway grading and road prism improvements described above will extend to the Garfield County and Kane County line. Surfacing with a double chip seal treatment will be applied to approximately ten miles of the roadway.

The overall purpose of this work is to improve safety, durability, and drainage performance of the road, reduce long term maintenance costs, and address sustained and increasing traffic volumes, while maintaining the road within its established alignment and use as a transportation corridor. This work is also intended to reduce environmental impacts through improved dust abatement and reduced erosion of the road and surrounding landscape.

Garfield County is providing this notice as a consolation and in the interest of interagency coordination. Please contact me if you have questions or would like additional information regarding the planned work.

Sincerely,


Public Works Director
Garfield County

*County Commissioners*
Leland F. Pollock
Jerry A. Taylor
David B. Tebbs

Camille A. Moore, *Auditor/Clerk*
Brayton Talbot, *Recorder/Surveyor*
Joseph Thompson, *Assessor*
Gina Peterson, *Treasurer*

Gary D. Owens, *Justice Court Judge*
Barry L. Huntington, *Attorney*
James D. Perkins, *Sheriff*

# EXHIBIT 3

Case 2:10-cv-01073-CW   Document 859-1   Filed 02/23/26   PageID.18210   Page 2 of 3
Case 2:26-cv-00096   Document 1-3   Filed 02/05/26   PageID.29   Page 2 of 33
of 101

Wednesday, February 4, 2026 at 4:29:44 PM Mountain Standard Time

| | |
|---|---|
| **Subject:** | Re: G9000 Hole-in-the-Rock Road Maintenance & Improvements |
| **Date:** | Wednesday, February 4, 2026 at 4:05:53 PM Mountain Standard Time |
| **From:** | Tess Davis |
| **To:** | Hanna Larsen, dave.dodds@garfield.utah.gov, barry.huntington@garfield.utah.gov, Kathy Davis, Roger Fairbanks, mboshell@utah.gov |
| **CC:** | Steve Bloch, Trevor Lee, Mitch Longson |
| **Category:** | Privileged & Confidential |

-----This email originated from outside the organization-----

Hanna,

The work presently being undertaken by Garfield County on the G9000 Hole-in-the-Rock Road does not differ from its historical maintenance and operation of the road.

Thank you,

**K. Tess Davis**
*Assistant Attorney General*
*Deputy Director, Natural Resources Division*

State of Utah, Office of the Attorney General
Natural Resources Division, Public Lands Section
1594 W North Temple, 3rd Floor
Salt Lake City, UT 84116

C: (385) 261-0360 | E: kaitlindavis@agutah.gov

This e-mail message and all attachments transmitted with it are intended solely for the use of the addressee(s) and may contain legally privileged and confidential information. If the reader of the message is not the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of the message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to the message and please delete it from your computer.

**From:** Hanna Larsen <hanna@suwa.org>
**Sent:** Tuesday, February 3, 2026 5:40 PM
**To:** dave.dodds@garfield.utah.gov <dave.dodds@garfield.utah.gov>;
barry.huntington@garfield.utah.gov <barry.huntington@garfield.utah.gov>; Kathy Davis
<kathydavis@agutah.gov>; Tess Davis <kaitlindavis@agutah.gov>; Roger Fairbanks
<RFAIRBANKS@agutah.gov>; mboshell@utah.gov <mboshell@utah.gov>
**Cc:** Steve Bloch <steve@suwa.org>; Trevor Lee <trevor@hlh.law>; Mitch Longson
<mlongson@mc2b.com>
**Subject:** G9000 Hole-in-the-Rock Road Maintenance & Improvements

Good evening,

On behalf of the Southern Utah Wilderness Alliance, please find attached a letter concerning Garfield County's current road work on the G9000 Hole-in-the-Rock Road.

Sincerely,

**Hanna Larsen**
Staff Attorney
Southern Utah Wilderness Alliance
425 E 100 S
Salt Lake City, UT 84111
801.428.3992 | hanna@suwa.org

IMPORTANT: The information in this email is confidential attorney communication and may be privileged. It is intended only for the use of the addressee. If you receive this communication and are not the intended recipient, you are hereby notified that the copying or distribution of this communication is prohibited. If you have received this communication in error, please notify us by telephone and return the message to us at the above address.

# EXHIBIT 4

Wednesday, February 4, 2026 at 9:33:44 PM Mountain Standard Time

**Subject:** FW: [EXTERNAL] Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road
**Date:** Wednesday, February 4, 2026 at 4:59:39 PM Mountain Standard Time
**From:** Steve Bloch
**To:** Landon Newell, Hanna Larsen, Kya Marienfeld, Grant Stevens

**From:** Steve Bloch
**Sent:** Wednesday, February 4, 2026 4:59 PM
**To:** 'Heinlein, Thomas' <theinlei@blm.gov>; Preston, Matthew A <mpreston@blm.gov>; Barber, Harry A <hbarber@blm.gov>; Nelson, Ade K <aknelson@blm.gov>; Mendez, Joseph C <jmendez@blm.gov>
**Cc:** Scott Braden <scottb@suwa.org>; Neal Clark <neal@suwa.org>
**Subject:** RE: [EXTERNAL] Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road

Tom,

Thank you for your response.

To close the loop on one front, I spoke this afternoon with David Russell – Paria River District LEO – about the situation earlier today on the Hole in the Rock Road. We left it that David was going to call the Garfield County Sheriff and relay the events that transpired. David indicated that he felt this event might be a 1-off situation. I appreciate his optimism and certainly hope that there are no further instances of County employees blocking the road or attempting to intimidate members of the public traveling on BLM-managed lands.

On the other front, I received an email from Joe Kim @ DOJ this afternoon confirming BLM's receipt of my email to you, Matt, Harry and Ade about the activities occurring on Hole in the Rock Road and indicating that in response BLM asked Joe to forward Ade's letter sent to Garfield County about this matter. Ade's decision not to require consultation before any further improvements proceed, not to follow the monument management plan as required by FLPMA, and not to prevent unnecessary or undue degradation, is contrary to law.

Steve
Stephen Bloch (*he/him*)
Legal Director
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, Utah 84111
Phone: 801 428 3981
Fax: 801 486 4233
steve@suwa.org
"Surely, in the light of history, it is more intelligent to hope rather than to fear, to try rather

than not to try. For one thing we know beyond all doubt: Nothing has ever been achieved by the person who says, 'It can't be done.'" – Eleanor Roosevelt

IMPORTANT: The information in this e-mail is attorney communication
and privileged.  It is intended only for the use of the addressee.
If you receive this communication and are not the intended
recipient, you are hereby notified that the copying or
distribution of this communication is prohibited.  If you have
received this communication in error, please notify us
by telephone and return the message to us at the above address.

**From:** Heinlein, Thomas <theinlei@blm.gov>
**Sent:** Wednesday, February 4, 2026 3:01 PM
**To:** Steve Bloch <steve@suwa.org>; Preston, Matthew A <mpreston@blm.gov>; Barber, Harry A <hbarber@blm.gov>; Nelson, Ade K <aknelson@blm.gov>; Mendez, Joseph C <jmendez@blm.gov>
**Cc:** Scott Braden <scottb@suwa.org>; Neal Clark <neal@suwa.org>
**Subject:** Re: [EXTERNAL] Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road

-----This email originated from outside the organization-----

Hi Steve,

I'm in Grand Junction at the moment tending to a few medical appointments and have your email in hand.

First, you can expect outreach from BLM Law Enforcement (Paria District/GSENM) regarding the issue you described from earlier today on HITR Road.

I will be in touch as soon as I can regarding your concerns about the County's proposed activities you described.

Thank you,
Tom

Tom Heinlein
State Director (Acting)
Bureau of Land Management
Utah State Office
(970) 730-7450

**From:** Steve Bloch <steve@suwa.org>
**Sent:** Wednesday, February 4, 2026 1:36 PM
**To:** Heinlein, Thomas <theinlei@blm.gov>; Preston, Matthew A <mpreston@blm.gov>; Barber, Harry A <hbarber@blm.gov>; Nelson, Ade K <aknelson@blm.gov>
**Cc:** Scott Braden <scottb@suwa.org>; Neal Clark <neal@suwa.org>
**Subject:** [EXTERNAL] Urgent: Dangerous and Unfolding Situation at Hole in the Rock Road

---

> This email has been received from outside of DOI - Use caution before clicking on links, opening attachments, or responding.

---

Dear Acting Director Heinlein,

I am writing to you regarding a dangerous, unfolding situation on the Hole in the Rock Road in Garfield County. Please contact me at your earliest convenience to discuss this matter: 801.859.1552.

As you know, on Monday, Feb. 3, the Department of Justice provided SUWA and others a copy of a letter sent by Garfield County on January 27 to Ade Nelson, the Grand Staircase-Escalante National Monument manager. As detailed in the letter and verified on-the-ground, Garfield County is currently conducting and plans to continue conducting unauthorized road improvements on the Hole in the Rock Road including installation of new culverts (where no culverts were previously located), changes to the vertical and horizontal alignment of the road, and chip sealing a 10 mile stretch of the road (changing the surface from dirt to chip seal). **As detailed in SUWA's February 3 letter to the County, each of these described activities constitute improvements, not maintenance, of the road and as such BLM must direct the county to cease its work immediately and consult with BLM before taking any further action. Among other things, the point of consultation is to allow BLM to fulfil its statutory obligations to protect monument objects and values and to determine if the County's proposed activities are both reasonable and necessary.**

Consulting with BLM is not only the law as detailed by the Tenth Circuit Court of Appeals in *SUWA v. BLM*, 425 F.3d 735 (10th Cir. 2005), it is also required by the Grand Staircase-Escalante Approved Monument Management Plan and Record of Decision. Specifically, the Plan/ROD states at 2-70 as follows:

| TTM-07 | **Maintenance:** Designated routes could be maintained to meet public health and safety needs and/or to protect GSENM objects and |
|---|---|

resources. Deviations from current route maintenance levels on designated routes, to provide for public health and safety needs and/or to protect GSENM objects, will be considered on a case-by-case basis. **Improvements:** Improvements to routes, including, but not limited to, Hole-in-the-Rock Road, Cottonwood Road, and House Rock Valley Road, to provide for public health and safety needs and/or to protect GSENM objects <u>will be considered during plan implementation on a case-by-case basis</u>, <u>in accordance with applicable laws, regulations, and policy. The BLM's consideration of any proposed improvement will include an opportunity for public participation prior to the issuance of a final decision.</u> **For purposes of this management action, an "improvement" goes beyond preserving the status quo of the road or trail and includes the widening of the road or trail; the horizontal or vertical alignment of the road or trial; the installation of (as distinguished from cleaning, repair, or replacement in kind of already existing) bridges, culverts, and other drainage structures; and any significant changes in the surface composition of the road or trail.**

**In addition, a SUWA staff member was traveling the Hole in the Rock Road this morning (Feb. 4) to assess the nature and extent of the County's work. During that trip he was confronted by two County workers who effectively blocked the road with their equipment, stepped out of their machines and our staff member reports that he felt threatened and intimidated by the County workers.** Our staff member was able to exit the situation by driving off the road and then make his way to Highway 12. **I urge you to immediately be in touch with County leadership and law enforcement to get a handle on this unsafe and unacceptable situation on BLM-managed lands.**

Thank you for your immediate attention to this matter.

Stephen Bloch (*he/him*)

Legal Director
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, Utah 84111
Phone: 801 428 3981
Fax: 801 486 4233
steve@suwa.org
"Surely, in the light of history, it is more intelligent to hope rather than to fear, to try rather
than not to try. For one thing we know beyond all doubt: Nothing has ever been achieved by
the person who says, 'It can't be done.'" – Eleanor Roosevelt

IMPORTANT: The information in this e-mail is attorney communication
and privileged. It is intended only for the use of the addressee.
If you receive this communication and are not the intended
recipient, you are hereby notified that the copying or
distribution of this communication is prohibited. If you have
received this communication in error, please notify us
by telephone and return the message to us at the above address.

# EXHIBIT 5

Wednesday, February 4, 2026 at 9:31:37 PM Mountain Standard Time

| | |
|---|---|
| **Subject:** | Hole in the Rock Road |
| **Date:** | Wednesday, February 4, 2026 at 3:42:20 PM Mountain Standard Time |
| **From:** | Kim, Joseph (ENRD) |
| **To:** | Steve Bloch |
| **CC:** | Hanna Larsen, michaelsmithsoldoi (Vendor), Schulte, Elizabeth A, Melinda Moffitt (mmoffitt@blm.gov) |
| **Attachments:** | 2026.02.04 HITR RS2477 Additional Info Request_signed.pdf |

-----This email originated from outside the organization-----

Steve:

BLM has received your email about the Hole in the Rock Road, and asked me to forward to you their attached response to the County's January 27 letter.

Please let us know if you have any questions.

Joe

# EXHIBIT 6





# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
### Paria River District
Grand Staircase-Escalante National Monument
669 S. Highway 89A
Kanab, UT 84741

February 4, 2026

In Reply Refer To:
2800 (UT-P01)

Garfield County
David Dodds
55 S. Main Street
Panguitch, UT 84759

Mr. Dodds,

The Bureau of Land Management (BLM), Grand Staircase-Escalante National Monument (GSENM), received Garfield County's January 27, 2026, letter regarding maintenance and improvements to portions of Hole-in-the-Rock (HITR) Road in Garfield County. On January 30, 2026, the BLM also discovered that Garfield County has begun some of the planned road work. We write to request additional details about Garfield County's proposed road work and to engage in consultation regarding any proposed road work that qualifies as an improvement to HITR Road.

On July 23, 2025, the U.S. District Court for the District of Utah issued an order quieting title to the Garfield County portion of HITR Road in favor of Garfield County and the State of Utah, *Garfield County, Utah v. United States*, Case No. 2:11-cv-01045 (Memorandum Decision and Order). However, the district court did not provide any explanation for its title adjudication and specifically indicated that it would determine the appropriate scope relating to this road later. The BLM acknowledges Garfield County's title to HITR Road, but we also highlight that scope has yet to be determined.

As you are aware, the holder of an R.S. 2477 right-of-way must consult with the BLM before conducting proposed improvements beyond routine maintenance, which is articulated in relevant, applicable court cases. In particular, when an R.S. 2477 right-of-way holder is proposing:

> to undertake any improvements in the road along its right of way, beyond mere maintenance, it must advise the federal land management agency of that work in advance, affording the agency a fair opportunity to carry out its own duties to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the rights of way as of October 21, 1976, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands. The initial determination of whether the construction work falls within the scope of

Garfield County                                                                    2

an established right of way is to be made by the federal land management agency,
which has an obligation to render its decision in a timely and expeditious manner.

*SUWA v. BLM*, 425 F.3d 735, 748 (10th Cir. 2005). Such an obligation reflects the principle
that an easement holder should exercise its rights in a way that does not unreasonably
interfere with the underlying landowner.

Garfield County's January 27, 2026, letter seems to propose both maintenance and
improvement actions for HITR Road. To ensure we meet our mutual obligations, the BLM
would appreciate the opportunity to coordinate with Garfield County and to better understand
what is being proposed. Specifically, this coordination will allow the BLM to meet its
responsibilities to consult on those proposed activities qualifying as improvements. This
coordination is especially important because the district court has not determined the scope
of HITR Road.

To this end, the BLM is requesting further information it believes can help to fully evaluate
whether any proposed improvements are reasonable and necessary. Such information could
include any engineering plans and specifically what portion of the road is proposed to be chip
sealed.

Additionally, any information regarding the specific reasons for the proposed improvements
would assist with the consultation.

Finally, the BLM is willing to work with Garfield County to expeditiously engage in
consultation regarding any proposed improvements. Proposed improvements should wait
until after such consultation has occurred.

We look forward to coordinating with you. If you have any questions about the additional
information requested, please contact me at (435) 644-1244 or by e-mail at aknelson@blm.gov.

Sincerely,

Adé K. Nelson
Monument Manager

Stephen H.M. Bloch (#7813)
Hanna Larsen (#18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
steve@suwa.org
hanna@suwa.org

*Attorneys for Plaintiff*
*Southern Utah Wilderness Alliance*

Mitch M. Longson (#15661)
MANNING CURTIS BRADSHAW
& BEDNAR PLLC
201 South Main Street, Suite 750
Salt Lake City, UT 84111
Telephone: (801) 363-5678
mlongson@mc2b.com

Trevor J. Lee (#16703)
HOGGAN LEE HUTCHINSON
257 E 200 S, #1050
Salt Lake City, UT 84111
Telephone: (435) 615-2264
trevor@hlh.law

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>GARFIELD COUNTY, UTAH, a political subdivision, the STATE OF UTAH, the UNITED STATES BUREAU OF LAND MANAGEMENT, and the UNITED STATES DEPARTMENT OF THE INTERIOR<br><br>Defendants. | MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT<br><br>Case No. 2:26-cv-00096<br><br>Judge |

## STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Southern Utah Wilderness

Alliance ("SUWA") hereby moves the Court for a temporary restraining order and preliminary

injunction enjoining Defendants Garfield County, Utah, the State of Utah, (collectively "Garfield

County" or "the County") and the Bureau of Land Management ("BLM") from authorizing or constructing improvements to the Hole-in-the-Rock Road (G9000) until Defendants have adhered to all consultation requirements mandated by *Southern Utah Wilderness Alliance v. Bureau of Land Management* ("*SUWA v. BLM*"), 425 F.3d 735 (10th Cir. 2005). Alternatively, SUWA seeks emergency relief under the All Writs Act, 28 U.S.C § 1651(a).

Garfield County is the co-owner of a partially adjudicated Revised Statute 2477 ("R.S. 2477") right-of-way ("ROW") for a 15-mile stretch of the Hole-in-the-Rock Road, running from the junction with State Highway 12 south to the Kane County line. *See Kane County, Utah v. United States*, 2025 U.S. Dist. LEXIS 141248, *9 (D. Utah 2025) ("*HITR Decision*"). The scope of the County's ROW has not yet been determined, and the case is still pending before the court. *Id.* at *8. Despite not owning a fully adjudicated ROW, Garfield County has already begun to conduct extensive improvements on the Hole-in-the-Rock Road, including work that extends beyond the current footprint of the road surface, such as widening and grading the road, adding new road base, and installing new culverts and other drainage features. Garfield County also plans to improve the surface of the road from dirt and gravel to chip seal (similar to pavement). The County started this work without first consulting with BLM—the federal agency responsible for managing the public lands across which the Hole-in-the-Rock Road traverses.

For its part, BLM has known that Garfield County has been actively working on the Hole-in-the-Rock Road since at least January 30, 2026, has recognized that at least a portion of the road work qualifies as "improvements," not "maintenance" (triggering the obligation to consult) and is aware of its consultation obligations under *SUWA v. BLM* but has done nothing to stop the County from constructing improvements to the Hole-in-the-Rock Road. *See* Letter from

Adé Nelson, Bureau of Land Mgmt., to David Dodds, Garfield Cnty. (Feb. 4, 2026) ("BLM

Letter") (ECF No. 1-6). As a result, BLM has violated the Federal Land Policy and Management

Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, and its implementing regulations, by failing to

prevent unnecessary and undue degradation of the Grand Staircase-Escalante National

Monument and the objects protected within the Monument.

Indeed, in the context of road work involving R.S. 2477 ROWs, the Tenth Circuit has

recognized that the failure to consult "provide[s] a basis for prompt injunctive relief." *SUWA v.*

*BLM*, 425 F.3d at 749 (emphasis added). Without immediate injunctive relief or relief under the

All Writs Act, the improvements to the Hole-in-the-Rock Road will certainly be completed

before the Court can hear and resolve the merits of SUWA's complaint. The improved road will

come at the cost of permanent harm to wilderness-quality lands in Grand Staircase-Escalante

National Monument and other monument resources and values. In particular, expanding the

width of the road surface and adding ditches and drainage features on the sides of the road will

result in permanent damage to the BLM-identified lands with wilderness characteristics

("LWC") surrounding the Hole-in-the-Rock Road that are managed to minimize impacts to

wilderness values.[1] In addition, improved road surfaces such as chip seal or pavement lead to

increased visitation and unauthorized off-road travel, resulting in illegal motorized incursions

and a loss of naturalness and solitude in the adjacent Devils Garden Instant Study Area and

---

[1] The Grand Staircase-Escalante National Monument Management Plan divides BLM-identified
LWC into three categories: LWC managed to protect wilderness characteristics, LWC managed
to minimize impacts to wilderness characteristics, and LWC managed for other discretionary
uses. *See* Bureau of Land Mgmt., *Grand Staircase-Escalante National Monument Record of*
*Decision and Approved Resource Management Plan*, 2-15 (Jan. 2025) ("GSENM RMP"),
available at https://eplanning.blm.gov/Documents/?id=91d264cd-a7f2-f011-8406-
001dd80ef717&spid=8fe7277f-a8f2-f011-8407-001dd80db62a (last visited February 5, 2026).

nearby North Escalante Canyons/The Gulch Wilderness Study Area and LWC that is managed to protect wilderness qualities. These impairments are precisely the type of environmental damage the Supreme Court has held "can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545 (1987); *see also Davis v. Mineta*, 302 F.3d 1104, 1115 (10th Cir. 2002).

As demonstrated below, SUWA meets each of the four elements necessary for a temporary restraining order and preliminary injunction. *First*, SUWA is likely to succeed on the merits because Defendants have failed to engage in, let alone complete consultation over the proposed road improvements prior to Garfield County beginning work on the Hole-in-the-Rock Road and, as a result, BLM has failed to prevent unnecessary and undue degradation to the Grand Staircase-Escalante National Monument. *Second*, SUWA will suffer irreparable harm if the road work is not enjoined and the Hole-in-the-Rock Road is widened, resurfaced, and otherwise improved as planned. *Third*, the balance of harms weighs heavily in SUWA's favor, and *fourth* the public interest strongly favors an injunction.

SUWA, in the alternative, respectfully requests the Court exercise its authority pursuant to the All Writs Act, 28 U.S.C § 1651(a), to preserve the status quo and enjoin Defendants from authorizing or constructing improvements to the Hole-in-the-Rock Road until the parties have an opportunity to litigate and the Court to decide the merits of SUWA's claims.

## FACTUAL BACKGROUND

**I.     Grand Staircase-Escalante National Monument and the Hole-in-the-Rock Road**

Grand Staircase-Escalante National Monument was first designated as a national

monument in 1996 to protect the incredible scientific, ecological, and paleontological resources

within its 1.9 million acres. *See generally* Proclamation No. 6920, 61 Fed. Reg. 50223 (Sept. 18,

1996); Proclamation No. 10286, 86 Fed. Reg. 57335 (Oct. 21, 2021). This crown jewel of our

nation's public lands was the first monument managed by BLM, *ids.*, and the first unit in the

agency's now robust and expansive "National Conservation Lands" program. Since its

establishment, the Monument has preserved a remarkable ecosystem at the landscape-level and

set the stage for continued scientific discoveries about human, paleontological, and geologic

history on the Colorado Plateau.

Grand Staircase-Escalante National Monument is "perhaps the richest floristic region in

the Intermountain West, spanning five life zones and supporting diverse, rare, and endemic

populations of plants and a diversity of animals, as well as unusual and diverse soils that support

communities of mosses, lichens, and cyanobacteria." 86 Fed. Reg. at 57335 (internal quotation

marks omitted). Its "rich mosaic of objects of historic and scientific interest" include "fossil-rich

formations in the Kaiparowits Plateau" and remnants of "the area's rich human history, spanning

from the indigenous people and cultures who made this area home to Anglo-American explorers

and early Latter-day Saint pioneers." *Id.*

The Hole-in-the-Rock Road is one of the historical objects protected in the Grand

Staircase-Escalante National Monument that runs through the heart of the Kaiparowits Plateau,

connecting Escalante, Utah to the Hole-in-the-Rock historic marker in Glen Canyon National

Recreation Area. It "follows the route that Latter-day Saint pioneers constructed between 1879 and 1880 when crossing southern Utah to establish a wagon route between Escalante and southeast Utah settlements." *Id.* The Garfield County portion of the road is approximately twenty miles long, sixteen of which are within the Monument. *See* S. Utah Wilderness All., Map of Wilderness Quality Lands and the Hole-in-the-Rock Road (Feb. 4, 2026) (attached as Ex. 1); Declaration of Delaney Callahan (attached as Ex. 2). Within the Monument, the road is surrounded by BLM-identified LWC and the North Escalante Canyons/The Gulch WSA is a mere half mile east of the road. *See id.*

## II.  The Hole-in-the-Rock Road R.S. 2477 Claim

Garfield County and the State of Utah first alleged an R.S. 2477 claim to the Hole-in-the-Rock Road in 2011. *See generally*, Complaint, *Garfield County v. United States*, 2:11-cv-1045 (D. Utah) (ECF No. 2). For the majority of the time since then, the case has been stayed pending a "Bellwether" process to resolve R.S. 2477 claims in Kane County, Utah. However, the G9000 Hole-in-the-Rock Road was subsequently added to the Bellwether process. *HITR Decision* at *6. In 2025, the district court granted title to claimants Garfield County and the State of Utah, affirming that they were joint title holders to the R.S. 2477 ROW for the Garfield County portion of the Hole-in-the-Rock Road.[2] *Id.* at 9. However, the court expressly declined to make a determination as to the scope of the ROW at that time, instead reserving "[i]ssues pertaining to scope" for "future proceedings." *Id.* Such proceedings have not yet happened and thus, the State and County's R.S. 2477 ROW is not fully adjudicated.

---

[2] The requirements for adjudicating and quieting title to a claimed R.S. 2477 ROW involve both a title determination and a scope determination and are explained in detail in Argument Section I.A.i, *infra*.

### III.    The Present Notice and Construction of Improvements to the Hole-in-the-Rock Road

Despite not holding a fully adjudicated ROW to the Hole-in-the-Rock Road, and thus not knowing the scope of the ROW, Garfield County notified BLM on January 27, 2026 of its intent to perform "maintenance, upgrades, and restoration activities" on the road. Letter from David Dodds, Garfield Cnty., Utah to Adé Nelson, Bureau of Land Mgmt., *Re: Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)*, 1 (Jan. 27, 2026) ("Notice") (ECF No. 1-1).[3] Such activities include grading the roadway, reshaping the roadway, placing and cleaning bar ditches, installing, replacing, and maintaining drainage features such as culverts, maintaining lead off ditches, placing gravel to stabilize the road surface, and upgrading the surface of the road to a chip seal. *See id.* at *1-2.

Importantly, although the Notice purports to describe all of these activities as "maintenance," many are, in fact, improvements" under Tenth Circuit law,[4] including but not limited to "reshaping the existing roadway and road prism," "[i]nstallation…of drainage features including culverts," and "[s]urfacing with a double chip seal treatment." *Id.* at 1-2. As explained in more detail in Argument Section I.A.i, *infra*, the County, even if it had a fully-adjudicated ROW over the route, is not authorized to conduct improvement activities without first consulting

---

[3] SUWA learned of this Notice on February 2, 2026.

[4] "Improvements" are defined to include

> the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.)

*SUWA v. BLM*, 725 F.3d at 749.

with BLM. No such consultation has occurred. *See* BLM Letter. Yet, Garfield County is actively working on the road and, in fact, conducting such illegal improvement activities. *See* Declaration of Jack Hanley ¶¶ 15-19 (attached as Ex. 3). BLM is aware of this ongoing road work and its duty to consult with Garfield County over the proposed improvements but has done nothing to stop the County from continuing to work on the road. *See generally* BLM Letter.

On February 3, the day after SUWA learned of the County's plans, SUWA sent a letter via email to Garfield County and the State of Utah explaining how and why the County's planned road work violates federal law and demanding they stop all road work unless and until they complete consultation with BLM. *See generally* Letter from Hanna Larsen, *et al.*, S. Utah Wilderness All. to David Dodds, *et al.*, Garfield County, *Re: Garfield County's January 27, 2026 "Notice of Maintenance Activities on G9000 Hole-in-the-Rock Road (RS 2477 Right of Way)"* (Feb. 3, 2026) (ECF No. 1-2). SUWA's letter also warned the recipients of SUWA's intent to pursue legal action if Garfield County did not cease all road work. *Id.* at 4. The State and County's sole response to SUWA's letter effectively declined to cease all road work, stating "[t]he work presently being undertaken by Garfield County on the G9000 Hole-in-the-Rock Road does not differ from its historical maintenance and operation of the road." Email from K. Tess Davis, State of Utah, to Hanna Larsen *et al.*, S. Utah Wilderness All., *Re: G9000 Hole-in-the-Rock Road Maintenance & Improvements* (Feb. 4, 2026) (ECF No. 1-3). This statement is factually inaccurate because, *inter alia*, the Hole-in-the-Rock Road has <u>never</u> been chip sealed but is instead a mix of dirt road with spot gravel. As of the date of this filing, to the best of SUWA's knowledge, Garfield County's road crew is continuing to work on the Hole-in-the-Rock Road as described in the Notice.

This lawsuit and Motion for a Temporary Restraining Order and Preliminary Injunction

follows.

## ARGUMENT

I.    **SUWA Meets the Test of Issuance of a Temporary Restraining Order and Preliminary Injunction**

To obtain a preliminary injunction, a plaintiff must show the following:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999) (citations

omitted); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The final two "factors

merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

This same test applies to a request for a temporary restraining order. *See, e.g., Bauchman v. W.

High Sch.*, 900 F. Supp. 248, 250 (D. Utah 1995). SUWA meets each prong of this test. The

Court should therefore enjoin Defendants from improving the Hole-in-the-Rock Road until

consultation consistent with *SUWA v. BLM* is initiated and completed and BLM makes an

informed decision as to whether and to what extent the improvements may be made.

A.    **SUWA is Likely to Succeed on the Merits**

A plaintiff seeking a temporary restraining order or preliminary injunction "must show a

likelihood of success on the merits rather than actual success." *Amoco Prod. Co.*, 480 U.S. at

546, n.12. Conclusions of law in such circumstances are based on "procedures that are less

formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v.*

*Camenisch*, 451 U.S. 390, 395 (1981). SUWA need not "prove its case in full," and conclusions of law "are not binding at trial on the merits." *Id.*

SUWA is likely to succeed on the merits of both of its claims because Defendants are clearly and unequivocally in violation of the black letter law set forth in *SUWA v. BLM* and the Federal Defendants have failed to prevent unnecessary and undue degradation in violation of FLPMA.

i.   *Defendants Failed to Consult on the Proposed Improvements to the Hole-in-the-Rock Road in Violation of Federal Caselaw.*

Quieting title to an R.S. 2477 ROW under the Quiet Title Act, 28 U.S.C. § 2409a, requires both a title determination in favor of the claimant and a scope determination before the ROW is deemed adjudicated. *Kane Cnty. v. United States*, 928 F.3d 877, 894 (10th Cir. 2019) (explaining that "scope is inherent in the quiet title process... [b]ut the district court must determine title and scope in separate steps."); *see also Kane Cnty. v. United States*, 772 F.3d 1205, 1225 (10th Cir. 2014) (remanding for the district court to reexamine the scope of three ROWs while leaving the title determinations of those ROWs undisturbed). Without the necessary scope determination, there is no way to know the extent of the title determination. Until both title and scope have been adjudicated, "[t]he United States shall not be disturbed in possession or control of any real property involved in any action . . ." 28 U.S.C. § 2409a(b).

Moreover, even with a scope determination, an R.S. 2477 ROW holder does not have unilateral authority to make road improvements. *SUWA v. BLM*, 725 F.3d at 746 (explaining that even fully adjudicated R.S. 2477 ROWs "across federal lands are subject to regulation by the relevant federal land management agencies."). Tenth Circuit precedent requires that the State and County consult with the United States over any desired improvements to the road. *Id.* at 748.

10

Under this framework, there are three steps to the consultation process the R.S. 2477 ROW

holder must take:

> (1) advise "the federal land management agency of [such] work in advance";
>
> (2) permit the agency a chance "to determine whether the proposed improvement is reasonable and necessary in light of the traditional uses of the [ROW] as of October 21, 1976" [when R.S. 2477 was repealed]; and
>
> (3) allow the agency the opportunity to study the "potential effects" of the improvements, and if needed, to "formulate alternatives" that protect the land.

*S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 44 F.4th 1264, 1269 (10th Cir. 2022)

(quoting *SUWA v. BLM*, 425 F.3d at 748). If, after consulting with the ROW holder, the federal

land management agency (*i.e.*, BLM) determines the proposed improvements are <u>not</u> reasonable

and necessary in light of traditional uses, the ROW holder is not authorized to proceed with

implementing those improvements. *See SUWA v. BLM*, 425 F.3d at 748 ("[i]n the event of

disagreement, the parties may resort to the courts.").

Importantly, the Tenth Circuit has also clearly defined what types of road work activities

constitute "improvements" (which requires advance consultation) and what are considered

"routine maintenance" (which does not require advance consultation). "Improvements" are

defined to include

> the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.)

*SUWA v. BLM*, 725 F.3d at 749. "Maintenance," on the other hand "preserv[es] the status quo"

of the "existing road, including the physical upkeep or repair of wear or damage whether from

natural or other causes, maintaining the shape of the road, grading it, making sure that the shape

of the road permits drainage [, and] keeping drainage features open and operable." *Id.* (alternations in original).

Drawing the line between maintenance and improvements "based on preserving the status quo…protects existing uses without interfering unduly with federal land management and protection." *Id.* (cleaned up). In short, if changes to an R.S. 2477 road "are contemplated, it is necessary to consult, and the failure to do so will provide a basis for prompt injunctive relief. 'Bulldoze first, talk later' is not a recipe for constructive intergovernmental relations or intelligent land management." *Id.* (emphasis added).

Here, Garfield County, as discussed, does not have a fully adjudicated ROW over the Hole in the Rock Road. That means it is not entitled to undertake improvements on the road, regardless of consultations requirements. *See* 28 U.S.C. § 2409a(b). SUWA is likely to prevail on this basis alone.

Alternatively, even if the County had a fully adjudicated ROW, it has only met one of the three consultation elements—advising BLM of such work in advance. Garfield County's Notice outlines several planned upgrades to the Hole-in-the-Rock Road that clearly constitute improvements. Specifically, Garfield County intends to reshape the road (*e.g.*, widening the road and/or horizontally/vertically realigning the road), place bar ditches (*i.e.*, change the nature of the road), install new drainage features, including culverts, and upgrade ten miles of the road surface from dirt/gravel to a double chip seal. *See* Notice at 1-2. However, Garfield County has proceeded to ignore the latter two consultation requirements by promptly beginning construction activities without working with BLM "to determine whether the propose improvement is reasonable and necessary in light of the traditional uses" of the Hole-in-the-Rock Road, let alone

12

"allow the agency the opportunity to study the 'potential effects' of the improvements, and if needed, to 'formulate alternatives' that protect the lands." *SUWA v. BLM*, 425 F.3d at 748.

For example, on February 4, 2026, a representative of SUWA, Mr. Jack Hanley, visited the road and saw that the road surface had very recently been widened. Hanley Decl. ¶¶ 15-17, 19. Mr. Hanley observed several new culverts with evidence of machinery extending well beyond the width of the road and saw the Garfield County road crew actively installing another culvert. *Id.* ¶¶ 15-17, 19. When three members of the road crew approached Mr. Hanley, they told him "we are going to get in trouble for this," referring to the road work, and "they don't like it when we do upgrades." *Id.* ¶ 18 (emphasis added). These statements demonstrate that Garfield County is not only aware that the work they are doing constitutes improvements to the Hole-in-the-Rock Road, but that they are knowingly constructing the improvements in violation of the law.

Lastly, although BLM has been aware of the County's on-the-ground impacts and improvements to the Hole-in-the-Rock Road since January 30, 2026, BLM has not taken action to stop the road work happening on the ground. BLM Letter at 1. BLM's February 4 letter simply asked for more details and suggested that "[p]roposed improvements should wait until after...consultation has occurred." *Id.* at 2. Notably, the letter recognized that at least some of the County's road work constituted "improvements" but nonetheless BLM did not demand that the County cease the construction of improvements to the Hole-in-the-Rock Road unless and until consultation is complete and BLM has made a determination as to whether the proposed improvements are reasonable and necessary. *See generally id.* Absent such a demand (and

13

enforcement of that demand), BLM is effectively complicit in the County's unlawful activities and therefore also in violation of *SUWA v. BLM.*

      ii.    *BLM Has Failed to Prevent Unnecessary and Undue Degradation in Violation of FLPMA.*

In addition to Defendants' failure to consult discussed above, BLM has failed to prevent unnecessary or undue degradation in violation of FLPMA, a separate basis for injunctive relief.

FLPMA is the "organic act" of BLM and governs the agency's management of public lands and resources. In FLPMA, Congress declared that is the policy of the United States to manage the public lands "in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values" and that, "where appropriate, will preserve and protect certain public lands in their natural condition." 43 U.S.C. § 1701(a)(8). FLPMA requires that BLM, in managing the public lands, "by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." *Id.* § 1732(b).

In the context of R.S. 2477 ROW consultation, as explained above, BLM is required to "determine whether the proposed improvement [was] reasonable and necessary in light of the traditional uses of the right-of-way, to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *SUWA*, 425 F.3d at 748. This is because

> [u]nless [the agency] knows in advance when right-of-way holders propose to change the width, alignment, configuration, surfacing, or type of roads across federal land, the BLM cannot effectively discharge its responsibilities to determine whether the proposed changes are reasonable and necessary, whether they would impair or degrade the surrounding lands, and whether modifications in the plans should be proposed.

*Id.* at 747.

<div align="center">14</div>

Here, because BLM has declined to prevent Garfield County from engaging in road improvements to the Hole-in-the-Rock Road prior to consulting over the road, BLM has not properly discharged its responsibilities. In particular, BLM has failed "to study potential effects, and if appropriate, to formulate alternatives that serve to protect the lands." *SUWA v. BLM*, 425 F.3d 748. Because BLM failed to analyze and understand the environmental impacts of the County's road improvements or to formulate alternatives thereto that would reduce those impacts, it has sanctioned environmental degradation and destruction that otherwise would not have occurred. Consequently, the agency failed to "take any action necessary to prevent unnecessary or undue degradation" of Grand Staircase-Escalante National Monument. 43 U.S.C. § 1732(b).

\*\*\*

In sum, Defendants have willfully violated both Tenth Circuit precedent (*i.e.*, *SUWA v. BLM*) mandating consultation over improvements to R.S. 2477 ROWs and, with respect to Federal Defendants, FLPMA's duty to prevent unnecessary or undue degradation of Grand Staircase-Escalante National Monument. It is therefore likely that SUWA will succeed on the merits of this lawsuit.

**B.     SUWA Will Suffer Irreparable Harm Absent an Injunction**

Harm is irreparable when a court would be unable to compensate the plaintiff or otherwise remedy the injury before a determination on the merits. *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016). The immediate damage to the environment from the County's road work is precisely the type of irreparable harm that courts routinely enjoin. The Supreme Court has stated that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money

15

damages and is often permanent or at least of long duration, i.e., irreparable." *Amoco Prod. Co.*,

480 U.S. at 545; *see also Catron Cnty. v. U.S. Fish & Wildlife Serv.*, 75 F.3d 1429, 1440 (10th

Cir. 1996) (stating that "environmental injury usually is of an enduring or permanent nature,

seldom remedied by money damages and generally considered irreparable"); *Davis*, 302 F.3d at

1115 (same) (quoting *Amoco Prod. Co.*, 480 U.S. at 545).

In this case, Garfield County's unauthorized improvements to the Hole-in-the-Rock Road

will result, and in fact have already resulted, in permanent harm to wilderness-quality lands in

Grand Staircase-Escalante National Monument and monument objects and resources. In

particular, expanding the width of the road surface and adding ditches and drainage features on

the sides of the road will result in permanent incursions into the adjacent BLM-identified LWC

surrounding the Hole-in-the-Rock Road that are managed to minimize impacts to the LWC. The

improvements that are planned and currently being constructed require the use of heavy

machinery (*e.g.*, bulldozers, road graders, tractors) that have already ripped out or otherwise

damaged mature juniper trees near the side of the road. *See* Hanley Decl. ¶ 16 (photos 2 & 3).

Likewise, widening the road and driving the heavy machinery significantly off the roadway

destroys other native vegetation and biological soil crusts—two components of the healthy and

diverse ecosystem that is, itself, a protected object under the Grand Staircase-Escalante National

Monument proclamation. 86 Fed. Reg. at 57335-36. On its face, these activities constitute

significant, long term environmental damage. Hanley Decl. ¶¶ 20-21.

In addition, improved road surfaces such as chip seal or pavement are essentially

permanent changes to the road. These permanent changes lead to increased visitation and

unauthorized off-road travel, resulting in illegal motorized incursions and a loss of naturalness

and solitude in the nearby North Escalante Canyons/The Gulch Wilderness Study Area and LWC

that is managed to protect wilderness qualities. Hanley Decl. ¶¶ 20-22; Declaration of Kya

Marienfeld ¶¶ 16-17 (attached as Ex. 4). Improved road surfaces also cause detrimental impacts

to wildlife due to faster travel speeds that increase the risk of animal-vehicle collisions and

habitat fragmentation resulting from the unnatural appearance and surface of the road. *Id.* ¶ 16;

*see also* U.S. Fed. Highway Admin., *Wildlife Crossing Structure Handbook Design and*

*Evaluation in North America, Chapter 2 – Wildlife Populations and Road Corridor Intersections*

(2011)[5] ("Road construction and expansion result in loss of wildlife habitat by transforming

natural habitats to pavement, dirt tracks, and cleared roadsides or [ROWs].").

     SUWA members will be—and are currently—irreparably harmed by the ongoing

unauthorized improvements to the Hole-in-the-Rock Road, as well as the long term irreversible

damage to the character of the road and surrounding wilderness-quality lands. *See, e.g.*, Hanley

Decl. ¶¶ 20-22; Marienfeld Decl. ¶¶ 15-17. As the Tenth Circuit recognized, an immediate

injunction halting Garfield County's work on the Hole-in-the-Rock Road is necessary to preserve

the *status quo* while the Court considers the merits of SUWA's claims. *See SUWA v. BLM*, 725

F.3d at 749 (explaining that unauthorized road improvements "provide[s] a basis for prompt

injunctive relief.").

    **C.**   **The Balance of Harms and Public Interest Weigh Strongly in Favor of SUWA**

     "Environmental injury, by its nature, can seldom be adequately remedied by money

damages and is often permanent or at least of long duration, *i.e.*, irreparable. If such injury is

---

[5] Available at: https://www.fhwa.dot.gov/clas/ctip/wildlife_crossing_structures/ch_2.aspx (last
visited Feb. 4, 2026).

sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co.*, 480 U.S. at 545. Here, the balance of harms strongly favors SUWA's motion for a temporary restraining order and preliminary injunction that maintains the status quo—protecting the remaining undisturbed, public wilderness-quality lands and objects in the Grand Staircase-Escalante National Monument adjacent to the Hole-in-the-Rock Road—pending resolution of the merits of SUWA's complaint. Without such relief, Garfield County will continue to work on, and almost certainly complete its planned permanent alterations and improvements to the Hole-in-the-Rock Road. As explained above, widening and chip sealing the road will, *inter alia*, permanently degrade naturalness, reduce opportunities for solitude, increase vehicular activity and visitation, increase noise and pollution, destroy and impair wildlife habitat, and adversely affect the objects protected in the Grand Staircase-Escalante National Monument. The threat of this type of environmental harm weighs heavily in favor of an injunction. *See Amoco Prod.*, 480 U.S. at 545 (explaining that when environmental injury is "sufficiently likely...the balance of harms will usually favor the issuance of an injunction to protect the environment"). And, here, the threat is even more real because Garfield County has already begun the destructive activities and BLM has done nothing to stop them. Injury is not just likely, it is occurring.

On the other hand, Defendants cannot establish any harm that counterbalances the immediate environmental damage that will continue to occur here. The Hole in the Rock Road has largely been a dirt road for over a century. Any purported need by Garfield County to add drainage features, upgrade the road surface, and/or reduce maintenance costs without first consulting with BLM is not pressing, and certainly pales in comparison to the serious, irreparable

18

injury to wilderness-quality lands, wildlife habitat, and the Monument's objects. Allowing

Defendants to continue to willfully ignore federal law is not in the public interest. To put it

succinctly, Defendants have "jumped the gun" by proceeding with the road improvements before

going through the requisite consultation process. *Davis*, 302 F.3d at 1116. Consequently, to the

extent Defendants are harmed at all by waiting a few months to commence work, "[D]efendants

are largely responsible for their own harm." *Cf. id.* (holding that "entering into contractual

obligations that anticipated a pro forma result" without first adequately analyzing the proposed

project under NEPA weighed in favor of granting the preliminary injunction).

The public interest also warrants issuing an injunction to prevent Garfield County from

continuing to make improvements to the Hole-in-the-Rock Road until Defendants complete

consultation. In particular, the public interest warrants an injunction when faced with the

government's failure to follow federal law including the failure to consider environmental

impacts prior to engaging in activities that threaten the environment. Indeed, there is a strong

public interest in preserving the status quo pertaining to public land and the environment. *Wyo.*

*Outdoor Coordinating Council v. Butz*, 484 F.2d 1244, 1250 (10th Cir. 1973) ("[T]here is an

overriding public interest in preservation of the undeveloped character of the area . . .. This

public interest in preserving the character of the environment is one that the plaintiffs may seek

to protect by obtaining equitable relief."); *Sierra Club. v. Bosworth*, 510 F.3d 1016, 1033 (9th

Cir. 2007) ("The preservation of our environment…is clearly in the public interest."); *see also*

*Davis*, 302 F.3d at 1116 (issuing a preliminary injunction because "plaintiffs assert a strong

public interest in NEPA compliance.").

Here, SUWA seeks to compel Defendants to adhere to the consultation requirements in

*SUWA v. BLM*, which, as explained in Argument Section I.A.i, includes ensuring that BLM

complies with all environmental review requirements and "effectively discharge[s] its

responsibilities to determine whether the proposed [improvements]…would impair or degrade

the surrounding lands." *SUWA v. BLM*, 425 F.3d at 747, 748. This necessarily includes BLM's

obligation under FLPMA to prevent unnecessary or undue degradation. 43 U.S.C. § 1732(b).

Therefore, because the issuance of an emergency injunction would in fact preserve the

environment, granting this temporary restraining order and injunction will serve the public

interest. *See Alaska v. Andrus*, 580 F.2d 465, 485 (D.C. Cir. 1978) ("[I]n most cases . . . it is

possible and reasonable for the courts to insist on strict compliance with NEPA [or FLPMA], and

actions can, consistently with the public interest, be enjoined until such compliance is

forthcoming . . . ." (citation omitted)).

For the foregoing reasons, the Court should find that the balance of harms and public

interest both weigh heavily in SUWA's favor.

### D.    This Court Should Waive the Bond Requirement

If a temporary restraining order or preliminary injunction is granted, Plaintiff respectfully

requests that the Court waive the bond requirements or impose a nominal bond. Under Federal

Rule of Civil Procedure 65(c), courts have such discretion. As the Tenth Circuit has held:

"Ordinarily, where a party is seeking to vindicate the public interest served by NEPA, a minimal

bond amount should be considered." *Davis*, 302 F.3d at 1126 (citation omitted); *see also Colo.

Wild v. U.S. Forest Serv.*, 299 F. Supp. 2d 1184, 1191 (D. Colo. 2004) (no bond). In cases where

plaintiffs are public interest organizations or individual citizens seeking a preliminary injunction

to protect the environment, courts routinely waive the bond requirement or impose a nominal

bond. *Davis*, 302 F.3d at 1126; *see also Friends of the Earth v. Brinegar*, 518 F.2d 322, 323 (9th

Cir. 1975) (same).

Congress intended that private citizens be able to enforce environmental statutes like

FLPMA and ensure that governmental agencies are held to account when they violate the law.

*People of the State of Cal. v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985)

("special precautions to ensure access to the courts must be taken where Congress has provided

for private enforcement of a statute"). Requiring a substantial bond would "seriously undermine

the mechanisms in [federal laws] for private enforcement" of law and likely would have a

chilling effect on litigation to protect the environment and the public interest. *Id.* (requiring no

bond); *see also Colo. Wild v. U.S. Forest Serv.*, 299 F. Supp. 2d 1184, 1191 (D. Colo. 2004) (no

bond).

## II.    Alternatively, The Court Should Issue an Injunction Pursuant to the All Writs Act to Preserve the Status Quo

As explained above, the Rule 65 requirements for an injunction are met, and an

injunction should issue. But if the Court disagrees, it should enjoin Defendants under the All

Writs Act to preserve the status quo pending a determination of SUWA's claims.

The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid

of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §

1651(a). "The Act has long been recognized to encompass a federal court's power 'to preserve

[its] jurisdiction or maintain the status quo by injunction pending review of an agency's action

through the prescribed statutory channels.'" *AstraZeneca Pharms. LP v. Burwell*, 197 F. Supp.

3d 53, 56 (D.D.C. 2016) (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966)).[6]

As the D.C. Circuit has explained,

> If the court may eventually have jurisdiction of the substantive claim, the court's incidental equitable jurisdiction, despite the agency's primary jurisdiction, gives the court authority to impose a temporary restraint in order to preserve the status quo pending ripening of the claim for judicial review.

*Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987); *see also Trump v. Comm. on Ways &*

*Means*, 415 F. Supp. 3d 38, 50 (D.D.C. 2019).

Importantly, "[t]he requirements for a traditional injunction do not apply to injunctions

under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by

the [All Writs] Act, is grounded in entirely separate concerns." *Klay v. United Healthgroup, Inc.*,

376 F.3d 1092, 1100 (11th Cir. 2004). Thus, to obtain an All Writs Act injunction, a party "must

simply point to some ongoing proceeding, or some past order or judgment, the integrity of which

is being threatened by someone else's action or behavior." *Id.*

The circumstances in this case are analogous to those in *AstraZeneca Pharmaceuticals*

*LP v. Burwell*. There, the court acted pursuant to its authority under the All Writs Act to enjoin

the Food and Drug Administration ("FDA") from approving or denying pending applications

from generic drug manufacturers to sell their versions of AstraZeneca's drug, Crestor, until

AstraZeneca had an opportunity right to be heard on its claims and "before it suffers an

irretrievable loss of … exclusivity" (*i.e.*, before generic versions of Crestor are allowed to enter

---

[6] To the best of SUWA's knowledge, the Tenth Circuit has not addressed a court's use of the All Writs Act to maintain the status quo by injunction. Therefore, SUWA points the Court to caselaw from the Supreme Court of the United States and circuits that have addressed the All Writs Act in this context.

the market). *AstraZeneca*, 197 F. Supp. 3d at 56, 58. The *AstraZeneca* court did so without

applying the traditional four factor test required to grant preliminary injunctive relief. *Id.* Instead,

the court pointed to an ongoing proceeding (AstraZeneca's federal litigation and the opportunity

to obtain meaningful relief) that was being threatened by the FDA's actions (imminent approval

of other drug manufacturers' applications to flood the market with generic versions of Crestor).

Other courts have taken the same approach. *See, e.g., Trump*, 415 F. Supp. 3d at 44, 50 (invoking

the All Writs Act to issue temporary injunctive relief without mention or analysis of the

traditional four factor test); Order, *S. Utah Wilderness All. v. Bernhardt*, 1:20-cv-03654-RC

(D.D.C. Dec. 22, 2020) (ECF No. 25) (same).

     Here, as explained above, BLM is aware of Garfield County's contemporaneous road

work on the Hole-in-the-Rock Road, noted the duty to consult on the planned improvements,

requested additional information about these plans, and asked that the County engage in such

consultation with BLM. *See generally* BLM Letter. Notably absent, however, was a demand by

BLM that Garfield County abstain from constructing improvements until consultation is

complete. Hence, this lawsuit. Stated differently, just like in *AstraZeneca*, this litigation is an

ongoing proceeding that gives SUWA the opportunity to obtain meaningful relief. However, the

integrity of this lawsuit, and thus SUWA's opportunity for relief is being threatened by (1)

Garfield County's illegal construction of improvements on the Hole-in-the-Rock Road and (2)

BLM's decision to <u>not</u> demand the County cease work on the road. *See Klay*, 376 F.3d at 1100.

     As explained in Argument Section I.B, SUWA and its members are irreparably harmed

by the County and BLM's conduct regarding these improvements. Without an injunction,

Garfield County will continue to make improvements to the Hole-in-the-Rock Road, culminating

in an upgraded road surface from dirt and gravel to chip seal well before SUWA's claims will be resolved by this Court. In other words, SUWA's claims are at significant risk of becoming moot "almost instantaneously." *See Trump*, 415 F. Supp. 3d at 50.

<div align="center">***</div>

For these reasons, an injunction is necessary, pursuant to either Rule 65 and application of the preliminary injunction factors or the All Writs Act, to preserve the *status quo* and prevent further irreparable harm to SUWA, its members, and the Grand Staircase-Escalante National Monument.

<div align="center"><u>**CONCLUSION**</u></div>

SUWA respectfully requests that this Court grant its motion for a temporary restraining order and preliminary injunction or, in the alternative, relief under the All Writs Act, enjoining the Defendants from proceeding with any further road improvements on the Hole-in-the-Rock Road until they complete consultation in accordance with Tenth Circuit precedent and BLM complies with FLPMA.

Respectfully submitted, this 5th day of February, 2026.

<div style="margin-left: 40%;">

*/s/ Hanna Larsen*
Stephen H.M. Bloch
Hanna Larsen
SOUTHERN UTAH WILDERNESS ALLIANCE

Mitch M. Longson
MANNING CURTIS BRADSHAW
& BEDNAR PLLC

Trevor J. Lee
HOGGAN LEE HUTCHINSON

*Attorneys for Plaintiff Southern Utah*
*Wilderness Alliance*

</div>

# EXHIBIT 1



## Wilderness Quality Lands in the Grand Staircase-Escalante National Monument (GSENM)

**Legend:**

- GSENM Boundary
- Hole-in-the-Rock Road
- County Boundaries
- Glen Canyon National Recreation Area
- Wilderness Study Areas (GSENM Final RMP 2025)

**Lands with Wilderness Characteristics (GSENM Final RMP 2025)**

- LWC managed to protect wilderness characteristics
- LWC managed to minimize impacts to wilderness characteristics
- Managed for discretionary use

Escalante

12

GARFIELD COUNTY
KANE COUNTY
SAN JUAN COUNTY
KANE COUNTY

0  1.5  3  4.5  Miles

SUWA
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
801 486 3161
www.suwa.org

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE,**<br><br>    Plaintiff,<br><br>v.<br><br>**GARFIELD COUNTY, UTAH,** a political subdivision, the **STATE OF UTAH,** the **UNITED STATES BUREAU OF LAND MANAGEMENT,** and the **UNITED STATES DEPARTMENT OF THE INTERIOR,**<br><br>    Defendants. | **DECLARATION OF DELANEY CALLAHAN**<br><br>Case No. 2:26-cv-00096<br><br>Judge |

I, DELANEY CALLAHAN, declare as follows:

1.      The facts set forth in this declaration are based on my personal knowledge and experience.

2.      I have worked full-time as a Geographic Information Systems ("GIS") analyst for the Southern Utah Wilderness Alliance ("SUWA") since February 2023. My work at SUWA includes analyzing State of Utah, Federal, and other publicly-available data related to energy and minerals development, wildlife habitats, vehicle travel routes, sound propagation, and viewsheds. I employ GIS to provide mapping analysis to support SUWA's work on public land management issues. GIS software uses geospatial data to create maps and perform analyses. GIS is recognized

as an important tool for communication and problem-solving by government, industry, and conservation organizations throughout the country.

3.      I have a Bachelor of Arts degree in Geography, a minor in Environmental Science and Policy, and a GIS Certification from California State University, Long Beach. I have a Master of Arts degree in Applied Geography and Geospatial Science from the University of Colorado Denver. The coursework leading to these degrees included applications in environmental GIS, advanced geospatial methods, programming and automation, multivariate and spatial statistics, and advanced remote sensing.

4.      Attached hereto as Exhibit A is a map of Wilderness Quality Lands and the Hole-in-the-Rock Road in Grand Staircase-Escalante National Monument. I prepared this map in support of SUWA's Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support in the above-captioned matter. I used the Environment Systems Research Institute's ("ESRI") ArcGIS Pro (3.5.4), an industry standard software application, for all data processing and to create the map.

5.      The basemap used in Exhibit A is provided as a vector tile service by ESRI and made available to the public through ArcGIS Online. It is called "Light Gray Canvas" and is a "detailed vector basemap for the world symbolized with a light gray, neutral background style with minimal colors, labels, and features that is designed to draw attention to your thematic content. The map includes highways, major roads, minor roads, railways, water features, cities, parks, landmarks, building footprints, and administrative boundaries." More information on this basemap can be found at:

https://www.arcgis.com/home/item.html?id=979c6cc89af9449cbeb5342a439c6a76 (last visited

Feb. 4, 2026). ESRI basemaps are specifically designed to be used by GIS professionals as a base data layer to then overlay thematic layers.

6.     On top of the base layer, several different datasets from various authoritative sources were overlaid. The Grand Staircase-Escalante National Monument boundary were obtained via a geodatabase download from the Resource Management Plan's official project page on the BLM National NEPA Register website. The download is titled "2025 Final ROD GIS data.zip" and the feature class within is titled "GSENM_RMP_intro_PlanningArea". It can be found at https://eplanning.blm.gov/Project-Home/?id=91d264cd-a7f2-f011-8406-001dd80ef717 (last visited Feb. 4, 2026), under the Documents tab. This data includes representation of the spatial extent and boundaries of Presidential Proclamation 10286—Grand Staircase-Escalante National Monument. This data was downloaded in the appropriate projection for the project site (NAD 83 UTM Zone 12N), so no re-projection[1] of data was needed.

7.     The Glen Canyon National Recreation Area boundary data were obtained from the National Park Service, titled "NPS Ownership Boundaries." It represents the official fee boundary data created and maintained by the Lands Resources Division of the National Park Service. Data can be found at https://www.arcgis.com/home/item.html?id=373a421a19564b0996ff30d554be964b (last visited Feb. 4, 2026). No download was needed as it was brought in directly to the ArcGIS Pro mapping software as a hosted feature layer. A definition query was applied to limit display to just Glen Canyon National Recreation Area.

---

[1] Re-projection refers to changing the coordinate values of a dataset from one coordinate system to another coordinate system. Having all datasets in the same projection is important for accuracy of spatial relationships.

8.      The Utah county boundaries data were obtained from the Utah Geospatial

Resource Center, titled "Utah County Boundaries". It represents the most current version of Utah

county boundaries. Data can be found at

https://www.arcgis.com/home/item.html?id=90431cac2f9f49f4bcf1505419583753 (last visited

Feb. 4, 2026). No download was needed as it was brought in directly to the ArcGIS Pro mapping

software as a hosted feature layer.

9.      The Grand Staircase-Escalante National Monument Wilderness Study Area data

were obtained via a geodatabase download from the Resource Management Plan's official

project page on the BLM National NEPA Register website. The download is titled "2025 Final

ROD GIS data.zip" and the feature class within is titled

"GSENM_RMP_Alts_SpecialDes_WSA_BLM". It can be found at

https://eplanning.blm.gov/Project-Home/?id=91d264cd-a7f2-f011-8406-001dd80ef717 (last

visited Feb. 4, 2026), under the Documents tab. This data was downloaded in the appropriate

projection for the project site (NAD 83 UTM Zone 12N), so no re-projection of data was needed.

10.     The Grand Staircase-Escalante National Monument Lands with Wilderness

Characteristics data were obtained via a geodatabase download from the Resource Management

Plan's official project page on the BLM National NEPA Register website. The download is titled

"2025 Final ROD GIS data.zip" and the feature class within is titled

"GSENM_RMP_Alts_Res_LWC_AltE". It can be found at https://eplanning.blm.gov/Project-

Home/?id=91d264cd-a7f2-f011-8406-001dd80ef717 (last visited Feb. 4, 2026), under the

Documents tab. This data was downloaded in the appropriate projection for the project site

(NAD 83 UTM Zone 12N), so no re-projection of data was needed.

4

11.     The Hole-in-the-Rock Road data were obtained from the Utah Geospatial Resource Center, titled "Utah Roads". It is a "multi-purpose statewide roads dataset for cartography and range based-address location". Data can be found at https://www.arcgis.com/home/item.html?id=478fbef62481427f95a3510a4707b24a (last visited Feb. 4, 2026). No download was needed as it was brought in directly to the ArcGIS Pro mapping software as a hosted feature layer. Hole-in-the-Rock Road was isolated by selecting all attributes whose full name matched the text "HOLE IN THE ROCK RD", then the selection was exported as a feature class to a local geodatabase for further symbolizing.

12.     No other analyses or data manipulation were performed other than what has been stated herein.

13.     Once all the data was processed and symbolized, and after I combined each of the data layers, I exported the final map as a portable document format ("PDF").

14.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED: February 4, 2026

/s/ Delaney Callahan

Delaney Callahan

# EXHIBIT A



Wilderness Quality Lands in the Hole-in-the-Rock Road Case the Federal Court's Remand of the Grand Staircase-Escalante National Monument (GSENM)

Filed 02/05/26 Grand Staircase-Escalante National Monument (GSENM)

**Legend:**
- GSENM Boundary
- Hole-in-the-Rock Road
- County Boundaries
- Glen Canyon National Recreation Area
- Wilderness Study Areas (GSENM Final RMP 2025)

Lands with Wilderness Characteristics (GSENM Final RMP 2025)
- LWC managed to protect wilderness characteristics
- LWC managed to minimize impacts to wilderness characteristics
- Managed for discretionary use

SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, UT 84111
801 486 3161
www.suwa.org

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE,** | |
| Plaintiff, | **DECLARATION OF JACK HANLEY** |
| v. | Case No. 2:26-cv-00096 |
| **GARFIELD COUNTY, UTAH, a political subdivision, the STATE OF UTAH, the UNITED STATES BUREAU OF LAND MANAGEMENT, and the UNITED STATES DEPARTMENT OF THE INTERIOR,** | Judge |
| Defendants. | |

I, **JACK HANLEY**, declare as follows:

1.    I have personal knowledge of each of the facts set forth below and, if called upon to do so, could and would testify regarding the following. This declaration is filed in support of Southern Utah Wilderness Alliance's ("SUWA") lawsuit in the above-captioned matter.

2.    I am the Field Specialist for SUWA and have worked for SUWA since 2019. My position requires that I spend considerable time on the ground visiting federal public lands throughout Utah observing their condition and working with land management agencies, including the Bureau of Land Management ("BLM"), to preserve the naturalness and other values of these lands.

3.    SUWA, based in Salt Lake City, Utah, has more than 12,000 members and activists, many of whom reside in Utah. SUWA's mission is the preservation of the outstanding

wilderness and other sensitive public lands at the heart of the Colorado Plateau and to advocate

for management of these lands, and the associated natural and cultural resources, in their natural

state for the benefit of all Americans. SUWA promotes local and national recognition of the

region's unique character though research and public education; supports both administrative and

legislative initiatives to permanently protect Utah's wild places within the National Park and

National Wilderness Preservation System or by other protective designations where appropriate;

builds support for such initiatives on both the local and national level; and provides leadership

within the conservation movement through uncompromising advocacy for wilderness

preservation.

4.   SUWA members and staff have a well-demonstrated interest in the preservation

and protection of Utah's remarkable BLM-managed public lands and resources, as well as in

BLM's compliance with federal laws and regulations. SUWA also benefits from Garfield County,

Utah's ("the County") and the State of Utah's compliance with state and federal laws and

regulations. SUWA has taken an active role in providing critical information to the BLM, the

County, and State of Utah regarding their management activities in Utah including R.S. 2477

rights-of-way decisions and road maintenance and improvement projects on federal public lands.

5.   SUWA members and staff also participate in information gathering and

dissemination, education and public outreach, commenting upon proposed government actions,

and other activities relating to the management of and impacts to BLM-managed lands and

resources, including for Grand Staircase-Escalante National Monument and the Hole-in-the-

Rock Road and the surrounding public lands.

2

6.      SUWA members and staff's recreational, aesthetic, health and other interests are directly affected and harmed by the ongoing road improvements to the Hole-in-the-Rock Road, which is located within the Grand Staircase-Escalante National Monument and Glen Canyon National Recreation Area.

7.      As SUWA's Field Specialist, I am responsible for organizing (alongside other SUWA staff and the BLM) volunteer projects to restore and prevent damage to natural resources such as biological soil crusts, vegetation, riparian areas, wildlife habitat, and cultural resources. The damage to these resources can usually be attributed to activities such as off-road vehicles ("OHV"), energy and mineral development (*e.g.*, oil, natural gas, potash), and high volumes of recreational use. I am also responsible for monitoring the condition of BLM lands, especially wilderness study areas (WSAs), BLM-identified lands with wilderness characteristics, and Wilderness areas, for the purpose of partnering with the BLM to manage these resources.

8.      I am an active member of SUWA.

9.      For years, I have traveled on public lands throughout Utah for personal, recreational, and aesthetic enjoyment. This includes sightseeing, bird and wildlife watching, hiking, camping, climbing, canyoneering, rafting, and visiting cultural sites, among other activities. I truly enjoy the clean air and expansive vistas, remarkable geologic formations, stunning slot canyons, spring fed riparian areas, silent Pinon-Juniper forests, lush hanging gardens, sacred cultural sites, rich paleontological records, and many other wonders of the Grand Staircase-Escalante National Monument. My life has been deeply enriched by the opportunities to engage in quiet contemplation and appreciate the solitude that certain federal public lands

3

provide, including those in the Grand Staircase-Escalante National Monument and along and near the Hole-in-the-Rock Road.

10.     I have visited the Grand Staircase-Escalante National Monument countless times and driven the Hole-in-the-Rock Road on at least 30 separate occasions. Most recently, I drove the road on February 4, 2026. I thoroughly enjoy my visits to the monument as well as the Hole-in-the-Rock Road due to the vast, expansive landscape, and the overall remoteness of the region.

11.     While the Hole-in-the-Rock Road is a rough and bumpy dirt road, it rewards those individuals willing drive it to with outstanding solitude and remarkable access to hiking trails such as the Devil's Garden, Dry Fork slot canyons, Zebra Canyon, and all the incredible canyons leading into the Escalante River corridor. Not to mention the access to the remote canyons and backcountry of Glen Canyon National Recreation Area. The condition of the road requires a slower speed, and I find that to have a positive effect on my sense of place in this vast landscape. The rugged road is a fitting portal into a rugged backcountry.

12.     I am aware of and have reviewed the January 27, 2026, letter that the County sent BLM regarding its planned road improvements on the Hole-in-the-Rock Road.

13.     I am aware of and have reviewed SUWA's cease-and-desist letter sent to Garfield County on February 3, 2026, regarding the unauthorized road improvements on the Hole-in-the-Rock Road.

14.     I am aware that BLM has lightly objected, to the County's road improvements but that the agency has refused to direct the County to halt those improvements and/or require that the County consult BLM before re-commencing those improvements. I have also reviewed the letter BLM sent to the County on February 4, 2026, expressing these concerns.

<center>4</center>

15.    On February 4, 2026, I traveled to the Hole-in-the-Rock Road to document and fully understand the scope and extent of the County's road improvement activities. On this visit, I observed large vehicles and machinery actively widening the road, tractors trenching the edges of the road, recently installed culverts and other drainage structures, staging areas full of various construction-related equipment including culverts and large tractors, and countless vehicle tracks that extended well-beyond and off the existing road into the surrounding landscape, crushing the native vegetation.

16.    On this visit, I took the following photographs along the first 3.5 miles of the Hole-in-the-Rock Road, which is where I observed active road construction taking place:

*Photo 1*



*Photo 2*



7

*Photo 3*



8

**Photo 4**



9

*Photo 5*



*Photo 6*



17.    As these photographs show and as I observed and confirmed on my field visit, the County has (1) widened the road, (2) horizontally and/or vertically realigned the road, (3) installed culverts and other drainage structures where these did not previously exist, and (4) destroyed the vegetation that existed adjacent to and near the road.

18.    Additionally, during my February 4 field visit, I was stopped and waited as a culvert was being installed and construction vehicles blocked the road. As I documented the road construction activities (as seen in the photos above) a worker for the County road crew - driving the road grader - approached me and said, " we're going to get in trouble or this." He also stated that "they don't like it when we do upgrades." He then told me to move along, so I continued down (south) approximately 3.5 miles to the intersection of the Hole-in-the-Rock Road and Cedar Wash Road, where the the County's recent work appeared to have stopped. I saw several dump trucks delivering gravel from the gravel pits on Cedar Wash Road, along with other equipment. Having seen the extent of the road work, I turned around to head back to Highway 12. Two of the County staff and/or their contractors, including the man driving the road grader quoted above, forced me to stop my vehicle by parking the road grader and dump truck in the middle of the road and denying me further passage along the road. They approached my vehicle and began to accuse me of "telling the SUWA what we're doing" and aggressively asked why I had taken photos. During this encounter I felt threatened and unsafe, and while they blocked the road and began making a phone call, I had to drive off of the road to get around the road grader to continue north back to Hwy 12.

19.    As stated above, I have visited and traveled on the Hole-in-the-Rock Road dozens of times, including the segments on which the County has—and currently is—engaged in road

12

improvements (the areas depicted above in my photographs). Based on those prior visits, I can

say with confidence that the recent County road improvements that I observed on my February 4

field visit go well beyond the longstanding *status quo* of regular maintenance to the road (for

example, road grading or cleaning out culverts). Quite simply, the road is now much wider, and

contains many new culverts and other drainage features that have been installed underneath the

road.

20.    The County's road improvements have degraded and will continue to degrade

naturalness, destroy vegetation and soils, destroy BLM-identified LWCs and WSAs, and increase

ambient background noise and pollution. This is a result of the large vehicles and machinery and

ongoing construction activities and increased vehicle activities in the area.

21.    These activities have affected and will continue to affect and irreparably harm my

health, recreational, and aesthetic interests. I do not want to see more development activities in

this area and I do not want to see an engineered, high-speed chip sealed road. Based on my

experience monitoring and remedying public land impacts, a widened and chip sealed road will

increase the number of motor vehicles, traveling faster, and overall increase visitation on the

Hole-in-the-Rock Road and in the countless areas that can be accessed from that road. These

improvements will also lead to an increase in illegal off-road vehicle ("ORV") travel on areas of

public lands that will become more accessible from the Hole-in-the-Rock Road—resulting in

further off-route travel impacts, increased dispersed campsites, more graffiti in slot canyons, and

social trails through fragile soil communities will certainly follow;– impacts that I have worked

for years to remedy and mitigate.

13

22.    Increased public visitation and access, including for ORVs, will reduce my
opportunities to view and observe wildlife and to enjoy the quiet, untrammeled wilderness in and
around the Hole-in-the-Rock Road. Increased vehicle traffic will also negatively affect wildlife
with more noise and light pollution I have worked for years to protect these resource values.

23.    My injuries and harms discussed herein will be remedied by a decision by the
Court to order the County to halt its unauthorized road improvements and consult with the BLM
prior to engaging (or reengaging) in in any additional improvements.


I DECLARE, under penalty of perjury, that the foregoing is true and correct.

DATED:    February 5, 2026

Jack Hanley

14

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SOUTHERN UTAH WILDERNESS ALLIANCE,**<br><br>　　Plaintiff,<br><br>v.<br><br>**GARFIELD COUNTY, UTAH,** a political subdivision, the **STATE OF UTAH,** the **UNITED STATES BUREAU OF LAND MANAGEMENT,** and the **UNITED STATES DEPARTMENT OF THE INTERIOR,**<br><br>　　Defendants. | **DECLARATION OF KYA MARIENFELD**<br><br>Case No. 2:26-cv-00096<br><br>Judge |

I, **KYA MARIENFELD**, declare as follows:

1.　　This declaration is filed in support of the Southern Utah Wilderness Alliance's ("SUWA") lawsuit in the above-captioned matter. I have personal knowledge of each of the facts set forth below, and if called upon to do so, could and would testify regarding the following.

2.　　I am a Wildlands Attorney for SUWA, where I have worked since 2015

3.　　I am also an active member of SUWA and have been since 2015.

4.　　SUWA, based in Salt Lake City, Utah, has approximately 12,000 members, many of whom reside in Utah. SUWA's mission is the preservation of the outstanding wilderness and other sensitive public lands across Utah, and the management of these lands in their natural state for the benefit of all Americans. SUWA promotes local and national recognition of the region's unique character through research and public education; supports both administrative and

legislative initiatives to permanently protect Utah's wild places within the National Wilderness Preservation System or by other protective designations where appropriate; builds support for such initiatives on both the local and national levels; and provides leadership within the conservation movement through its advocacy for wilderness preservation.

5.     SUWA also works to ensure that areas already designated as wilderness, or which are proposed for such designation, are managed appropriately. SUWA seeks to ensure that the wild federal public lands implicated by this case are managed to preserve their natural and cultural values. SUWA also advocates for other protective designations, for example, in resource management plan development or in connection with individual agency decisions regarding specific project proposals.

6.     SUWA is a vocal advocate for the protection of federally managed wilderness-quality lands in Utah and is widely recognized as a leader in the national effort to designate, over eight million acres of Bureau of Land Management ("BLM") land in the state as wilderness through proposed legislation titled "America's Red Rock Wilderness Act," ("ARRWA"),[1] including the lands traversed by or bordered by the Hole-in-the-Rock Road. BLM frequently solicits SUWA's input and participation in the land use planning process for a variety of resource decisions, and SUWA actively participates in all levels of BLM's decision-making process regarding the management of public lands.

7.     SUWA has been engaged and involved in the management and protection of public lands encompassed by Grand Staircase-Escalante National Monument since before the

---

[1] H.R. 2467, S. 1193, 119th Cong. (2025).

2

Monument's designation 30 years ago. Protection of these lands is a top priority for both our organization and individually to our staff who work and recreate there.

8.    SUWA has a particular interest in federally managed wilderness-quality lands and the threats to their wilderness character, including Grand Staircase-Escalante National Monument and lands that encompass and are affected by activities on the Hole-in-the-Rock Road. SUWA's concerns include but are not limited to the impacts of motorized vehicles and roads on lands managed by BLM, the growth-inducing effects of road upgrading and expansion, and the effects of these impacts on the opportunities for solitude in the remote and rugged country where we work—including Grand Staircase-Escalante National Monument.

9.    As a Wildlands Attorney with SUWA, I am required to spend considerable time on the ground visiting public lands throughout Utah. In this capacity and on my own time, I have traveled extensively throughout the public lands in Utah, including those at issue in this case.

10.    My current work involves, among other things, site visits to identify and document the characteristics of certain tracts of BLM lands to determine whether the areas qualify for wilderness protection or are suitable for other types of protection. I also frequently meet with BLM staff to gather information about the resources present on the land and to gather information relating to the impacts of various proposals for use of the land, and engage during public participation periods on project proposals for activities on BLM lands throughout the state, with a particular emphasis on site-specific activities and land use planning in Grand Staircase-Escalante National Monument. I spend considerable time on the ground documenting intrusions such as roads, road maintenance and expansion, dispersed camping impacts, vegetation treatment proposals and projects, and off-road vehicle ("ORV") impacts on lands

3

considered by the BLM to have wilderness characteristics and other important public land

resources. I have expertise in map reading, route finding, and land navigation using both paper

and electronic maps, and have been traveling at least bi-annually in Grand Staircase-Escalante

National Monument, including on and around the Hole-in-the-Rock Road for over a decade.

11.     Through this work, I am very familiar with the federal public lands managed by

the BLM Grand Staircase-Escalante National Monument Field Office and governed by the 2025

Grand Staircase-Escalante National Monument Management Plan ("MMP").[2]

12.     I have traveled down the Hole-in-the Rock Road numerous times, seeking

opportunities for solitude, night sky viewing, primitive dispersed camping, and wildlife and

geologic feature photography. I have personally visited and enjoyed the federal public lands on

and immediately surrounding the Hole-in-the-Rock Road on numerous occasions, most recently

in April 2025. I take great pleasure from my visits to this area and intend to return as often as

possible, but certainly in the next year.

13.     Currently, the Hole-in-the-Rock Road is a dirt road with pockets of gravel and

infrequent culverts at wash crossings along its length, from its north end on Highway 12 in

Garfield County to where it enters Glen Canyon National Recreation Area in Kane County.

14.     On my visits to Grand Staircase-Escalante National Monument, I have used the

Hole-in-the-Rock Road to access and explore numerous remote and scenic areas  including, but

not limited to: Zebra Slots, Left Hand Collet Road, the Devil's Garden Instant Study Area, Harris

---

[2] Bureau of Land Mgmt., *Grand Staircase-Escalante National Monument Record of Decision
and Approved Resource Management Plan*, 2-70 (Jan. 2025), available at
https://eplanning.blm.gov/Documents/?id=91d264cd-a7f2-f011-8406-
001dd80ef717&spid=8fe7277f-a8f2-f011-8407-001dd80db62a (last visited February 5, 2026).

Wash, the Cosmic Eye, Early Weed Bench, the Egypt trailhead, the Peekaboo and Spooky slot

canyons at Dry Fork, Dance Hall Rock, Sunset Arch and Fortymile Ridge, Chimney Rock,

Sooner Rocks, and the Fiftymile Ridge Road. I use and enjoy these areas for health, spiritual,

educational, recreational, aesthetic, and other purposes. I take great pleasure from my visits to

this area and intend to return as often as possible, but certainly in the next year, when my infant

son is old enough for a late-spring camping trip.

15.    My enjoyment of these activities, and that of SUWA's members, is dependent on

quiet, natural settings without the sights, sounds and impacts associated with chip sealed/paved

roads, including large vehicles like tour buses and ensuing crowds, and high speeds characteristic

of chip sealed/paved backcountry roads. If the Hole-in-the-Rock Road is chip sealed/paved,

widened beyond its current disturbed width, and/or otherwise improved to accommodate more

frequent large vehicle traffic, the wilderness-quality public lands bordering the Hole-in-the-Rock

Road will be degraded and my and SUWA's members' enjoyment of these areas will be

significantly reduced or eliminated.

16.    I have observed that once a road is chip sealed (or improved from a graveled or

dirt travel surface), traffic dramatically increases, thereby diminishing the area's primitive and

wild character. I have seen the difference in travel speeds between a gravel road and one that has

a chip sealed surface, and am particularly concerned that a more remote road in what is

essentially the backcountry like Hole-in-the-Rock will have virtually no enforcement of speed

limits, presenting a significant danger to drivers and wildlife. I have also observed negative,

indirect impacts from newly improved roads including the spread of weeds, collisions with

wildlife, and vehicle noise. All these effects detract from and degrade the natural beauty and wilderness character of the public lands.

17.     Road improvement activities such as chip sealing and widening could result in the intrusion and expansion of road-related impacts into areas which are proposed for wilderness designation and/or are currently protected as wilderness study areas, which are significant along the full length of the route, causing unavoidable resource damage to the vegetation, soils, and other resources in newly disturbed areas. Such activities would also dramatically impact the primitive, remote character of the surrounding lands, where public lands are characterized by the lack of roads, ORV use, and other impacts, and which I prize for their primitive nature.

Pursuant to 28 U.S.C. § 1746, I DECLARE, under penalty of perjury, that the foregoing is true and correct.

Signed this 4th day of February, 2026.

*Kya Marienfeld*

Kya Marienfeld